1  J. CHRISTOPHER JORGENSEN, ESQ.
   State Bar No 5382
2  MENG ZHONG, ESQ.
   State Bar No. 12145
3  LEWIS AND ROCA LLP
   3993 Howard Hughes Pkwy., Ste. 600
4  Las Vegas, NV  89169
   (702) 949-8200
5  (702) 949-8398/fax

6  Attorneys for Defendants

7

8                    UNITED STATES DISTRICT COURT

9                    FOR THE DISTRICT OF NEVADA

10 GARY W. LIAL and MARQULINN LIAL,          Case:

11                              Plaintiffs,

12        vs.

   BANK OF AMERICA CORPORATION;              **PETITION FOR REMOVAL OF CIVIL**
13 RECONTRUST COMPANY; FEDERAL               **ACTION**
   NATIONAL MORTGAGE ASSOCIATION;
14 MORTGAGE ELECTRONIC
   REGISTRATION SYSTEMS, INC., et al.,
15
                                Defendants.
16
   TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR
17         THE DISTRICT OF NEVADA:
18
           The removing parties, Mortgage Electronic Registration Systems, Inc. ("MERS"), Bank of
19
   America, N.A. ("BAC") (erroneously named in caption as Bank of America Corporation), Federal
20
   National Mortgage Association ("FNMA") and ReconTrust Company, N.A. (erroneously named
21
   in caption as Recontrust Company) ("ReconTrust") (collectively "Defendants"), respectfully
22
   show:
23
           1.     MERS, BAC, FNMA and ReconTrust are Defendants in the above-entitled action.
24
           2.     That the above-entitled action was commenced in the Eighth Judicial District Court
25
   of the State of Nevada, in and for the County of Clark, and is now pending in that Court under the
26
   designated Case No. A-10-628838, Dept. II.
27

28

3.      Process was served on MERS on November 17, 2010, and on ReconTrust on November 19, 2010.

4.      This case involves claims by Plaintiffs that the Defendants improperly processed, serviced, transferred, and ultimately began foreclosure proceedings on Plaintiffs' home mortgage loan.  This case is one of many that have recently been filed in Nevada and across the country by homeowners seeking to simply stall or delay foreclosure proceedings after the plaintiffs have long stopped making the required mortgage payments.

5.      This Petition for Removal is timely and proper under 28 U.S.C. §1446(b) because it is being filed within thirty days after MERS was served with a copy of Defendants' state court Complaint and within one year from when Plaintiffs commenced their state court action.

6.      Diversity jurisdiction under 28 U.S.C. § 1332 exists because this action is between citizens of different states and/or countries and the amount in controversy exceeds $75,000.

7.      Plaintiffs are citizens of Nevada. MERS is a Delaware corporation with its primary place of business in Virginia.  ReconTrust is a national association and is headquartered in California. BAC is also a national association and is headquartered in North Carolina.  ReconTrust and BAC are therefore citizens of California and North Carolina, respectively.  *See Wachovia v. Schmidt*, 546 U.S. 303, 318 (2006).  FNMA is "deemed, for purposes of jurisdiction and venue in civil actions, to be a District of Columbia corporation."  12 U.S.C. § 1717(a)(2)(B).

8.      The amount in controversy exceeds $75,000.  Plaintiffs are seeking to void the $281,118 in promissory notes they signed when they purchased their home.  (Complaint ¶ 9).  Plaintiffs repeat the discredited allegation that MERS does not have authority to direct the foreclosure of the property.  *See* Exhibit A to Plaintiffs' Complaint, ¶¶ 21-23.  The Complaint is similar to many others filed nationwide by homeowners facing foreclosure.

9.      The removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *Singer v. State Farm Mut. Auto. Ins.*

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

444762

*Co.*, 116 F.3d 373, 376 (9th Cir. 1997).  If it is "'facially apparent' from the complaint that the plaintiff seeks damages sufficient to create federal jurisdiction, then the case should be remanded 'only if it appears to a legal certainty that the claim is actually for less than the jurisdictional minimum.'"  *Davis v. Advanced Care Techs., Inc.*, 2007 U.S. Dist. LEXIS 32348 at *3 (E.D. Cal. 2007) (quoting *Singer*, 116 F.3d at 376); *see also Campbell v. Bridgestone/Firestone, Inc.*, 2006 U.S. Dist. LEXIS 16113 at *7 (E.D. Cal. 2006) (in products liability suit, amount-in-controversy requirement was satisfied where plaintiff sought unspecified amount of compensatory damages for wage loss, hospital and medical expenses, general damages, and loss of earning capacity); *Yong v. Hyatt Regency Sacramento*, 2007 U.S. Dist. LEXIS 9492 at *3-4 (E.D. Cal. 2007) (where plaintiff asserted a discrimination claim seeking "compensatory damages, emotional distress damages, punitive damages, and attorneys fees," the amount in controversy was well above the jurisdictional requirement solely "by nature of [the plaintiff's] claims"). Here, given that Plaintiffs are seeking to void a real estate contract and promissory notes, it is facially apparent from their Complaint that the amount in controversy exceeds $75,000.

10.     This action may be properly removed to this Court under 28 U.S.C. § 1441(a) because this Court has original jurisdiction over this action under 28 U.S.C. §§ 1332 and 1367, and because this action was commenced within the judicial district of the United States District Court for the District of Nevada.

11.     Copies of all process, pleadings and other orders served upon Recontrust and MERS are attached hereto.

12.     A true and correct copy of this Petition for Removal will be provided to Plaintiffs and filed with the Clerk of the Eighth Judicial District Court of the State of Nevada, Department II.

. . .

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

-3-                                444762

1    WHEREFORE, Defendants prays that this action be removed.

2    DATED this 6th day of December, 2010.

3                                        LEWIS AND ROCA LLP

4

5                                        By _____

6                                            J. CHRISTOPHER JORGENSEN, ESQ.
                                             MENG ZHONG, ESQ.
7                                            3993 Howard Hughes Pkwy., Ste. 600
                                             Las Vegas, NV  89169
8                                            Attorneys for Defendants

9

10

11

12                        CERTIFICATE OF SERVICE

13        I certify that service of the foregoing document was made on the 6 day of December

14   2010 by depositing a copy for mailing, first class mail, postage prepaid, to the following:

15

16   Gary and Marqulinn Lial
     10480 Wildflower Gully Street
17   Las Vegas, NV  89178
     Pro Se Plaintiffs

18                                        _____
19                                        an employee of Lewis and Roca LLP

20

21

22

23

24

25

26

27

28

RJ

**SUMM**
Gary W. Lial
Marqulinn Lial
10480 Wildflower Gully Street
Las Vegas, Nevada 89178
(702) 400-5010
Plaintiffs in proper person

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

Gary W. Lial; Marqulinn Lial,

        Plaintiffs,

        vs.

Bank of America Corporation; Recontrust
Company; Federal National Mortgage
Association; Mortgage Electronic Registration
Systems, Inc.; and Does 1 through 100,
inclusive,

        Defendants.

Case No.: A-10-628838-C

Dept. No.: H

**SUMMONS – CIVIL**

LEGAL DEPARTMENT
RECEIVED

NOV 19 2010

SAN FRANCISCO.
BANK OF AMERICA, N.A.

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

    TO THE DEFENDANT(S): A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

    1. If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

    (a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

    (b) Serve a copy of your response upon the attorney (or party if no attorney's name is listed) whose name and address is shown below.

    2. Unless you respond, your default will be entered upon application of the Plaintiff(s)

1

1    and failure to so respond will result in a judgment by default against you for the relief

2    demanded in the Complaint, which could result in the taking of money or property or other

3    relief requested in the Complaint.

4         3. If you intend to seek the advice of an attorney in this matter, you should do so

5    promptly so that your response may be filed on time.

6         4. The State of Nevada, its political subdivisions, agencies, officers, employees, board

7    members, commission members and legislators each have 45 days after service of this

8    Summons within which to file an Answer or other responsive pleading to the Complaint.

9

10                                          STEVEN D. GRIERSON
                                            CLERK OF COURT
11

12                                          DeEVRA KNIGHT          NOV 0 8 2010

13                                          200 Lewis Avenue
                                            Las Vegas, Nevada 89155
14

15   Submitted by:

16

17   _____          _____
     Gary W. Lial                     Marqulinn Lial
18   10480 Wildflower Gully Street     10480 Wildflower Gully Street
     Las Vegas, Nevada 89178          Las Vegas, Nevada 89178
19   (702) 400-5010                   (702) 400-5010
     Plaintiff in proper person       Plaintiff in proper person
20

21

22

23

24

25

26   NOTE: When service is by publication, add a brief statement of the object of the action. See
     Nevada Rules of Civil Procedure 4(b).
27

28

                                         2

# AFFIDAVIT OF SERVICE

STATE OF _____ )
                                  ) ss:
COUNTY OF _____ )

_____ , being duly sworn, says: That at all times herein Affiant was and is over 18 years of age, not a party to nor interested in the proceeding in which this Affidavit is made. That Affiant received copy(ies) of the Summons and Complaint, on the _____ day of November, 2010 and served the same on the _____ day of November, 2010 by:

(Affiant must complete the appropriate paragraph)

1. Delivering and leaving a copy with the Defendant _____ at (state address) _____ .

2. Serving the Defendant _____ by personally delivering and leaving a copy with _____ , a person of suitable age and discretion residing at the Defendant's usual place of abode located at (state address) _____ _____ .

[Use paragraph 3 for service upon agent, completing (a) or (b)]

3. Serving the Defendant _____ by personally delivering and leaving a copy at (state address) _____

(a) With _____ as _____ , an agent lawfully designated by statute to accept service of process;

(b) With _____ , as a person of suitable age and discretion at the above address, which address is the address of the resident agent as shown on the current certificate of designation filed with the Secretary of State.

4.      Personally depositing a copy in a mail box of the United States Post Office, enclosed in a sealed envelope, postage prepaid (Check appropriate method):

_____ Ordinary mail

_____ Certified mail, return receipt requested

_____ Registered mail, return receipt requested

3

addressed to the Defendant _____ at  Defendant's last known address which is

(state address) _____ .

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this _____ day of November, 2010.

_____
Signature of person making service

4

5 D

1  Gary W. Lial
2  Marqulinn Lial
   10480 Wildflower Gully Street
3  Las Vegas, Nevada 89178
   (702) 400-5010
4  Plaintiffs in proper person

**FILED**

Nov  8  4 01 PM '10

CLERK  OF  COURT

5          **DISTRICT COURT**

6          **CLARK COUNTY, NEVADA**

7  Gary W. Lial; Marqulinn Lial,

8          Plaintiffs,                    Case No.: A-10-628838-C

9      vs.                                Dept. No.:  II

10 Bank of America Corporation; Recontrust
11 Company; Federal National Mortgage
   Association; Mortgage Electronic Registration   **NOTICE OF LIS PENDENS**
12 Systems, Inc.; and Does 1 through 100,
   inclusive,



13          Defendants.

14

15        **NOTICE IS HEREBY GIVEN** that the above-entitled action concerning and affecting

16 real property as described herein was commenced in the above-entitled court on November 8,

17 2010 by Gary W. Lial and Marqulinn Lial, Plaintiffs, against Bank of America Corporation;

18 Recontrust Company; Federal National Mortgage Association; and Mortgage Electronic

19 Registration Systems, Inc., Defendants. The action is now pending in the above-named court.

20 The action concerns title to specific real property identified in the Complaint situated in Clark

21 County, Nevada, commonly known as 10480 Wildflower Gully Street, Las Vegas, NV 89178,

22 APN 176-27-810-002, and more particularly described as: ALTURAS UNIT 1 AT

23 MOUNTAINS EDGE PLAT BOOK 128 PAGE 82 LOT 2 SEC 27 TWP 22 RNG 60.

24        Dated this 8th day of November, 2010.

25

26 Gary W. Lial                           Marqulinn Lial
27 10480 Wildflower Gully Street          10480 Wildflower Gully Street
   Las Vegas, Nevada 89178                Las Vegas, Nevada 89178
28 (702) 400-5010                         (702) 400-5010
   Plaintiff in proper person            Plaintiff in proper person

**RECEIVED**

NOV - 8 2010

CLERK OF THE COURT

1    Gary W. Lial
2    Marqulinn Lial
     10480 Wildflower Gully Street
3    Las Vegas, Nevada 89178
     (702) 400-5010
4    Plaintiffs in proper person



```
A-10-628838-C
COMP
Complaint
1040187
```

*FILED*

Nov 8  3 39 PM '10

CLERK OF COURT

5                **DISTRICT COURT**

              **CLARK COUNTY, NEVADA**

8    Gary W. Lial; Marqulinn Lial,            | Case No. A-10-628838
9                      Plaintiffs,            | Dept. No. _____ II _____
10          vs.
11   Bank of America Corporation; Recontrust  | **COMPLAINT.**
12   Company; Federal National Mortgage
     Association; Mortgage Electronic Registration | **JURY TRIAL DEMANDED**
13   Systems, Inc.; and Does 1 through 100,
     inclusive,                               | **Exemptions from Arbitration claimed:**
14                                            | **1. The Amount in Controversy Exceeds**
15                      Defendants.           |    **$50,000.00**
                                              | **2. The Action Concerns Title to Real Estate**
16                                            | **3. Declaratory Relief Sought**

17          **COMPLAINT FOR: WRONGFUL FORECLOSURE;**
18               **CIVIL CONSPIRACY; QUIET TITLE;**
                 **DECLARATORY AND INJUNCTIVE RELIEF**
19

20          COMES NOW Gary Lial and Marqulinn Lial, Plaintiffs herein, and complains and

21   alleges against the Defendants as follows:

22                              **PARTIES**

23          1.       Plaintiffs, Gary W. Lial and Marqulinn Lial ("Plaintiff"), is, and was at all times

24   relevant hereto, a married couple domiciled in Las Vegas, Clark County, Nevada, and the

25   owner of real property located at 10480 Wildflower Gully Street, Las Vegas, Nevada 89178

26   (hereinafter referred to as the "subject property"), APN 176-27-810-002, and more particularly

27   described as: ALTURAS UNIT 1 AT MOUNTAINS EDGE PLAT BOOK 128 PAGE 82 LOT

28   2 SEC 27 TWP 22 RNG 60.

                                1

76

2.      Defendant Bank of America Corporation ("BAC") is a Delaware Corporation with resident offices located at 1209 Orange Street, City of Wilmington, County of New Castle, Delaware.  The resident agent is The Corporation Trust Center.  Bank of America is sued as the servicer of the subject loan, and as successor-in-interest to the loan "originator" Countrywide Home Loans.

3.      Defendant Recontrust Company ("Recontrust") is a wholly-owned subsidiary of Defendant Bank of America Corporation with offices located at 2380 Performance Drive, Richardson, Texas 75082.

4.      Defendant Federal National Mortgage Association ("FNMA") is a Government-Sponsored Entity ("GSE") existing as a stockholder-owned corporation chartered by Congress in 1970, whose address is 3900 Wisconsin Avenue, N.W., Washington, D.C. 20016.

5.      Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation that is not licensed to conduct business in Nevada, but it nevertheless purports to obtain security interests in real property located in Nevada.  On its website, MERS lists as its address 1818 Library Street, Suite 300, Reston, Virginia 20190.

6.      Defendants Does 1 – 100 are individuals, entities, and/or corporations, and the true names and capacities are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff alleges that each Defendant designated as a Doe is specifically responsible, in part, for the wrongful conduct alleged herein that injured and/or damaged Plaintiff on these premises, and that the Doe Defendants are responsible for the events and happenings referred to and proximately caused said injury and damage thereby to Plaintiff as alleged herein.  Plaintiff shall seek leave of Court to amend the Complaint to substitute the true names and capacities of each Doe Defendant when the same are ascertained and will further seek leave to join said Defendants in these proceedings.

## **GENERAL BACKGROUND**

7.      This is an action to cancel and/or declare as void a certain foreclosure proceeding regarding real property belonging to the Plaintiff on the bases that

2

(a)     the said sale has been scheduled by the Trustee, Defendant Recontrust, on erroneous orders from the loan servicer, Defendant BAC and/or the loan "investor" Defendant FNMA that the Plaintiff is in "default" when no such "default" exists;

(b)     the Trustee, in conjunction with the servicer (Defendant BAC), investor (Defendant FNMA), and the stated "beneficiary" on the Deed of Trust (Defendant MERS), recorded and delivered a "Notice of Default / Election to Sell Under Deed of Trust" ("Notice of Default") which purports to claim that the Plaintiff was "in default" on the mortgage loan when in fact the claim of "default" is incorrect due to, among other reasons, an incomplete, erroneous and/or intentionally misstated accounting (Plaintiff denies the existence of any such "default");

(c)     a recorded "Corporation Assignment of Deed of Trust" also purports to assign the Promissory Note, when in fact, there was no authority or ability on the part of the assignor for the said Note to be assigned through the recordation of the said document for the reasons described herein;  and

(d)     the Trustee, even after being notified by Plaintiff of the above deficiencies, knowingly and deliberately continued its foreclosure process upon the falsely-stated "default" and the purported transfer of interests created by the recorded "Assignment" but which "default" does not exist and which "assignment" did not legally occur.

8.     Plaintiff also seeks recovery for damages stemming from a civil conspiracy between the parties who commit and/or threaten to commit the wrongful foreclosure of the subject property; for declaratory and injunctive relief, and for quiet title.

9.     On or about November 15, 2006, Plaintiff entered into a loan agreement with Countrywide Home Loans, Inc. ("Countrywide").  The parties executed a Promissory Note, and a Deed of Trust with Plaintiff listed as "Trustor," MERS as both "nominee" for the Beneficiary and as "Beneficiary," and First American Title Company of Nevada as the original "Trustee."

10.     In or around 2008, the mortgage servicing rights were transferred to Bank of

3

America upon its acquisition of Countrywide.

11.     On or about March 30, 2010, Plaintiff submitted a Qualified Written Request ("QWR") via Certified Mail to the loan servicer, Defendant BAC, in an attempt to discover information regarding the owner of the Note, what happened in regard to the loan after Plaintiff executed the loan documents, and other facts and documentation, in accordance with the Federal RESPA statutes.  The said QWR was received by BAC on April 12, 2010, and is attached as Exhibit "1."

12.     Also on or about March 30, 2010, Plaintiff submitted, via Certified Mail, a separate one-page request to Defendant BAC in an attempt to ascertain the name, address, telephone number and person in charge of the owner of the Note; whether the loan had been securitized; and the complete chain of transfers of ownership.  The said separate request letter was received by BAC on April 5, 2010, and is attached as Exhibit "2."

13.     On or about May 25, 2010, Plaintiff received a response from Defendant BAC dated May 21, 2010, which provided a copy of the Deed of Trust and other documents which Plaintiff already had and did not request.  The letter also failed to include the name, address, telephone number or person in charge for the current owner of the said Note; however, it did state that "[t]he investor on your loan is Fannie Mae, located at 13150 World Gate Drive, Herndon, VA 20170 and their phone number is 1.703.933.1700."  The said response letter is attached as Exhibit "3."

14.     On or about June 14, 2010, Plaintiff received another letter from Defendant BAC, dated June 8, 2010, which included a "loan history" printout and a "full true and correct copy of the original" Interest Only Adjustable Rate Note.  However, the copy had no attached endorsements or allonges.  A copy of the cover letter and the included copy of the Note is attached as Exhibit "4."

15.     On or about June 14, 2010, **three days before** it was "substituted" as Trustee, Defendant Recontrust Company recorded a "Notice of Default / Election to Sell Under Deed of Trust" which states that Recontrust Company "is acting as an agent for the Beneficiary under a Deed of Trust dated 11/15/2006 executed by Gary W. Lial and Marqulinn Lial…to secure

certain obligations in favor or Mortgage Electronic Registration Systems, Inc., as beneficiary...."   Plaintiff received two different unsigned versions of the said Notice, containing different execution dates and different names for the "agent" of the beneficiary. The two Notices are attached as Exhibit "5."

16.   Subsequently, the Trusteeship for the subject Deed of Trust was purportedly changed on or about June 17, 2010, when Recontrust Company was substituted as the new Trustee at the behest of Defendant MERS, acting as "beneficiary." A "Substitution of Trustee" was recorded on June 17, 2010, and is attached hereto as Exhibit "6."

17.   On the same day as the above "Substitution of Trustee," and or about June 17, 2010, Defendant MERS also recorded a "Corporation Assignment of Deed of Trust Nevada" ("Assignment") which purported to assign and transfer all beneficial interest of the subject Deed of Trust, "together with the note" from Mortgage Electronic Registration Systems, Inc. to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP.   The said "Assignment" is attached as Exhibit "7."

18.   On or about June 25, 2010, Plaintiff received a letter from Defendant BAC, dated June 22, 2010, which claimed that, because of a "marked difference" between the signatures on the mortgage documents and Plaintiff's QWR, the QWR would not be responded to. A copy of the letter is attached as Exhibit "8."

19.   On or about October 25, 2010, Defendant Recontrust Company recorded a "Notice of Trustee's Sale" ("NTS") which stated that Defendant Recontrust Company "will sell on 11/10/2010, at 10:00 a.m...all right, title, and interest" in Plaintiff's real property, the subject of this lawsuit. The above NTS was recorded just 15 days prior to the scheduled sale date. The said NTS is attached as Exhibit "9."

20.   Also on or about October 25, 2010, Defendant Recontrust recorded a "Certificate of Foreclosure Mediation Nevada" stating that "no request for mediation was made or the Grantor has waived mediation." A copy of the said Certificate is attached as Exhibit "10."

/ / /

5

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.    The "Assignment of Deed of Trust" is a Nullity Without Force or Effect**

21.    On May 6, 2010, Defendant Recontrust Company recorded the "Corporation Assignment of Deed of Trust" which "grants, assigns and transfers to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP, all beneficial interest under that certain Deed of Trust dated 11/15/2006, executed by: Gary W. Lial, and Marqulinn Lial...." The assigning party is Mortgage Electronic Registration Systems, Inc. as "Beneficiary" and the assignment is dated/signed on June 14, 2010 by Khadija Gulley, as "Assistant Secretary" of MERS, but not notarized until June 15, 2010 by one Elsie E. Kroussakis, ostensibly a notary public in Tarrant County, Texas.

22.    The above "Assignment" contains language which states that the stated Deed of Trust is "assigned...**together with the note** or notes therein described or referred to, the money due and to become due therein with interest, and all rights accrued or to accrue under said Deed of Trust/Mortgage."

23.    There are obvious flaws in the above "Assignment" and the recording of same as it pertains to the "sale" of the subject property.  First, <u>MERS</u>, the purported "beneficiary" on the original Deed of Trust, and the assignor on the said "Assignment" <u>is not a beneficiary under the mortgage loan</u>.  The mere fact that this entity is a named "beneficiary" of a deed of trust is insufficient to enforce the obligation or to declare a "default," and, on information and belief, MERS had no authorization from the actual beneficiary to assign its "beneficial interest" in the Deed of Trust.

24.    The Deed of Trust attempts to name MERS as both a "beneficiary" and a "nominee." The document, on page 2, first says this:

> "MERS is a separate corporation that is acting solely as a **nominee** for Lender and Lender's successors and assigns."

And later it says this:

> "MERS is the **beneficiary** of this Security Instrument."

25.    However, MERS' own "Terms and Conditions" (attached as Exhibit "11")

6

1  identifies MERS' interests. The Terms and Conditions say this:

2  **"MERS shall serve as mortgagee of record with respect to all such mortgage**
3  **loans solely as a nominee, in an administrative capacity, for the beneficial**
   **owner or owners thereof from time to time. MERS shall have no rights**
4  **whatsoever to any payments made on account of such mortgage loans, to**
   **any servicing rights related to such mortgage loans, or to any mortgaged**
5  **properties securing such mortgage loans.** MERS agrees not to assert any rights
6  (other than rights specified in the Governing Documents) with respect to such
   mortgage loans or mortgaged properties. References herein to "mortgage(s)" and
7  "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed
   of trust and any other form of security instrument under applicable state law."
8
                                                                    *(Emphasis added.)*
9

10     26.    A "beneficiary" is defined as "one designated to benefit from an appointment,

11  disposition, or assignment . . . or to receive something as a result of a legal arrangement or

12  instrument." BLACK'S LAW DICTIONARY 165 (8 ed. 2004). But it is obvious from the

13  MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever

14  to any payments, to any servicing rights, or to any of the properties secured by the loans.

15  MERS was not the "lender" or the "creditor" of the mortgage loan and there was no

16  arrangement between this entity and the Plaintiff for MERS to receive anything.

17     27.    Additionally, the term "nominee" is not synonymous to "agent" which MERS

18  must be to act on behalf of the true beneficiary. Without the agency relationship, MERS'

19  authority to perform as stated on the recorded "Assignments" is lacking.

20     28.    Moreover, MERS, even if it were the "agent" for the beneficiary would only

21  possess those powers that the named beneficiary possessed. The named beneficiary was

22  Countrywide Bank, a now-defunct entity. MERS is not the "nominee" or "agent" of any other

23  entity in this matter.

24     29.    Further, BAC, upon its acquisition of Countrywide, acquired only the mortgage

25  servicing rights of the subject loan, and was never either the beneficiary or the Note Holder. If

26  MERS were the "nominee" or even the lawfully-appointed "agent" of BAC, it would only be

27  the nominee or agent of a *loan servicer*, not the *beneficiary*.

28     30.    But even more revealing is the fact that MERS is not mentioned *at all* as having

any authority regarding ownership of the Promissory Note, its enforcement rights, or the right to transfer them.   Indeed, the Note, a negotiable instrument, is "negotiated" with an endorsement, so that the new "holder" can prove its authority to enforce its terms.  Therefore, according to the laws cited below taken from a recent court case in Nevada, **MERS did not assign anything**, because, lacking any authority to "assign" the Note, it had no authority to assign both documents, since an assignment of only the Deed of Trust is a "nullity:"

> For there to be a valid assignment for purposes of foreclosure both the note and the deed of trust must be assigned. A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust. **When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured."** RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. a (1997). **A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it.** See RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. e (1997). **"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper."** 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).                    *[Emphasis added.]*

*In re JOSHUA & STEPHANIE MITCHELL*, Case No. BK-S-07-16226-LBR.

31.    Apparently, the Defendants have attempted to "assign" the mortgage documents "together" because of the well-established property law cited above which mandates assignment of both the Note and Deed of Trust to be valid.

32.    Nevada law (at NRS 104.3302) defines those who are entitled to enforce a negotiable instrument, i.e., the "Promissory Note" as either (1) a "holder" of the instrument; (2) a non-holder in possession who has the rights of a holder; or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to NRS 104.3309 or subsection 4 of NRS 104.3418.

33.    Additionally, NRS 104.3203 does not make a mere possessor of a note the "holder," rather, one becomes a "holder" of the subject promissory note only upon "transfer" of

the promissory note <u>along with the right to enforce it:</u>

**NRS 104.3203   Transfer of instrument; rights acquired by transfer.**

1.  An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

2.  Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

3.  Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.

4.  If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this article and has only the rights of a partial assignee.

34.     In the case of an instrument payable to a specifically identified person, transfer of possession of the instrument along with an endorsement is necessary.  Without that necessary endorsement, the transferee still receives an enforceable interest – however, it is not enforceable against the issuer, rather, the enforceable interest is the specifically enforceable right to the unqualified endorsement of the transferor.

35.     It is noteworthy that several states, in their adoption of the UCC, have added comments regarding the proof necessary to make a claim of enforceable interest.  In the Vermont statutes, for example, such comments state:

"Because the transferee's rights are derivative of the transferor's rights, **those rights must be proved.** Because the transferee is not a holder, there is no presumption that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the

transferee must account for possession of the unendorsed instrument by proving the transaction through which the transferee acquired it."

9A V.S.A. 3-203(a),(b). *[emphasis added.]*

36. Therefore, MERS is not a "beneficiary" nor the agent for the beneficiary; is not a "holder" of the Note or a "nonholder with rights of enforcement;" nor is it empowered to perform any act *at all* with respect to the Promissory Note. Its "assignment" is a proven nullity.

37. The flaws in this "Assignment" indicates that it cannot survive the scrutiny of legal requirements for recorded title documents, and the lack of authority which proceeds is enough to invalidate any scheduled "sale" or "public auction" whether or not so authorized in the loan documents.

38. Defendants have behaved egregiously in conducting this fraud, while committing a violation of Nevada law found at NRS 239.330:

> **NRS 239.330 Offering false instrument for filing or record.** A person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office, which instrument, if genuine, might be filed, registered or recorded in a public office under any law of this State or of the United States, is guilty of a category C felony and shall be punished as provided in NRS 193.130.

39. These Defendants now attempt to take Plaintiff's home based on these fraudulently executed and recorded "Assignments."

**B.     The Recorded "Notice of Default" is False**

40. In addition to the fraudulent "Assignment" recorded as described above, as part of Defendants' unlawful scheme to take Plaintiffs' property, a "Notice of Default" was also recorded on or about April 30, 2010.

41. The claim that Plaintiff is in "default" is either erroneous or intentionally misstated by the servicer, Defendant BAC. Plaintiff asserts that Defendant BAC received immense payouts in the form of federal bailout monies, assistance from the Federal Reserve, TARP funds, TALF, Maiden Lane deals, and benefited from other funds, in the form of insurance guarantees, overcollateralization, cross-collateralization, and credit default swaps,

solely due to having loans such as the Plaintiff's on their books, and for the purpose of helping homeowners avoid foreclosure.

42.    In addition, on information and belief, the loan passed through a series of undisclosed agreements between the Defendants and other unknown parties, wherein the borrower-Plaintiff signed a Note to Countrywide, which Note states that Countrywide is the "lender" but which claim is refuted by Plaintiff. Plaintiff alleges, on information and belief, that Countrywide's involvement was limited to only receiving a fee from the true creditor for acquiring Plaintiff's signatures on the loan documents. Plaintiff therefore asserts that the wrong party is named on both the Note and Deed of Trust, as well as the fact that MERS is a meaningless nominee on the said Deed of Trust, which completely invalidates the documents and clouds the title.

43.    As part of this process, on information and belief, Plaintiff alleges that the "lender" received a mortgage bond NOT SIGNED BY THE BORROWER but issued by a separate entity, which bond states that this new entity will pay them from "receivables." The receivables include, BUT ARE NOT LIMITED TO, the payments from the borrower who accepted funding of a loan. These other parties were not disclosed to either the borrower or the lender.

44.    Plaintiff's account has not been credited for even one cent of any such funds or "receivables."

45.    Monies paid by third parties on an account are still monies paid on that account.

46.    Therefore, Plaintiff's account is entitled to be offset by at least a portion of those immense funds and "receivables."

47.    Additionally, as evidenced by Countrywide's own admissions regarding its mortgage loans made during the period when Plaintiffs received their loan, this loan was most definitely securitized. As part of the terms of the securitization of the loan, Plaintiff's payments were paid out to investors as "returns on investments," and not applied to either "principal" or "interest" to the beneficiary on the Deed of Trust as represented in the loan documents. This is improper, fraudulent, and a breach of the loan agreement by all parties involved.

48.     Moreover, when a note is securitized, it is bifurcated – split – from the Deed of Trust, with the ramifications described earlier. The Note became unsecured, and the beneficiary of the Deed of Trust, the "lender," can suffer no default, as only the holder of the Note is entitled to payment.

49.     Therefore, any claim of "default" is incomplete, erroneous, and intentionally misstated.   Such claim is unsubstantiated without a full and complete accounting of the application of all Plaintiff's payments which were paid to the Note Holder(s), together with an accompanying statement/affidavit of a competent witness with personal knowledge.   Plaintiff rejects all such claims of "default" by any and all Defendants as false and a fraud upon the Plaintiff and the Court.

**C.     Nevada's Non-Judicial Process is Improper for Securitized Loans**

50.     Nevada's allowance for non-judicial sale in mortgages makes them a private matter, implying that the transaction is governed by the contract which contains the terms agreed upon by the parties.

51.     Plaintiff's loan was definitely securitized, and in that process, terms and conditions were added which were not revealed or included in the loan documents provided them at the closing, or at any time before or since.

52.     For example, Plaintiff's payments were disbursed to investors as "returns" and also as "fees" to the servicer, securitization trustee, and other undisclosed parties, and not applied to the mortgage, as was represented in the loan documents and the monthly mortgage statements.

53.     The Defendants herein are using the non-judicial "power of sale" as an attempt to avoid due process.   These Defendants have scheduled to sell Plaintiff's property without any showing that they could credibly make the necessary allegations for a judicial foreclosure, i.e., the rightful authority to enforce the loan Note.   There is no evidence that shows the Note is endorsed and made payable to any party herein; or that such endorsement followed a proper chain of transfers from prior parties who possessed the authority to enforce the obligation; or that any party is the true creditor to whom the obligation is owed, and that the obligation is still

secured by the mortgaged property.

54.     The fact that the Note is owned and held by a separate entity as the beneficial interest on the Deed of Trust proves that the Note was separated from the Deed and both instruments are unenforceable.  Otherwise, the beneficial interest in the Deed of Trust would be meaningless.  Since Nevada law favors non-judicial sale by the beneficiary on the Deed of Trust, this interest is obviously not meaningless, and an essential element – but only one-half – of the necessary power to foreclose.  As stated earlier, the Beneficiary cannot claim that the Plaintiff is in "default" to it.  Since "default" of the borrower is the triggering event which initiates foreclosure, the Beneficiary which is not the owner of the Note, therefore, cannot ever lawfully conduct the non-judicial sale of the subject property, because the money is not owed to the Beneficiary.

55.     Further, as shown earlier, the Defendants herein recorded documents in an attempt to "validate" their foreclosure by attempting to bring both interests "together" again.  However, the documents were recorded in violation of Nevada law as they contain false information regarding MERS' lack of authority and lack of interest in the Note, and therefore, only purport to assign interests in the loan, when in fact no lawful assignment took place.  The "Assignment" is a legal nullity, as is the "Notice of Default" and quite possibly also the "Substitution of Trustee;" and therefore, any "sale" based on the said documents is also a nullity, and a fraud upon the Plaintiff.

56.     Plaintiff has objected to this sale from the beginning, and continues to object, based on the assertion that no party involved in the sale has proven its authority to lawfully carry it out.  The foreclosing parties should be compelled to show the court proof of the allegations they would be required to make if they filed a judicial foreclosure.  In other words, non-*judicial* should not mean non-*legal*.

57.     Regarding all the above, Defendants' conduct, and each·of them, was done as a group of individuals or associations in the mortgage industry conspiring together for their mutual benefit, in disregard of the law, to the disadvantage of the Plaintiff, and, in light of their "responses" to Plaintiff's certified letters, proceed with a clear intention to cause financial and

emotional damage to the Plaintiff.

## FIRST CAUSE OF ACTION

### (Wrongful Foreclosure)

### (All Defendants)

58.    Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

59.    Plaintiff alleges that these Defendants have committed a Wrongful Foreclosure of the subject property by the following bases:

(a)    Fraud.   The documents on which the parties base their non-judicial foreclosure are the recorded "Corporation Assignment of Deed of Trust Nevada" and the "Notice of Default." As stated earlier, these documents contain false information, and were recorded in violation of Nevada law. The "Assignment" purports to "assign" both the Deed of Trust and the Note by MERS. MERS has no authority at all to "assign" the negotiable instrument referred to as the subject Promissory Note, and therefore, the said "Assignment" is a nullity because the beneficial interest in the Deed of Trust cannot be assigned in and of itself. Further, it is questionable as to whether MERS, acting as "nominee" and not the "agent" of the now-defunct lender even has the authority to "assign" the beneficial interest in the Deed of Trust. In addition, the "Notice of Default" is erroneous and invalid without a full and complete accounting, verified by a competent witness with personal knowledge, which included all monies received, whether by Plaintiff or by third parties, concerning the said mortgage loan. Plaintiff rejects and denies any claimed "default" by these Defendants. The said recorded documents are fraudulent, void on their face, lack authority, and are therefore without any legal force or effect.

(b)    Misrepresentation. Nowhere in the loan documents was it disclosed that the "mortgage loan" was in reality a disguised securities transaction, which resulted in Plaintiff making payments that were not credited to the mortgage/received by the

14

mortgagee, but instead, went to pay "returns" to investors who bought shares in the pooled mortgage-backed security instrument that contained Plaintiff's Note.  Plaintiff has not contracted with, and is therefore under no obligation and cannot be in "default" to, any secondary-market investors who do not, and cannot, apply the paid "returns" to the mortgage.  Also not disclosed were numerous terms and parties necessary to complete the securitization of the notes in the pool (aggregators); to market the said security (underwriters); to pay certificateholders (securities administrator); to guarantee payment in the event the borrower would default (insurance, cross-collateralization, overcollateralization, credit default swaps); plus master servicer's fees, sub-servicer's fees, trustee's fees, and most importantly, the fact that upon its sale of the note, the stated "lender" on the loan documents was paid in full satisfaction of the mortgage (but did not inform Plaintiff of this fact), and had split the Note from the Deed of Trust, rendering both of them unenforceable, as per the laws cited herein.

Additionally, when Plaintiff's payments were handled by the "servicer" each month, divided up as per the Pooling and Servicing Agreement, and paid out to the servicer(s), trustee, the investors of the security instrument, and possibly additional parties, with NONE of these monies being applied to interest or principal, the servicer made it *appear* as though the payments were so applied, by using illegal "off-balance sheet" accounting methods.  A true and complete accounting will clearly show that any of Plaintiff's payments that were handled in this way could not have been applied to the mortgage, rendering it impossible for Plaintiff to purchase their home in this way.

Further, these Defendants received immense payouts in the form of federal bailout monies, assistance from the Federal Reserve, TARP funds, TALF, Maiden Lane deals, and benefited from other funds, in the form of insurance guarantees, overcollateralization, cross-collateralization, and credit default swaps, solely due to having loans such as the Plaintiff's on their books.   Plaintiff's account has not been credited for even one cent of any such funds.  Monies paid by third parties on an account are still monies paid on that account.  Therefore, Plaintiff's account should be offset by

1 at least a portion of those immense funds.

2 60. Plaintiff entered into the agreement in good faith that Defendant would not have

3 misrepresented facts or included fraudulent terms and conditions in its loan process.

4 61. Defendants owed Plaintiff a duty to perform any actions pertaining to the

5 "enforcement" of the mortgage instruments (i.e., the foreclosure or non-judicial sale of the

6 property) in a lawful manner, <u>or to refrain from performing such acts if they lacked the</u>

7 <u>authority to do so.</u>

8 62. Defendants did in fact misrepresent the terms and conditions for the mortgage

9 loan in its documentation; and did in fact schedule the non-judicial sale in an unlawful manner

10 and without authority as detailed herein.

11 63. Plaintiff requests that this honorable Court order that the non-judicial sale of the

12 subject property be set aside and/or voided due to the misrepresentations made and the

13 fraudulent documents recorded by Defendants; and that Defendants be ordered to restore

14 Plaintiff to their position prior to entering into the loan agreement, including the restoration of

15 all payments made by Plaintiff to Defendants under the subject loan agreement, and the

16 reimbursement of all costs incurred by Plaintiff in the process of bringing this lawsuit.

17 64. As a direct and proximate result of the conduct of Defendants, and each of

18 them, Plaintiff has been damaged in an amount in excess of $10,000.00, the exact amount to be

19 proven at trial.

20 65. In addition, the conduct of Defendants was done willfully, intentionally, with

21 malice and oppression, and with a conscious disregard for Plaintiff's rights, causing severe

22 financial and emotional distress, and therefore, Plaintiff is entitled to punitive damages in an

23 amount deemed appropriate to punish Defendants for their egregious and outrageous conduct.

24

25 **SECOND CAUSE OF ACTION**

26 **(Civil Conspiracy)**

27 **(All Defendants)**

28 66. Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth

16

herein.

67.     These Defendants, and each of them, reached an understanding and engaged in the sequence of events and/or course of conduct described herein, and otherwise agreed and conspired together and profited by their conduct as set forth herein, and are currently threatening to commence a wrongful foreclosure and trustee's sale, to take Plaintiff's property when no party has the authority to do so.

68.     The Defendants, and each of them, acted together in the furtherance of this common scheme, plan and/or conspiracy with the knowledge, objective, and mutual purpose that they would profit from their wrongful conduct at the expense of the Plaintiff.  Defendants have commenced an unlawful non-judicial foreclosure and scheduled sale of the subject property by (1) recording a "Notice of Default and Election to Sell" which is false because there was no default and no party listed therein possessed the authority to sell the property; and (2) recording a fraudulent "Assignment of Deed of Trust" which is a nullities due to lack of authority of the assignor to "assign" the Note.

69.     As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been damaged in an amount in excess of $10,000.00, the exact amount to be proven at trial.

70.     In addition, the conduct of Defendants was done willfully, intentionally, with malice and oppression, and with a conscious disregard for Plaintiff's rights, causing severe financial and emotional distress, and therefore, Plaintiff is entitled to punitive damages in an amount deemed appropriate to punish Defendants for their egregious and outrageous conduct.

### THIRD CAUSE OF ACTION

#### (Quiet Title)

#### (All Defendants)

71.     Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

72.     The stated "lender" on the original loan documents, Countrywide Home Loans,

sold Plaintiff's Promissory Note to be securitized.  As a result of said sale, Countrywide only retained the mortgage servicing rights.

73.     When Defendant Bank of America acquired Countrywide, Bank of America acquired only the mortgage servicing rights to the subject loan.  BAC is not the owner of the Note nor the beneficiary on the Deed of Trust.  Therefore, Defendant BAC has no lawful claim to any right or interest to title of the subject property.

74.     Defendant Recontrust cannot claim any interest in the title to the subject property, as its role of Trustee does not include having title transferred or conveyed to it in any way.  Recontrust never, at any time, was either the owner/holder of the Note or the beneficiary of the Deed of Trust.

75.     Defendant MERS cannot claim any interest in the title or lawfully take possession of the subject property by virtue of the fact that MERS did not at any time, and does not now, own the Note or hold a beneficial interest in the Deed of Trust, nor is MERS the properly designated agent for any party to the foreclosure or non-judicial sale.  MERS' representation as "nominee" for the lender, while in itself suspect as it is unclear what a "nominee" may lawfully do, is by its nature lacking in proper authority which only a properly designated "agent" possesses.  Moreover, even assuming MERS was the agent for the lender, the lender is not currently the owner of the Note.

76.     These Defendants are aware that none of them possesses the original note, and none was or is entitled to foreclose, sell, or otherwise enforce the loan instruments.  Along with the egregious behavior of knowingly commencing the unlawful foreclosure and sale of Plaintiff's property and recording documents in violation of Nevada law, none of the named Defendants has any clear or definable interest in the title to the subject property.

77.     Plaintiff therefore alleges that Defendants' claims of interest in the subject property are without any merit whatsoever, as said Defendants have no legal or equitable right, claim, or interest in said property.  Conversely, Plaintiff is the only party that entered the transaction with good faith and clean hands, and is also the only party with a clear and definable interest in the title to the subject property.

18

78.     This Court possesses the equitable authority to quiet the title to this property based upon the inability of each and every Defendant to establish their rights, title and interest to any portion of the subject property.

79.     Plaintiff therefore seeks a declaration and/or order that the title to the subject property is vested in Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property, and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.  Plaintiff requests that the Court quiet the title or record the subject property in the sole name of Gary W. Lial and Marqulinn Lial, Plaintiffs herein, subject to any lawful encumbrance.

## FOURTH CAUSE OF ACTION

### (Injunctive Relief)

### (All Defendants)

80.     Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth herein.

81.     Based on the foregoing information and evidence attached hereto, Defendants have committed numerous fraudulent acts to facilitate an unlawful sale and conveyance of Plaintiff's property.  In doing so, Defendants have proven their intent to harm Plaintiff.

82.     Therefore, Plaintiff requests that this honorable Court issue injunctive relief to permanently enjoin all Defendants, as well as their agents, affiliates, subsidiaries, employees and/or assigns, from taking any further action adverse to Plaintiff's free and clear use and enjoyment of the subject property.

83.     Plaintiff further requests that this Court declare and order that any other mortgages and/or encumbrances be removed from the title to the subject property, and that the Court enter any order in furtherance of the relief requested herein, including additional injunctive relief.

/ / /

## **VERIFICATION**

I, Marqulinn Lial, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.



Marqulinn Lial

STATE OF NEVADA          )
                         ) s.s.
COUNTY OF CLARK          )

This instrument was acknowledged before me on the 8th day of October, 2010, by Marqulinn Lial.

(Signature of Notary)

(Notary Seal)

> Notary Public - State of Nevada
> County of Clark
> JIM LIAOS
> My Appointment Expires
> December 29, 2010
> No: 07-1102-1

22

WHEREFORE, Plaintiff hereby requests that judgment be entered against Defendants and each of them, and in favor or Plaintiff as follows:

1.      Special damages in excess of Ten Thousand dollars ($10,000.00);

2.      General damages in excess of Ten Thousand dollars ($10,000.00);

3.      Punitive damages in an amount deemed appropriate to punish Defendants for their egregious and wrongful conduct;

4.      Costs of this lawsuit and attorney fees if and where applicable;

5.      That the Court quiet title as to all claimants except for Plaintiffs Gary W. Lial and Marqulinn Lial, who are the rightful property owners, subject to any lawful encumbrance;

6.      In addition to the monetary damages prayed for above, that the Court cancel, void and/or set aside the sale of the subject property; expunge the fraudulent documents recorded by the Trustee; and rescind the subject loan so that Plaintiff is not disadvantaged by the wrongful conduct of these Defendants;

7.      For injunctive relief as requested; and

8.      For such other and further relief as this Court deems just and proper.

Dated this 8th day of November, 2010.

_____
Gary W. Lial
10480 Wildflower Gully Street
Las Vegas, Nevada 89178
(702) 400-5010
Plaintiff in proper person

_____
Marqulinn Lial
10480 Wildflower Gully Street
Las Vegas, Nevada 89178
(702) 400-5010
Plaintiff in proper person

## VERIFICATION

I, Gary W. Lial, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

_Gary W. Lial_
Gary W. Lial

STATE OF NEVADA          )
                         ) s.s.
COUNTY OF CLARK          )

This instrument was acknowledged before me on the 8th day of October, 2010, by Gary W. Lial.

_Jim Liaos_
(Signature of Notary)

(Notary Seal)



Notary Public - State of Nevada
County of Clark
JIM LIAOS
My Appointment Expires
December 29, 2010
No: 07-1102-1

21