# EXHIBIT "1"

*Gary Lial*
*Marqulinn Lial*
*10480 Wildflower Gully Street*
*Las Vegas, Nevada 89178*
*(702) 400-5010*

---

30 March 2010                                    Via Certified Mail # **7008 1140 0002 4186 4831**

Bank of America
450 American Street
Simi Valley, CA 93065

Re:     Property located at 10480 Wildflower Gully Street, Las Vegas, Nevada 89178
        APN # 176-27-810-002

## QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT AND VALIDATION OF DEBT LETTER, TILA REQUEST

**This letter is a "Qualified Written Request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**

Reference: Account / Loan # 151357651 formerly with Countrywide (hereinafter the "subject loan" and is the reference for all questions and requests described below).

Dear Sir or Madam:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent me, and the conversations with your service representatives have been unproductive and have not answered my questions.

Needless to say, I am very concerned. With all the news lately regarding the stories of predatory lending, you have left me feeling that there is something you are trying to hide. I worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute first-hand evidence from you of the original uncertificated or certificated security regarding account # 151357651. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one.

I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe, as well as any right to foreclose. By "debt" I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements in order to refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:
- Increased the amounts of monthly payments;
- Increased the principal balance I owe;
- Increased the escrow payments;
- Increased the amounts applied and attributed toward interest on this account;
- Decreased the proper amounts applied and attributed toward the principal on this account; and/or
- Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you ensure that I have not been the victim of such predatory servicing and lending practices.

To ensure this, I have authorized a thorough review, examination, accounting and audit of mortgage account #151357651 by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by myself and others to ensure:

1 – That this loan was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;

2 - That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

3 - That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4 - That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5 - That each servicer and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6 - That each servicer and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof, ;

7 - That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation

through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof ;

8 - That interest and principal have been properly calculated and applied to this loan;

9 - That any principal balance has been properly calculated, amortized and accounted for;

10 - That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account or my name.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account # 151357651:

1 - Any certificated or uncertificated security used for the funding of this account;

2 - Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

3 - Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4 - Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5 - Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6 - Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7 - Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8 - Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9 - Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10 - Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11 - Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12 - Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13 - Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party;

Please also send me copies, front and back, of:

1 - Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter;

2 - Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note;

3 - Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust **and** any Note, including any and all assignments or transfers or nominees of any substitute trustees(s);

4 - Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note;

5 - Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note;

6 - Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note;

7 - Any documentation evidencing the Mortgage/Deed of Trust is **not** a constructive trust or any other form of trust;

8 - All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

9 - All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

10 - All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignment on MERS.

11 - All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

12 - All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

13 - The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14 - All escrow analyses conducted on this account from the inception of this account until the date of this letter.

15 - The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16 - Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

17 - All letters, statements and documents sent to me by your company.

18 - All letters, statements and documents sent to me by agents, attorneys or representatives of your company.

19 - All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20 - All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21 - All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22 - All copies of property inspection reports, appraisals, BPOs and reports done on my property.

23 - All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24 - All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.

25 - All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26 - All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

27 - All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

**In regards to Account Accounting and Servicing Systems:**

1 - Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2 - For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3 - For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

**In regards to Debits and Credits:**

1 - In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2 - In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3 - For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4 - For each transaction code, please provide the master transaction code list used by you or previous servicers.

**In regards to Mortgage and Assignments:**

1 - Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?

2 - If not, why?

3 - Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4 - Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5 - If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**In regards to the creation & sale of a securitized instrument:**

1 - Has the pooling of my note with other notes created a security instrument?

2 - If yes, was it a negotiable instrument or non-negotiable?

3 - When the instrument was sold by you, what were the terms?

4 - How many other notes were combined with mine to create the securitized instrument?

5 - Was any type of insurance policy attached and paid for to guarantee payment of the securitized instrument?

6 - If yes, who was the issuer of the insurance which guaranteed payment, and what were the terms of the policy?

7 - Were all the rules and regulations of the United States Securities and Exchange Commission followed in all steps of the creation, assignment, transfer and/or sale of the securitized instrument by your company?

8 - Please provide a copy of all SEC filings regarding this securitized instrument which contained my note or an interest in it.

9 - Was my note pooled more than once with other notes?

10 - Did my original promissory note accompany the transfer of interest when it was pooled with other notes?

11 - If yes, who was the recipient of my original promissory note?

12 - Please provide a copy of each assignment and/or transfer of interest in my promissory note from the date of its inception.

13 - Did you inform me of every transfer of assignment of my note?

14 - If no, why not?

15 - Please provide a copy of all purchase payments made for the interest in my note or the pooled asset/security of which certificates were sold, along with the dates, amounts, and names of the holders.

16 - Was my note credited with payments made to the pool in which it belonged?

17 - If yes, please provide that accounting.  If no, why not?

18 - Were payments I made to my mortgage loan used to pay deficiencies of other notes in the same pool?

19 - Please provide a copy of the printed terms of the purchase of certificates in the securitized instrument which were offered to investors of the pooled asset which contained my note or an interest in it.

20 - Please provide a copy of the pertinent section of the SEC rules and regulations governing the creation, marketing and sale of a security instrument of the type created by the signing and pooling of promissory notes by me and numerous other borrowers.

**In regards to Attorney Fees:**

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1 - Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

2 - If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3 - Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4 - If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5 - Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

6 - If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7 - Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8 - Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

9 - Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10 - Please detail and list for me in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11 - Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12 - Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

13 - Has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

14 - Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

15 - How much total in attorney fees have been assessed to this account from the inception to the present date?

16 - How much total in attorney fees have been collected from this account from the inception to the present date?

17 - How much total in attorney fees have been charged to this account from the inception to the present date?

18 - Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

*Qualified Written Request – Bank of America – 30 March 2010*                    11

**In regards to Suspense/Unapplied Accounts:**

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1 - Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2 - If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3 - In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

**In regards to late fees:**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1 - Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2 - Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3 - Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4 - Are late fees considered interest? Yes or No?

5 - Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6 - Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7 - If yes, please describe what expenses or damages were charged or assessed to this account.

8 - Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.

9 - Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.

10 - Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of late fees.

11 - Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12 - Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13 - Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14 - Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15 - Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16 - Have any late charges been assessed to this account? Yes or No?

17 - If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18 - Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19 - Have late charges been collected on this account from the inception of this account to the present date? Yes or No?

20 - If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1 - Have any property inspections been conducted on my property from the inception of this account to the present date? Yes or No?

2 - If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3 - If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4 - Please tell me the price charged for each property inspection.

5 - Please tell me the date of each property inspection.

6 - Please tell me the name and address of each company and person who conducted each property inspection on my property.

7 - Please tell me why property inspections were conducted on my property.

8 - Please tell me how property inspections are beneficial to me.

9 - Please tell me how property inspections are protective of my property.

10 - Please explain to me your policy on property inspections.

11 - Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12 - If yes, why?

13 - Do you use property inspections to collect debts? Yes or No?

14 - Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe? Yes or No?

15 - If yes, please answer when and why?

16 - Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees.

17 - Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?

18 - If yes, why?

19 - Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

20 - If yes, why?

21 - Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22 - Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23 - Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24 - Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?

25 - Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

26 - If yes, when and how much was charged?

27 - Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

28 - How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

29 - How much total in inspection fees has been collected on this account from the inception of this account to the present date?

30 - Please forward to me copies of all property inspections made on my property in this mortgage account file.

31 - Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1 - Have any BPOs (Broker Price Opinions) been conducted on my property? Yes or No?

2 - If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

3 - If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4 - Please tell me the price of each BPO.

5 - Please tell me who conducted the BPO.

6 - Please tell me why BPOs were conducted on my property.

7 - Please tell me how BPOs are beneficial to me.

8 - Please tell me how BPOs are protective of my property.

9 - Please explain your policy on BPOs.

10 - Have any BPO fees been assessed to this account? Yes or No?

11 - If yes, how much in total BPO fees have been charged to this account?

12 - Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of a BPO fee from me.

13 - Please send to me copies of all BPO reports that have been done on my property.

14 - Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**

1 - Have you placed or ordered any force-placed insurance policies on my property?

2 - If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed of trust or note.

3 - Please tell me the price of each policy.

4 - Please tell me the agent for each policy.

5 - Please tell me why each policy was placed on my property.

6 - Please tell me how the policies are beneficial to me.

7 - Please tell me how the policies are protective of my property.

8 - Please explain to me your policy on force-placed insurance.

9 - Have any force-placed insurance fees been assessed to this account? Yes or No?

10 - If yes, how much in total force-placed insurance fees have been assessed to this account?

11 - Have any force-placed insurance fees been charged to this account? Yes or No?

12 - If yes, how much in total force-placed insurance fees have been charged to this account?

13 - Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of force-placed insurance fees from me.

14 - Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15 - Do you have any relationship with the carrier that issued any policies on my property? If yes, please describe.

16 - Has the agency or carrier you used to place a forced-placed insurance on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17 - Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18 - Please send to me copies of all forced-placed insurance policies that have been ordered on my property from the inception of this account to the present date.


**In regards to Servicing:**

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this account from its inception to the present date.

1 - Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2 - Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?


*Qualified Written Request – Bank of America – 30 March 2010*                                        17

3 - Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4 - Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected.

5 - Where is the original monetary instrument or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6 - Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7 - Since the inception of this account, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8 - Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9 - Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10 - Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

11 - Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12 - Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13 - Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

14 - Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15 - Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16 - Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17 - How much was paid for this individual mortgage account by you?

18 - If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

19 - If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

20 - Who did you issue a check or payment to for this mortgage loan?

21 - Please provide me with copies of the front and back of the canceled check.

22 - Did any investor approve of the foreclosure of my property? Yes or No?

23 - Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24 - Please identify all persons who approved the foreclosure of my property.

Please provide me with the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and my congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

### Default Provisions under this QUALIFIED WRITTEN REQUEST

Bank of America or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in Gary and Marqulinn Lial or any property or collateral connected to Gary and Marqulinn Lial or account #151357651 and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1 - Gary and Marqulinn Lial's right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment Bank of America may have or may have had in connection with account #151357651 and any property and/or real estate connected with account #151357651.

2 - Gary and Marqulinn Lial's right to have any certificated or uncertificated security re-registered in Gary and Marqulinn Lial's, and only Gary and Marqulinn Lial's name.

3 - Gary and Marqulinn Lial's right of collection via Bank of America's liability insurance and/or bond.

4 - Gary and Marqulinn Lial's entitlement in filing and executing any instruments, as power of attorney for and by Bank of America, including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where Bank of America is located.

5 - Gary and Marqulinn Lial's right to damages because of Bank of America's wrongful registration, breach of intermediary responsibility with regard to Gary and Marqulinn Lial's asset by Bank of America issuing to Gary and Marqulinn Lial a certified check for the original value of Gary and Marqulinn Lial's monetary instrument.

6 - Gary and Marqulinn Lial's right to have account #151357651 completely set off because Bank of America's wrongful registration, breach of intermediary responsibility with regard to Gary and Marqulinn Lial's monetary instrument/asset by Bank of America sending confirmation of set off of wrongful liability of Gary and Marqulinn Lial and issuing a certified check for the difference between the original value of Gary and Marqulinn Lial's monetary instrument/asset and what Gary and Marqulinn Lial mistakenly sent to Bank of America as a payment for such wrongful liability.

Bank of America or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for Bank of America in accordance with Bank of America's Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as Bank of America's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When Bank of America fails by not rebutting to any part of this RESPA REQUEST Bank of America agrees with the granting unto Gary and Marqulinn Lial's unlimited Power of Attorney and any and all full authorization in signing and endorsing Bank of America's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by Bank of America waives any and all claims of Gary and Marqulinn Lial, and/or defenses and remains in effect until the satisfaction of all obligations by Bank of America have been satisfied.

Sincerely,

Gary Lial

# EXHIBIT "2"

**Gary Lial**
**Marqulinn Lial**
*10480 Wildflower Gully Street*
*Las Vegas, Nevada 89178*
*(702) 400-5010*

---

30 March 2010                               Via Certified Mail # **7008 1140 0002 4186 4824**

TO:   Bank of America
      450 American Street
      Simi Valley, CA 93065

**REFERENCE:**
**BORROWER: Gary Lial and Marqulinn Lial**
**PROPERTY ADDRESS: 10480 Wildflower Gully St, Las Vegas, NV 89178**
**APN NUMBER: 176-27-810-002**
**CLOSING DATE: 15 November 2006**
**COUNTRYWIDE LOAN NUMBER: 143117030 & 151357651**

Dear Sir/Madame:

In accordance with 15 USC § 1641(f)(2), please provide answers for the following:

1. Who is the current owner of the Note(s) for the above-referenced loans?  Please provide name, address, telephone, and person in charge.
2. Have these loans been securitized?
3. Please provide the full chain of transfers and assignments of the Notes, or if you are unable to provide it, please provide the name of the person or agency who can provide it.

Thank you for your consideration.

Sincerely,

Gary Lial

---

*15 USC 1641 – Bank of America – 30 March 2010*

# EXHIBIT "3"

Bank of America

Office of the CEO and President

May 21, 2010

Office of the Comptroller of the Currency
Customer Assistance Group
1301 McKinney Street, Suite 3450
Houston, TX  77010

Best Available Copy

Customer Name:  Gary Lial
Property Address: 10480 Wildflower Gully Street, Las Vegas, NV. 89178
Bank of America account ending: 7651

Dear Mr. Lial:

Bank of America's Office of the CEO and President acknowledges receipt of your inquiry, dated April 19, 2010.
As a Customer Advocate, I welcome the opportunity to respond to your concerns.

This letter is to inform you that a loan modification might be available for you.  We will need the following
information from you in order to review your account for loan modification assistance:

- Executed Request for Modification and Affidavit (RMA) (form enclosed)
- IRS Form 4506-T or 4506T-EZ
- Most recent tax return with all schedules
- Copies of pay stubs for the immediate past two months
- Copies of bank statements for the immediate past two months
- Reliable, third-party documentation of any other earned income, including but not limited to the
  following:
    - If you are self employed: the most recent quarterly Profit and Loss Statement with year to date
      earnings
    - If you receive benefit income:  evidence of the amount and frequency of the benefits, plus evidence
      of receipt of payment
    - If you receive unemployment benefits:  a monetary determination letter and evidence of the duration
      of benefit eligibility
    - If you would like to include alimony, separation maintenance, or child support income:  copies of a
      divorce decree, court decree or legal agreement filed with the court that provides the amount,
      frequency, and duration of payments, plus evidence of receipt of payment

**Please fax the information to the attention of the undersigned to 1.888.838.9331 within the next seven
calendar days.**  It is important for you to know that assistance is not guaranteed and is dependent on several
factors.  However, Bank of America will look at every option in an effort to assist you.



Office of the CEO and President

Mr. Gary Lial
May 21, 2010
Page Two

You state in the letter that you believe that the originating institution used conflicting documentation to issue this loan. I have included a copy of the signed Uniform Residential Loan Application, Signed Good Faith Estimate, and the signed Deed of Trust. These documents were used by Countrywide Home Loans to approve your loan. Please see the attached for your review.

I wanted to let you know that Bank of America is the servicer of your loan. The investor on your loan is Fannie Mae, located at 13150 World Gate Drive, Herndon, VA. 20170 and their phone number is 1.703.833.1700.

Thank you for this opportunity to be of service. In the event you should require additional assistance, please contact me at 1.972.781.5493, Monday through Friday, 9 a.m. to 6 p.m., Central time zone.

Sincerely,

Aaron Hooper
Customer Advocate
Office of the CEO and President

Enclosures

# EXHIBIT "4"



**Bank of America**
**Home Loans**

*P.O. Box 5170*
*Simi Valley, CA  93062-5170*
0000407-0002197  787243



GARY W & MARQULINN LIAL
10480 Wildflower Gully St
Las Vegas, NV  89178

**Notice Date:**  06/08/2010

**Account No.:** 151357651

**Property Address:**
10480 WILDFLOWER GULLY STREET
LAS VEGAS, NV  89178

## ABOUT YOUR LOAN

Enclosed is a loan history that provides a detailed outline of transactions for the above-referenced account number.

Please note that this history provides pertinent information on payments received, tax and insurance payments disbursed, and late charges assessed and paid.

If you need additional information or assistance, you can contact us online any time.  Simply log on to your account at www.bankofamerica.com and Select 'Message Center.' With your online account, you will also have access to many other convenient services, such as: updating your account information, viewing current and historical monthly statements, and much more. Or, if you prefer, you can call one of our Customer Service Representatives directly at 1-800-669-6607.

**THANK YOU FOR YOUR BUSINESS**

You are a valued customer here at BAC Home Loans Servicing, LP and it is our continued goal to provide our customers with the highest level of customer satisfaction.

If you need further assistance, please contact our Customer Service Department directly at 1-800-669-6607.

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

LNHIST 7438/10419 06/13/2007

Prepared by: LING TING

LOAN #: 151357651

# INTEREST ONLY ADJUSTABLE RATE NOTE

### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps – 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

WE HEREBY CERTIFY THIS IS A
FULL, TRUE AND CORRECT COPY
OF THE ORIGINAL.
First American Title Co. of Nevada
By

NOVEMBER 15, 2006                LAS VEGAS                              NEVADA
     [Date]                              [City]                              [State]

10480 WILDFLOWER GULLY STREET, LAS VEGAS, NV 89178
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 224,895.00            (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
Countrywide KB Home Loans, a Countrywide Mortgage Ventures, LLC series
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.125 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on    JANUARY 01, 2007      . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its

● MULTISTATE ARM, ONE-YEAR LIBOR, 10-Year Interest Only Period Note
1E452-XX (09/06)(d/I)                        Page 1 of 5



* 2 3 9 9 1 *

* 1 5 1 3 5 7 6 5 1 0 0 0 0 1 E 4 5 2 *

LOAN #: 151357651

scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on DECEMBER 01, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  1,147.90      until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of DECEMBER, 2011    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER          percentage points (          2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   11.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   11.125 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

LOAN #: 151357651

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

_ I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be           5.000  % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

LOAN #: 151357651

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)   Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)   When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN #: 151357651

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
GARY W. LIAL                          -Borrower

_____ (Seal)
MARQUINN LIAL                         -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

[Sign Original Only]

● MULTISTATE ARM, ONE-YEAR LIBOR, 10-Year Interest Only Period Note
1E452-XX (09/06)                      Page 5 of 5

# EXHIBIT "5"

**RECORDING REQUESTED BY:**
**WHEN RECORDED MAIL TO:**
**RECONTRUST COMPANY**
**2380 Performance Dr, TX2-985-07-03**
**Richardson, TX   75082**

TS No.  10-0067448
Title Order No.  100355866NVGTI
APN No.  176-27-810-002
Property Address:

10480 WILDFLOWER GULLY STREET
LAS VEGAS, NV 89178

NEVADA IMPORTANT NOTICE

**NOTICE OF DEFAULT/ELECTION TO SELL UNDER DEED OF TRUST**

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as
an agent for the Beneficiary under a Deed of Trust dated 11/15/2006, executed by GARY
W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT TENANTS as
Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. as beneficiary recorded 11/21/2006, as Instrument
No. 0001668 (or Book 20061121, Page ) of Official Records in the Office of the County
Recorder of Clark County, Nevada.   Said obligation including ONE NOTE FOR THE
ORIGINAL sum of $224,895.00.  That a breach of, and default in, the obligations for
which such Deed of Trust is security has occurred in that payment has not been made of :
FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND
IMPOUNDS WHICH BECAME DUE ON  02/01/2010  AND ALL SUBSEQUENT
INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER
WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED
BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS
AND/OR ATTORNEYS' FEES.  IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT
WILL BECOME DUE ON  12/01/2036  AS A RESULT OF THE MATURITY OF THE
OBLIGATION ON THAT DATE.

That by reason thereof, the present beneficiary under such deed of trust has deposited
with RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing
obligations secured  thereby, and has declared and does hereby declare all sums secured
thereby immediately due and payable  and has elected and does hereby elect to cause the
trust property to be sold to satisfy the obligations secured thereby.

**NOTICE**

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed Of Trust above described.  Section NRS 107.080 permits certain defaults to be cured upon the payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occured.  Where reinstatement is possible, if the default is not cured within 35 days following recording and mailing of this Notice to Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may there after be sold.  The Trustor may have the right to bring court action to assert the non existence of a default or any other defense of Trustor to acceleration and sale.

To determine if reinstatement is possible and the amount, if any, to cure the default, contact: BAC Home Loans Servicing, LP, c/o RECONTRUST COMPANY, 2380 Performance Dr, TX2-985-07-03, Richardson, TX 75082, PHONE: (800) 281-8219.  Should you wish to discuss possible options for loan modification, you may contact the Home Retention Division at 1-800-669-6650.  If you meet the requirements of Section NRS 107.085, you may request mediation in accordance with the enclosed Election/Waiver of Mediation Form and instructions. You may also contact the Nevada Fair Housing Center at 1-702-731-6095 or the Legal Aid Center at 1-702-386-1070 for assistance.

DATED:  June 14, 2010

RECONTRUST COMPANY, N.A., as agent for the Beneficiary
By: FIDELITY NATIONAL DEFAULT SOLUTION, as Agent

BY:_____

Logan Hall, Team Member

State of:  California                    )
County  of: _____ )

On _____ before me _____, notary public, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____

**RECORDING REQUESTED BY:**
**WHEN RECORDED MAIL TO:**
**RECONTRUST COMPANY**
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

TS No. 10 -0067448
Title Order No.  100355866NVGTI
APN No. 176-27-810-002

Property Address:  10480 WILDFLOWER
GULLY STREET  LAS VEGAS, NV 89178

THE FOLLOWING COPY OF 'NOTICE', THE ORIGINAL OF WHICH WAS FILED FOR RECORD
ON 06/14/2010 IN THE OFFICE OF THE RECORDER OF CLARK COUNTY, NEVADA SENT TO
YOU IN AS MUCH AS AN EXAMINATION OF THE TITLE TO SAID TRUST PROPERTY SHOWS
YOU MAY HAVE AN INTEREST IN THE TRUSTEE'S SALES PROCEEDINGS

## NEVADA IMPORTANT NOTICE
### NOTICE OF DEFAULT/ ELECTION TO SELL UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the
Beneficiary under a Deed of Trust dated 11/15/2006, executed by GARY W LIAL, AND MARQULINN
LIAL, HUSBAND AND WIFE AS JOINT TENANTS as Trustor, to secure certain obligations in favor of
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 11/21/2006, as
Instrument No. 0001668 (or Book 20061121, Page _____) of Official Records in the Office of the County
Recorder of Clark County, Nevada. Said obligation including ONE NOTE FOR THE ORIGINAL sum of
$224,895.00. That a breach of, and default in, the obligations for which such Deed of Trust is security has
occurred in that payment has not been made of :
FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH
BECAME DUE ON 02/01/2010 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL,
INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE
AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND
COSTS AND/OR ATTORNEYS' FEES.  IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL
BECOME DUE ON 12/01/2036  AS A RESULT OF THE MATURITY OF THE OBLIGATION ON
THAT DATE.

That by reason thereof, the present beneficiary under such deed of trust has deposited with RECONTRUST
COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has
declared and does hereby declare all sums secured thereby immediately due and payable and has elected
and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Form NVNODMLNGW (08/09)

# NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed Of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. Where reinstatement is possible, if the default is not cured within 35 days following recording and mailing of this Notice to Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may there after be sold. The Trustor may have the right to bring court action to assert the non existence of a default or any other defense of Trustor to acceleration and sale.

To determine if reinstatement is possible and the amount, if any, to cure the default, contact: BAC Home Loans Servicing, LP, c/o RECONTRUST COMPANY, N.A. 2380 Performance Dr, TX2-985-07-03, Richardson, TX 75082, PHONE: (800) 281-8219. Should you wish to discuss possible options for loan modification you may contact the Home Retention Division at 1-800-669-6650. If you meet the requirements of Section NRS 107.085 you may request mediation in accordance with the enclosed Election/Waiver of Mediation Form and Instructions. You may also contact the Nevada Fair Housing Center at 1-702-731-6095 or the Legal Aid Center at 1-702-386-1070 for assistance.

DATED: June 21, 2010                    RECONTRUST COMPANY, N.A., as agent for
                                        the Beneficiary
                                        , as Agent

State of: California              )    BY: _____
County of: _____ )         Zakiya Dodds

On _____ before me _____, notary public, personally appeared
_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____

Form NVNODMLNGW (08/09)

# EXHIBIT "6"

Inst #: 201006170004860
Fees: $15.00
N/C Fee: $0.00
06/17/2010 02:44:58 PM
Receipt #: 393052
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: CDE   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT TO:
RECONTRUST COMPANY
2380 Performance Dr, TX2-985-07-03
Richardson, TX  75082

ATTN: Lashunda Scott-Kidd
TS No. 10-0067448
Title Order #100355866NVGTI
176-27-810-002

## SUBSTITUTION OF TRUSTEE NEVADA

WHEREAS, GARY W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT
TENANTS was the original Trustor, FIRST AMERICAN TITLE COMPANY OF NEVADA was the
original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the
original Beneficiary under that certain Deed of Trust dated 11/15/2006 recorded on 11/21/2006 as
Instrument No. 0001668 in Book 20061121 Page  of Official Records of  Clark County, Nevada;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and
instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust
provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A.,
WHOSE ADDRESS IS: 2380 Performance Dr, TX2-985-07-03, Richardson, TX  75082, as Trustee
under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED: 06/14/2010                    BAC HOME LOANS SERVICING, LP FKA
                                     COUNTRYWIDE HOME LOANS SERVICING LP

                                     BY: _____
                                          Khadija Gulley      Authorized Signer

State of: _____ **Texas** _____ )
County of: _____ **Tarrant** _____ )
On 6/15/2010 before me, Elsie E. Kroussakis _____, personally appeared
_____ Khadija Gulley  Auth. Signer _____, know to me (or proved to me on the
oath of _____ or through _____ ) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she executed the same
for the purposes and consideration therein expressed.
Witness my hand and official seal.


_____
Notary Public's Signature

ELSIE E KROUSSAKIS
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-14-11

# EXHIBIT "7"

Inst #: **201006170004859**
Fees: $14.00
N/C Fee: $0.00
06/17/2010 02:44:58 PM
Receipt #: 393052
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: CDE   Pgs: 1
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
AND WHEN RECORDED MAIL DOCUMENT TO:
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

TS No. 10-0067448
TITLE ORDER#: 100355866NVGTI
176-27-810-002

### CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 11/15/2006,
EXECUTED BY: GARY W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT
TENANTS,TRUSTOR: TO FIRST AMERICAN TITLE COMPANY OF NEVADA, TRUSTEE AND
RECORDED AS INSTRUMENT NO. 0001668 ON 11/21/2006, IN BOOK 20061121, OF OFFICIAL
RECORDS IN THE COUNTY RECORDER'S OFFICE OF CLARK COUNTY, IN THE STATE OF
NEVADA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST; AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:  June 14, 2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC.

State of:  **Texas**
County of:  **Tarrant**

BY: _Khadija Gulley_ , Assistant Secretary
**Khadija Gulley**
**Khadija Gulley**

On 6/15/2010 before me **Elsie E. Kroussakis** , personally appeared
A≥Stzezty , know to me (or proved to me on the oath of _____ or through
_____ ) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_Elsie t Kroussakis_
Notary Public's Signature

**ELSIE E KROUSSAKIS**
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-14-11

# EXHIBIT "8"

Bank of America 

Home Loans

400 National Way
Mailstop CA6-919-02-22
Simi Valley, CA 93065

June 22, 2010

Gary W. Lial
10480 Wildflower Gully Street
Las Vegas, NV  89178

Re:   Borrower(s): Gary W. and Marqulinn Lial
      Property Address: 10480 Wildflower Gully Street, Las Vegas, NV  89178
      Loan Number(s) 151357651

Dear Mr. Lial:

We are in receipt of your correspondence dated May 20, 2010, which was received on May 28, 2010, by BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("BAC Home Loans"), f/k/a Countrywide Home Loans Servicing LP.

We compared the signature on the Qualified Written Request ("QWR") to the signature on the mortgage documents of record and noticed a marked difference. Due to privacy concerns we require the QWR to be signed by you and faxed to us.  We would like to respond, as soon as possible, to the correspondence. Please send or fax the signed QWR to us within 10 business days of today's date, which concludes on **July 7, 2010.**  If we do not receive the signed QWR by this date the file will be closed.  Our fax number is (805) 306-7169.

Sincerely,

*Kirsten Volmer*

Kirsten Volmer
Litigation Specialist
Foreclosure, Bankruptcy and Risk Management (FBRM)
Qualified Written Request (QWRs) Group

# EXHIBIT "9"

Inst #: 201010250002053
Fees: $15.00
N/C Fee: $0.00
10/25/2010 01:00:23 PM
Receipt #: 552774
Requestor:
LSI TITLE AGENCY INC.
Recorded By: DXI  Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
2380 Performance Dr, TX2-984-0407
Richardson, TX  75082

TS No. 10-0067448
Title Order No. 100355866NVGTI

APN No.:176-27-810-002

---

## NEVADA NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/15/2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by GARY W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT TENANTS, dated 11/15/2006 and recorded 11/21/2006, as Instrument No. 0001668, in Book 20061121, Page , of Official Records in the office of the County Recorder of CLARK County, State of Nevada, will sell on 11/10/2010 at 10:00 AM, at At the front entrance to Nevada Legal News located at 930 S. 4TH Street, Las Vegas, NV 89101 at public auction, to the highest bidder for cash(in the forms which are lawful tender in the United States, payable in full at time of sale), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust.  The street address and other common designation, if any, of the real property described above is purported to be: 10480 WILDFLOWER GULLY STREET, LAS VEGAS, NV 89178.  The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $238,092.69.  It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.  In the event tender othere than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorsee as a matter or right.  Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

DATED:   October 21, 2010
RECONTRUST COMPANY NA, Trustee
2380 Performance Dr., TX 2-985-07-03
Richardson, TX 75082
Phone/Sale Information (800)281-8219


By: _____
    Maria C. Rodriguez, Authorized Signer

RECONTRUST COMPANY NA is a debt collector attempting to collect a debt.  Any
information obtained will be used for that purpose.

# EXHIBIT "10"

APN: 176-27-810-002

10-0067448

Recording requested by:

_____

_____

1003558 66

When recorded, mail to:

ReconTrust Company, N.A.

NV Mediation Team

P.O. Box 660874

Dallas, TX 75266-0874

Inst #: 201010250002052
Fees: $14.00
N/C Fee: $0.00
10/25/2010 01:00:23 PM
Receipt #: 552774
Requestor:
LSI TITLE AGENCY INC.
Recorded By: DXI   Pgs: 1
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

# CERTIFICATE

STATE OF NEVADA
FORECLOSURE MEDIATION PROGRAM

Property Owners:
**Gary W Lial**
**Marqulinn Lial**

Property Address:
**10480 Wildflower Gully Street**
**Las Vegas NV 89178**

Trustee:
**ReconTrust Company**
**PO Box 660874 Dallas TX 75266**

Deed of Trust Document Number
Doc. # 00011dB
Book 2006112 Page: _____

■   No request for mediation was made or the Grantor has waived mediation. As a result no mediation is required in this matter. The Beneficiary may proceed with the foreclosure process.

☐   A Foreclosure Mediation Conference was held on N/A. The parties were unable to agree to a resolution of this matter. As a result, the mediation required by law has been completed in this matter. The Beneficiary may proceed with the foreclosure process.

☐   The Grantor or person who holds the title of record did not attend the Foreclosure Mediation Conference or failed to produce the necessary disclosure forms. As a result, no mediation is required in this matter. The Beneficiary may proceed with the foreclosure process.

Dated: <u>10/04/2010</u>

# FMP CERT: 2010-10-04-0107

*(Official seal: STATE OF NEVADA FORECLOSURE MEDIATION PROGRAM — VERISE V. CAMPBELL, PROGRAM MANAGER)*

# EXHIBIT "11"

 **TERMS AND CONDITIONS**

1.  MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request.   The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party.  The Member shall be bound by any amendment to any of the Governing Documents.

2.  The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System.  MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties.  References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3.  MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes.  In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4.  No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5.  If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6.  MERS and the Member agree that:  (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7.  If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS.  The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member.  The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8.  The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time.  The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time.  MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9.  MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member   ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim").  Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, VA 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.