EXHIBIT "D"

# EXHIBIT "D"

**20061121-0001669**

Fee: $24.00
N/C Fee: $0.00

11/21/2006          09:39:42
T20060205576

Requestor:
  FIRST AMERICAN TITLE COMPANY OF NEVAD

Charles Harvey          STN
Clark County Recorder   Pgs: 11

Assessor's Parcel Number:
176-27-810-002
After Recording Return To:

MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared By:
LING TING
~~Recording Requested By:~~
M. WARNER

Countrywide KB Home Loans, a
Countrywide Mortgage
Ventures, LLC series
7660 Dean Martin Drive,
Suite 201A
Las Vegas
NV 89139

---

[Space Above This Line For Recording Data]

112-2292979              00014311703011006
[Escrow/Closing #]       [Doc ID #]

## DEED OF TRUST
(Line of Credit)

MIN 1000157-0007493490-8

THIS DEED OF TRUST, dated   NOVEMBER 15, 2006   , is between
GARY W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT
TENANTS

residing at
10480 WILDFLOWER GULLY STREET, LAS VEGAS, NV 89178

• MERS HELOC - Deed of Trust
1E019-NV (11/05)(d)              Page 1 of 7





DOC ID #: 00014311703011006

the person or persons signing as "Grantor(s)" below and hereinafter referred to as "we," "our," or "us" and
FIRST AMERICAN TITLE COMPANY OF NEVADA

as trustee and hereinafter referred to as the "Trustee," with an address at
180 CASSIA WAY, #502
HENDERSON, NV 89014
for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware
corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **MERS is the**
**"Benificiary" under this Deed of Trust** and is acting solely as nominee for
Countrywide KB Home Loans, a Countrywide Mortgage Ventures,
LLC series
("Lender" or "you") and its successors and assigns, with an address of
27001 Agoura Road, Suite 200, Calabasas Hills, CA 91301

PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to
the Trustee the premises located at:

10480 WILDFLOWER GULLY STREET, LAS VEGAS<br>Street, Municipality

| CLARK | Nevada | 89178 | (the "Premises"). |
|-------|--------|-------|-------------------|
| County |       | ZIP   |                   |

and further described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

The Premises includes all buildings and other improvements now or in the future on the Premises and all
rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances
thereto.

- MERS HELOC - Deed of Trust
1E019-NV (11/05)                    Page 2 of 7

DOC ID #: 00014311703011006

..e UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

LOAN: This Deed of Trust will secure your loan to us in the principal amount of $ 56,223.00    or so much thereof as may be advanced and readvanced from time to time to GARY W. LIAL
MARQULINN LIAL

the Borrower(s) under the Home Equity Credit Line Agreement And Disclosure Statement (the "Note") dated   NOVEMBER 15, 2006    , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Deed of Trust will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Deed of Trust, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Deed of Trust entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage, grant and convey the Premises to the Trustee.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally.
If this Deed of Trust is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Deed of Trust, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing

● MERS HELOC - Deed of Trust
1E019-NV  (11/05)                              Page 3 of 7

DOC ID #: 00014311703011006

and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Deed of Trust.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Note secured hereby.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Deed of Trust, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Deed of Trust secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Deed of Trust. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Deeds of Trust.

(g) PRIOR DEED OF TRUST: If the provisions of this paragraph are completed, this Deed of Trust is subject and subordinate to a prior deed of trust dated   NOVEMBER 15, 2006   and given by us for the benefit of
COUNTRYWIDE KB HOME LOAN

as beneficiary, in the original amount of $ 224,895.00   (the "Prior Deed of Trust"). We shall not increase, amend or modify the Prior Deed of Trust without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Deed of Trust promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Deed of Trust as and when required under the Prior Deed of Trust.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental

● MERS HELOC - Deed of Trust
1E019-NV  (11/05)                          Page 4 of 7

DOC ID #: 0001431170301006

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Deed of Trust may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Deed of Trust without losing your rights in the Premises.

DEFAULT; ACCELERATION: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may declare all amounts secured by this Deed of Trust immediately due and payable and the Trustee may foreclose upon this Deed of Trust or sell the Premises at a public sale. This means that you or the Trustee may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Deed of Trust. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you or the Trustee may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure or public sale. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure or to public sale, including, but not limited to, trustee's fees, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

ABSOLUTE ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: We hereby unconditionally assign to you the rents of the Premises. Nevertheless, you will allow us to use the rents, if any, until such time as any event or condition of default as described in Paragraph 12.A of the Note occurs. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Deed of Trust and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Deed of Trust. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Deed of Trust will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Deed of Trust is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Deed of Trust, and provided any obligation to make further advances under the Note has terminated, this Deed of Trust and your rights in the Premises shall end.

● MERS HELOC - Deed of Trust
1E019-NV  (11/05)                    Page 5 of 7

DOC ID #: 00014311703011006

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at

For MERS:

P.O. Box 2026, Flint, MI 48051-2026

For Lender:

Countrywide KB Home Loans, a Countrywide Mortgage Ventures, LLC series

27001 Agoura Road, Suite 200, Calabasas Hills, CA 91301

or to such other address as you may designate by notice to us. Any notice provided for in this Deed of Trust shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Deed of Trust and provided your obligation to make further advances under the Note has terminated, the Trustee shall discharge this Deed of Trust without charge to us, except that we shall pay any fees for recording of a satisfaction of this Deed of Trust.

GENERAL: You or the Trustee can waive or delay enforcing any of your rights under this Deed of Trust without losing them. Any waiver by you of any provisions of this Deed of Trust will not be a waiver of that or any other provision on any other occasion.

TRUSTEE: Trustee accepts the trusts herein created when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee, by its acceptance hereof, agrees to perform and fulfill the trusts herein created, and shall be liable only for its negligence or misconduct. The Trustee waives any statutory fee and agrees to accept reasonable compensation from Grantor for any services rendered by it in accordance with the terms of this Deed of Trust. Upon receipt by Trustee of instructions from Beneficiary at any time or from time to time, Trustee shall (a) give any notice or direction or exercise any right, remedy or power hereunder or in respect of the Premises as shall be specified in such instructions, and (b) approve as satisfactory all matters required by the terms hereof to be satisfactory to Trustee or Beneficiary. Trustee may, but need not, take any of such actions in the absence of such instructions. Trustee may resign at any time upon giving of not less than 30 days' prior notice to Beneficiary, but will continue to act as trustee until its successor shall have been chosen and qualified. In the event of the death, removal, resignation, or refusal or inability to act of Trustee, Beneficiary shall have the irrevocable power, with or without cause, without notice of any kind, without specifying any reason therefor, and without applying to any court, to select and appoint a successor trustee by filing a deed or other instrument of appointment for record in each office in which this Deed of Trust is recorded, and upon such recordation the successor trustee shall become vested with the same powers, rights, duties and authority of the Trustee with the same effect as if originally made Trustee hereunder. Such successor shall not be required to give bond for the faithful performance of its duties unless required by Beneficiary.

DOC ID #: 00014311703011006

THIS DEED OF TRUST has been signed by each of us under seal on the date first above written.

_____

Grantor: GARY W. LIAL

_____

Grantor: MARQULINN LIAL

_____

Grantor:

_____

Grantor:

**STATE OF NEVADA**
**COUNTY OF** CLARK

This instrument was acknowledged before me on 17 NOVEMBER 2006 by

GARY W. LIAL

MARQULINN LIAL

Mail Tax Statements To:
GARY LIAL

10480 WILDFLOWER GULLY STREET
LAS VEGAS, NV 89178

Notary Public - State of Nevada
County of Clark
**GERIANNE R. WAUFLE**
My Appointment Expires
February 27, 2007
No. 98-54257-1

● MERS HELOC - Deed of Trust
1E019-NV (11/05)                    Page 7 of 7

# EXHIBIT 'A'

Parcel I:

Lot 2 of Alturas Unit 1 at Mountains Edge, as shown by map thereof on file in Book 128 of Plats, Page 82, in the Office of the County Recorder of Clark County, Nevada.

Reserving therefrom an easement for private streets and common areas as shown and delineated on said map.

Parcel II:

An easement for ingress and egress over private streets and common areas as shown and delineated on said map.

DOC ID #: 0001431170301006

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this FIFTEENTH      day of
NOVEMBER, 2006  , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide KB Home Loans, a Countrywide Mortgage Ventures, LLC
series
(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:
        10480 WILDFLOWER GULLY STREET, LAS VEGAS, NV 89178

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

**MULTISTATE PUD RIDER** - Single Family/Second Mortgage
Page 1 of 3
-207R (0411)   CHL (12/05)(d)
VMP Mortgage Solutions, Inc.                                    3/99



DOC ID #: 0001431703011006

(the "Declaration"). The Property is a part of a planned unit development known as

ALTURAS MOUNTAIN EDGE

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

DOC ID #: 0001431703011006

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
GARY W. LIAL                                    - Borrower

_____ (Seal)
MARQULINN LIAL                                  - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

EXHIBIT "E"

# EXHIBIT "E"

Prepared by: LONG YING **FINAL**    Printed: 11/15/2006    20:52:24

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☒ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_Gary W. Lial_
Borrower

_Marquilinn Lial_
Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 151357651 |
|---|---|---|---|

| Amount $224,895.00 | Interest Rate 6.125 % | No. of Months 360 | Amortization Type: | ☐ Fixed Rate ☐ Other (explain): ☐ GPM ☒ ARM (type): NC ARM LIBR 5/1 EC 10yIO 525 |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 10480 WILDFLOWER GULLY STREET, LAS VEGAS, NV 89178 | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) ALTURAS MTS EDGE LOT 2 SEE PRELIM | Year Built 2006 |
|---|---|

| Purpose of Loan | ☒ Purchase ☐ Construction ☐ Other (explain): ☐ Refinance ☐ Construction-Permanent | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| | $ | $ | | Cost: $ |

| Title will be held in what Name(s) GARY W LIAL AND MARQULINN LIAL | Manner in which Title will be held , HUSBAND AND WIFE AS JOINT | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) SAVINGS/CHECKING |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) GARY W. LIAL | Co-Borrower's Name (include Jr. or Sr. if applicable) MARQULINN LIAL |
|---|---|

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School 16 |
|---|---|---|---|---|---|---|---|

| ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages | ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. 0 ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 21/00 No. Yrs. 1067 HOWARD AVENUE LAS VEGAS, NV 89104 | Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 21/00 No. Yrs. 1067 HOWARD AVENUE LAS VEGAS, NV 89104 |
|---|---|

| Mailing Address, if different from Present Address 10480 WILDFLOWER GULLY STREET LAS VEGAS, NV 89178 | Mailing Address, if different from Present Address 10480 WILDFLOWER GULLY STREET LAS VEGAS, NV 89179 |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer ☐ Self Employed AZTECH PLASTERING 11255 W. TORINO AVENUE LAS VEGAS, NV 89044 | Yrs. on this job 16Yrs 02Mos Yrs. employed in this line of work/profession 16 | Name & Address of Employer ☒ Self Employed MARQUIHENN LIAL 1067 HOWARD AVENUE LAS VEGAS, NV 89104 | Yrs. on this job 19Yrs 11Mos Yrs. employed in this line of work/profession 21 |
|---|---|---|---|

| Position/Title/Type of Business GENRAL MANAGER/CONSTRUCTION | Business Phone (incl. area code) (702) 875-4850 | Position/Title/Type of Business COSMETOLOGIST/COMETOLOGIST | Business Phone (incl. area code) (702) 400-5010 |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|



**VMP**-21N (0507)    CHL (09/05)(d)

VMP Mortgage Solutions, Inc. (800)521-7291

Application 1 of 1

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
Page 1 of 4

* 2 3 9 9 1 *



* 1 5 1 3 5 7 6 5 1 0 0 0 0 0 2 0 C 1 a *

BAC Lial 00077

LOAN #: 151357651

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 4200.00 | $ 4000.00 | $ 8200.00 | Rent | $ 0.00 | |
| Overtime | 0.00 | 0.00 | 0.00 | First Mortgage (P&I) | 0.00 | $ 1,147.90 |
| Bonuses | 0.00 | 0.00 | 0.00 | Other Financing (P&I) | 0.00 | 568.09 |
| Commissions | 0.00 | 0.00 | 0.00 | Hazard Insurance | 0.00 | 28.67 |
| Dividends/Interest | 0.00 | 0.00 | 0.00 | Real Estate Taxes | 0.00 | 223.00 |
| Net Rental Income | 48.00 | 0.00 | 48.00 | Mortgage Insurance | 0.00 | |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 63.00 |
| | | | | Other: | 0.00 | 70.00 |
| Total | $ 4248.00 | $ 4000.00 | $ 8248.00 | Total | $ 0.00 | $ 2100.66 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed  X  Jointly ☐  Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| | $ | LIABILITIES | $ Payment/Months | |
| | $ | Name and address of Company | | $ 126401.00 |
| **List checking and savings accounts below** | | TOTAL MORTGAGE OBLIGATIONS FROM THE SCHEDULE OF REAL ESTATE OWNED | 1077.00 PER MONTH | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| ENSIGN CREDIT UNION | | | | |
| P.O. BOX 530609 | | | | |
| HENDERSON, NV 89053 | | Acct. no. TAXES/INS/MAINT/ETC. | 0.00 | |
| Account Type: CHECKING | | Name and address of Company | $ Payment/Months | $ 13252.00 |
| Acct. no. ▓▓▓▓▓ | $ 549.08 | VW CREDIT INC | 41 PMTS @ | |
| Name and address of Bank, S&L, or Credit Union | | | 320.00 | |
| ENSIGN CREDIT UNION | | | PER MONTH | |
| P.O. BOX 530609 | | | | |
| HENDERSON, NV 89053 | | Acct. no. ▓▓▓ | | |
| Account Type: SAVINGS | | Name and address of Company | $ Payment/Months | $ 2631.00 |
| Acct. no. ▓▓▓▓ | $ 166.92 | GEMB/CARE CREDIT | 33 PMTS @ | |
| Name and address of Bank, S&L, or Credit Union | | | 78.00 | |
| ENSIGN CREDIT UNION | | | PER MONTH | |
| P.O. BOX 530609 | | | | |
| HENDERSON, NV 89053 | | Acct. no. ▓▓▓▓ | | |
| Account Type: MONEY MARKET | | Name and address of Company | $ Payment/Months | $ 1333.00 |
| Acct. no. ▓▓▓ | $ 2113.39 | GEMB/ULTRA JEWELERS | 33 PMTS @ | |
| Name and address of Bank, S&L, or Credit Union | | | 40.00 | |
| SEE ATTACHED ADDENDUM. | | | PER MONTH | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ 970.00 |
| Acct. no. | $ 5438.19 | HSBC/LUCKY | 34 PMTS @ | |
| Stocks & Bonds (Company name/number & description) | $ | | 28.00 PER MONTH | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ 879.00 |
| Life insurance net cash value | $ | CAPITAL ONE | 25 PMTS @ | |
| Face amount: $ 0.00 | | | 35.00 | |
| **Subtotal Liquid Assets** | $ 8267.58 | | PER MONTH NOT INCL'D IN RATIOS | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 299000 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ 340.00 |
| Net worth of business(es) owned (attach financial statement) | $ | WFNNB/TREK | 20 PMTS @ | |
| Automobiles owned (make and year) | $ | | 17.00 PER MONTH | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: SEE ATTACHED | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 1560.00 | |
| Total Assets a. | $ 307267.58 | Net Worth (a minus b) ► $ 162340.58 | Total Liabilities b. | $ 144927.00 |

Freddie Mac Form 65 57/05
Fannie Mae Form 1003 7/8

BAC Lial 00078

LOAN #: 151357651

## VI. ASSETS AND LIABILITIES (cont'd)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| SEE ATTACHED REO SCHEDULE | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | $ | 299000 | $ 126401 | $ 1500 | $ 1077 | $ 0 | $ 48 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| GARY LIAL | | |
| MARQUINN MERCIER | | |
| GARY W WAYNE | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 281,119.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (Incl. debts to be paid off) | 0.00 |
| e. | Estimated prepaid items | 1,579.14 |
| f. | Estimated closing costs | 3,810.00 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 4,779.02 |
| i. | Total costs (add items a through h) | 291,287.16 |
| j. | Subordinate financing | 56,223.00 |
| k. | Borrower's closing costs paid by Seller | 10,000.00 |
| l. | Other Credits (explain) | |
| | OTHER EQUITY | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 224,895.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 224,895.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | 169.16 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|---|
| a. | Are there any outstanding judgments against you? | | X | | X |
| b. | Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. | Are you a party to a lawsuit? | | X | | X |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such items as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | X |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | X |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. | Is any part of the down payment borrowed? | | X | | X |
| i. | Are you a co-maker or endorser on a note? | | X | | X |
| j. | Are you a U.S. citizen? | X | | X | |
| k. | Are you a permanent resident alien? | | X | | X |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. | Have you had an ownership interest in a property in the last three years? | X | | X | |
| (1) | What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) | How did you hold title to the home - - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | SP | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *Gary W Lial* | 11-17-06 | X *Marquilinn Lial* | 4-17-06 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, the lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER [X] I do not wish to furnish this information. |
|---|---|---|
| | I do not wish to furnish this information. | |
| **Ethnicity:** | [ ] Hispanic or Latino   [X] Not Hispanic or Latino | **Ethnicity:** [ ] Hispanic or Latino   [ ] Not Hispanic or Latino |
| **Race:** | [ ] American Indian or Alaska Native   [ ] Asian   [X] Black or African American | **Race:** [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American |
| | [ ] Native Hawaiian or Other Pacific Islander   [ ] White | [ ] Native Hawaiian or Other Pacific Islander   [ ] White |
| **Sex:** | [ ] Female   [X] Male | **Sex:** [X] Female   [ ] Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| [ ] Face-to-face interview | NICOLE LAZARSKI | Countrywide KB Home Loans, a |
| [ ] Mail | Interviewer's Signature | Date | Countrywide Mortgage Ventures, LLC |
| [X] Telephone  09/26/2006 | | series |
| [ ] Internet | Interviewer's Phone Number (incl. area code) | 7660 Dean Martin Drive, Suite 201A |
| | (866) 830-1521 | Las Vegas, NV 89139 |

Application 1 of 1

## CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:<br>GARY W. LIAL<br>Co-Borrower:<br>MARQULINN LIAL | Agency Case Number:<br><br>Lender Case Number:<br>151357651 |
| --- | --- | --- |

| Borrower: | III. Borrower Information Continued | Co-Borrower: |
| --- | --- | --- |
| Borrower's Primary EMail Address | | Co-Borrower's Primary EMail Address |
| Borrower's Secondary EMail Address | | Co-Borrower's Secondary EMail Address |

```
━━━━━━━━━━━━━━━━━━━━━━━━ Describe Other Assets From Page 2 Sec VI ━━━━━━━━━━━━━━━━━━━━━━━━
B/C  Description                                        Type        Acct#              Value
Additional CHECKING AND SAVINGS ACCOUNT....... :
 BC  ENSIGN CREDIT UNION, P.O. BOX 530609, HENDERSON, NV 89053  IRA/KEOGH  9004400       2,766.30
 BC  ENSIGN CREDIT UNION, P.O. BOX 530609, HENDERSON, NV 89053  IRA/KEOGH  9004400       2,671.89
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ Alimony/Child Support Expenses ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
B/C  Description                                                            Monthly Amount
 B   CHILD SUPPORT                                                                  0.00
 B   CHILD SUPPORT                                                                  0.00
 * = Excluded from Ratios
```

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
| --- | --- | --- | --- |
| X *[signature]* | 11-17-06 | X *[signature]* | 11-17-06 |

Application 1 of 1

Freddie Mac Form 65 7/05

BAC Lial 00080

EXHIBIT "F"

# EXHIBIT "F"

Inst #: 201006170004860
Fees: $15.00
N/C Fee: $0.00
06/17/2010 02:44:58 PM
Receipt #: 393052
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: CDE  Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT TO:
RECONTRUST COMPANY
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

ATTN: Lashunda Scott-Kidd

TS No. 10-0067448
Title Order #100355866NVGTI
176-27-810-002

---

### SUBSTITUTION OF TRUSTEE NEVADA

WHEREAS, GARY W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, FIRST AMERICAN TITLE COMPANY OF NEVADA was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 11/15/2006 recorded on 11/21/2006 as Instrument No. 0001668 in Book 20061121 Page of Official Records of Clark County, Nevada;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 2380 Performance Dr, TX2-985-07-03, Richardson, TX 75082, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED: 06/14/2010                    BAC HOME LOANS SERVICING, LP FKA
                                     COUNTRYWIDE HOME LOANS SERVICING LP

                            BY: _____
                                Khadija Gulley        Authorized Signer

State of: _____**Texas**_____        )
County of: _____**Tarrant**_____     )
On _6/15/10_ before me , **Elsie E. Kroussakis**_____ , personally appeared
__**Khadija Gulley**__ _Auth. Signer_____ , know to me (or proved to me on the
oath of _____ or through _____ ) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she executed the same
for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

ELSIE E KROUSSAKIS
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-14-11

EXHIBIT "G"

# EXHIBIT "G"

Inst #: 201006170004859
Fees: $14.00
N/C Fee: $0.00
06/17/2010 02:44:58 PM
Receipt #: 393052
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: CDE   Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
**AND WHEN RECORDED MAIL DOCUMENT TO:**
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA  93065

TS No. 10-0067448
**TITLE ORDER#: 100355866NVGTI**
176-27-810-002

## CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 11/15/2006,
EXECUTED BY:  GARY W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT
TENANTS,TRUSTOR: TO FIRST AMERICAN TITLE COMPANY OF NEVADA, TRUSTEE AND
RECORDED AS INSTRUMENT NO. 0001668 ON 11/21/2006, IN BOOK 20061121, OF OFFICIAL
RECORDS IN THE COUNTY RECORDER'S OFFICE OF CLARK  COUNTY, IN THE STATE OF
NEVADA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:   June 14, 2010               MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
                                     INC.

State of:        **Texas**        )
County of:       **Tarrant**      )
                                  ) BY: _____  _____
                                     Khadija Gulley        , Assistant Secretary
                                                           Khadija Gulley
On 6/15/2010 before me   **Elsie E. Kroussakis**
_____, personally appeared
Asst Secty, know to me (or proved to me on the oath of _____ or through
_____ ) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

ELSIE E KROUSSAKIS
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-14-11

EXHIBIT "H"

# EXHIBIT "H"

Inst #: 201006140003256
Fees: $215.00
N/C Fee: $0.00
06/14/2010 03:17:20 PM
Receipt #: 387890
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: OSA  Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
2380 Performance Dr, TX2-985-07-03
Richardson, TX  75082

TS No. 10-0067448
Title Order No. 100355866NVGTI
APN No. 176-27-810-002
Property Address:
10480 WILDFLOWER GULLY STREET
LAS VEGAS, NV 89178

## NEVADA IMPORTANT NOTICE
### NOTICE OF DEFAULT/ELECTION TO SELL UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 11/15/2006, executed by GARY W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT TENANTS as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 11/21/2006, as Instrument No. 0001668 (or Book 20061121, Page ) of Official Records in the Office of the County Recorder of Clark County, Nevada.    Said obligation including ONE NOTE FOR THE ORIGINAL sum of $224,895.00.  That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON  02/01/2010  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS' FEES.  IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  12/01/2036  AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

That by reason thereof, the present beneficiary under such deed of trust has deposited with RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured  thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable  and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**NOTICE**

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the payment of the amounts required by the statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. Where reinstatement is possible, if the default is not cured within 35 days following recording and mailing of this Notice of Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may there after be sold. The Trustor may have the right to bring court action to assert the non existence of a default or any other defense of Trustor to acceleration and sale.

To determine if reinstatement is possible and the amount, if any, to cure the default, contact: BAC Home Loans Servicing, LP, c/o RECONTRUST COMPANY, 2380 Performance Dr.,TX2-985-07-03, Richardson, TX 75082, PHONE: (800) 281-8219. Should you wish to discuss possible options for loan modification, you may contact the Home Retention Division at 1-800-669-6650. If you meet the requirements of Section NRS 107.085, you may request mediation in accordance with the enclosed Election/Waiver of Mediation Form and instructions. You may also contact the Nevada Fair Housing Center at 1-702-731-6095 or the Legal Aid Center at 1-702-386-1070 for assistance.

RECONTRUST COMPANY, as agent for the Beneficiary

By: LSI Title Agency, Inc., as Agent
**Anselmo Pagkaliwangan**

State of: California
County of: Orange

On_____ **JUN 1 4 2010** _____, before me, _____ **Debra Pedley** _____, Notary Public, personally appeared Anselmo Pagkaliwangan, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ _Debra Pedley_ _____ (Seal)
**Debra Pedley**

DEBRA PEDLEY
Commission # 1852997
Notary Public - California
Los Angeles County
My Comm. Expires Jun 8, 2013

EXHIBIT "I"

# EXHIBIT "I"

Inst #: 201010250002052
Fees: $14.00
N/C Fee: $0.00
10/25/2010 01:00:23 PM
Receipt #: 552774
Requestor:
LSI TITLE AGENCY INC.
Recorded By: DXI  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN: 176-27-810-002

10-0067448

Recording requested by:

_____
_____
_____

100355866

When recorded, mail to:
ReconTrust Company, N.A.
NV Mediation Team
P.O. Box 660874
Dallas, TX 75266-0874

# CERTIFICATE

STATE OF NEVADA
FORECLOSURE MEDIATION PROGRAM

Property Owners:
**Gary W Lial**
**Marquinn Lial**

Property Address:
**10480 Wildflower Gully Street**
**Las Vegas NV 89178**

Trustee:
**ReconTrust Company**
**PO Box 660874 Dallas TX 75266**

Deed of Trust Document Number
Doc. # 00011dB
Book 2006l121  Page: _____

■  No request for mediation was made or the Grantor has waived mediation. As a result no mediation is required in this matter. The Beneficiary may proceed with the foreclosure process.

☐  A Foreclosure Mediation Conference was held on N/A. The parties were unable to agree to a resolution of this matter. As a result, the mediation required by law has been completed in this matter. The Beneficiary may proceed with the foreclosure process.

☐  The Grantor or person who holds the title of record did not attend the Foreclosure Mediation Conference or failed to produce the necessary disclosure forms. As a result, no mediation is required in this matter. The Beneficiary may proceed with the foreclosure process.

Dated:  10/04/2010

# FMP CERT: 2010-10-04-0107

(Seal: STATE OF NEVADA FORECLOSURE MEDIATION PROGRAM — VERISE V. CAMPBELL, PROGRAM MANAGER)

EXHIBIT "J"

# EXHIBIT "J"

Inst #: 201010250002053
Fees: $15.00
N/C Fee: $0.00
10/25/2010 01:00:23 PM
Receipt #: 552774
Requestor:
LSI TITLE AGENCY INC.
Recorded By: DXI   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

**WHEN RECORDED MAIL TO:**
RECONTRUST COMPANY
2380 Performance Dr, TX2-984-0407
Richardson, TX  75082

TS No. 10-0067448
Title Order No. 100355866NVGTI

APN No.:176-27-810-002

## NEVADA NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/15/2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by GARY W LIAL, AND MARQULINN LIAL, HUSBAND AND WIFE AS JOINT TENANTS, dated 11/15/2006 and recorded 11/21/2006, as Instrument No. 0001668, in Book 20061121, Page , of Official Records in the office of the County Recorder of CLARK County, State of Nevada, will sell on 11/10/2010 at 10:00 AM, at At the front entrance to Nevada Legal News located at 930 S. 4TH Street, Las Vegas, NV 89101  at public auction, to the highest bidder for cash(in the forms which are lawful tender in the United States, payable in full at time of sale), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust.  The street address and other common designation, if any, of the real property described above is purported to be: 10480 WILDFLOWER GULLY STREET, LAS VEGAS,  NV  89178.  The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $238,092.69.  It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

 In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.  In the event tender othere than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorsee as a matter or right.  Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

DATED:   October 21, 2010
RECONTRUST COMPANY NA, Trustee
2380 Performance Dr., TX 2-985-07-03
Richardson, TX 75082
Phone/Sale Information (800)281-8219

By: _____
Maria C. Rodriguez, Authorized Signer

RECONTRUST COMPANY NA is a debt collector attempting to collect a debt.  Any
information obtained will be used for that purpose.

EXHIBIT "K"

# EXHIBIT "K"

1

2

3

4                            UNITED STATES DISTRICT COURT
                                   DISTRICT OF NEVADA
5                                     RENO, NEVADA

6

7

JOSEFA LOPEZ, JOSE TRINIDAD CASAS, )        3:09-CV-180-ECR-VPC
8  MARIA C. CASAS, TYRONE EVENSON,  )
   MICHELLINA EVENSON, BRYAN GRAY,  )
9  HELEN GRAY, CHRIS PETERNEL, and  )
   PATRICK FRANKOSKI, individually  )
10 and on behalf of similarly        )
   situated individuals,            )
11                                  )
                                    )
12      Plaintiffs,                 )
                                    )
13 vs.                              )        Order
                                    )
14 EXECUTIVE TRUSTEE SERVICES, LLC.; )
   COUNTRYWIDE HOME LOANS, INC., a  )
15 New York corporation; RECONTRUST, )
   MERSCORP, INC. a Virginia         )
16 corporation; FEDERAL HOME LOAN    )
   MORTGAGE CORPORATION, a Virginia  )
17 corporation; FEDERAL NATIONAL     )
   MORTGAGE ASSOCIATION, a District  )
18 of Columbia corporation; GMAC     )
   MORTGAGE, LLC, a Delaware         )
19 corporation; NATIONAL CITY        )
   MORTGAGE, a foreign company and a )
20 division of NATIONAL CITY BANK, a )
   subsidiary of National City       )
21 Corporation; NATIONAL CITY        )
   CORPORATION, a Delaware           )
22 corporation and a subsidiary of   )
   PNC Financial Services, Inc.; PNC )
23 FINANCIAL SERVICES, INC, a        )
   Pennsylvania corporation; J.P.    )
24 MORGAN CHASE BANK, N.A., a New    )
   York corporation; CITIMORTGAGE,   )
25 INC., a New York corporation; HSBC )
   MORTGAGE CORPORATION, U.S.A., a   )
26 Delaware corporation, AIG UNITED  )
   GUARANTY CORPORATION, a foreign   )
27 corporation; WELLS FARGO BANK,    )
   N.A., a California corporation,    )
28 dba WELLS FARGO HOME EQUITY and.  )
   dba WELLS FARGO HOME MORTGAGE,    )

1  a division of WELLS FARGO BANK,        )
   N.A., a California Corporation;         )
2  WELLS FARGO dba AMERICAS SERVICING      )
   CO., NATIONAL DEFAULT SERVICING         )
3  CO., BANK OF AMERICA, N.A., a           )
   Delaware corporation, and GE MONEY      )
4  BANK, an Ohio corporation; CAPITAL      )
   ONE dba CHEVY CHASE BANK, GALE          )
5  GROUP dba TD FINANCIAL SERVICE CO.      )
   dba TD SERVICE COMPANY, JOHN AND        )
6  JANE DOES I-X; BLACK AND WHITE          )
   PARTNERSHIP I-X; AND ABC                )
7  CORPORATION I-X;                        )
                                           )
8        Defendants.                       )
                                           )
9

10

11        This is a putative class action brought by numerous homeowners

12  who are in danger of losing or have already lost their homes to

13  foreclosure.  Plaintiffs assert ten claims for relief: (1) violation

14  of the Fair Housing Act; (2) violation of Fair Debt Collection

15  Practices Act (3) violation of Nevada Uniform Lending Practices Act;

16  (4) conspiracy to commit fraud and conversion; (5) conspiracy to

17  commit fraud related to the MERS system; (6) unjust enrichment; (7)

18  intentional infliction of emotional distress; and (8) fraud in the

19  inducement.  Before the Court are twelve motions to dismiss (## 148,

20  153, 156, 163, 165, 167, 168, 170, 172, 174, 179 and 312).

21  Plaintiffs oppose each motion separately.  Defendants have replied.

22  Also before the Court are various other miscellaneous motions.  The

23  motions are ripe, and we now rule on them.

24

25            I. Factual and Procedural History

26        Plaintiffs in this case are homeowners who are in danger of

27  losing or have already lost their homes to foreclosure.  Plaintiffs

28                                2

1  filed a class action complaint (#1) on April 8, 2009.  On April 17,
2  2009, Plaintiffs filed a motion (#15) for temporary restraining
3  order.  On May 4, 2009, Plaintiffs filed a second motion (#36) for
4  temporary restraining order.  On May 4, 2009, Plaintiffs filed an
5  amended complaint (#35).  On May 5, 2009, we granted (#41)
6  Plaintiffs' motion (#36) for a temporary restraining order to the
7  extent it sought a temporary restraining order.  On May 22, 2009,
8  Plaintiffs filed a third motion (#75) for preliminary injunction and
9  a motion (#77) for class certification.  On August 21, 2009,
10 Defendants filed a motion (#308) for leave to file opposition to
11 Plaintiffs' motion for preliminary injunction and motion for class
12 certification.  On August 21, 2009, Defendants filed a motion (#314)
13 to strike certain affidavits in support of Plaintiffs' motion for
14 preliminary injunction and class certification.  On August 24, 2009,
15 Defendants filed a motion (#330) for argument in connection with
16 Plaintiffs' motion for preliminary injunction.
17      Between June 23, 2009, and August 21, 2009, Defendants filed
18 numerous motions to dismiss (## 148, 153, 156, 163, 165, 167, 168,
19 170, 172, 174, 179 and 312).  Plaintiffs opposed the motions, and
20 Defendants replied.  Defendants have filed several motions (## 154,
21 164, 175 and 180) for hearings in connection with their pending
22 motions to dismiss.  In addition, on August 8, 2009, Defendants
23 filed a motion (#385) to accelerate the pending motions to dismiss.
24      On August 21, 2009, the Federal Housing Finance Agency ("FHFA")
25 filed a motion (#310) to intervene as conservator for Fannie Mae and
26 Freddie Mac.  On October 29, 2009, Defendants requested (#401) a
27 review of the magistrate judge's decision regarding a pre-trial
28

1  matter.  On December 9, 2009, the United States Judicial Panel on

2  Multidistrict Litigation issued a transfer order (#415),

3  transferring this case to the District of Arizona and assigning it

4  to the Honorable James A. Teilborg for coordinated or consolidated

5  pretrial proceedings.  The claims unrelated to the formation and/or

6  operation of the so-called MERS system were remanded to us.

7

8                      II. Motion to Dismiss Standard

9      A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be

10 granted if the complaint fails to "state a claim to relief that is

11 plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

12 570 (2007).  On a motion to dismiss, "we presum[e] that general

13 allegations embrace those specific facts that are necessary to

14 support the claim."  Lujan v. Defenders of Wildlife, 504 U.S. 555,

15 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889

16 (1990)) (alteration in original).  Moreover, "[a]ll allegations of

17 material fact in the complaint are taken as true and construed in

18 the light most favorable to the non-moving party."  In re Stac

19 Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation

20 omitted).

21     Although courts generally assume the facts alleged are true,

22 courts do not "assume the truth of legal conclusions merely because

23 they are cast in the form of factual allegations."  W. Mining

24 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,

25 "[c]onclusory allegations and unwarranted inferences are

26 insufficient to defeat a motion to dismiss."  In re Stac Elecs., 89

27 F.3d at 1403 (citation omitted).

28                                    4

1     Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is

2 normally limited to the complaint itself.  See Lee v. City of L.A.,

3 250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on

4 materials outside the pleadings in making its ruling, it must treat

5 the motion to dismiss as one for summary judgment and give the non-

6 moving party an opportunity to respond.  Fed. R. Civ. P. 12(d);

7 see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A

8 court may, however, consider certain materials — documents attached

9 to the complaint, documents incorporated by reference in the

10 complaint, or matters of judicial notice — without converting the

11 motion to dismiss into a motion for summary judgment."  Ritchie, 342

12 F.3d at 908.

13     If documents are physically attached to the complaint, then a

14 court may consider them if their "authenticity is not contested" and

15 "the plaintiff's complaint necessarily relies on them."  Lee, 250

16 F.3d at 688 (citation, internal quotations, and ellipsis omitted).

17 A court may also treat certain documents as incorporated by

18 reference into the plaintiff's complaint if the complaint "refers

19 extensively to the document or the document forms the basis of the

20 plaintiff's claim."  Ritchie, 342 F.3d at 908.  Finally, if

21 adjudicative facts or matters of public record meet the requirements

22 of Fed. R. Evid. 201, a court may judicially notice them in deciding

23 a motion to dismiss.  Id. at 909; see Fed. R. Evid. 201(b) ("A

24 judicially noticed fact must be one not subject to reasonable

25 dispute in that it is either (1) generally known within the

26 territorial jurisdiction of the trial court or (2) capable of

27

28                    5

1  accurate and ready determination by resort to sources whose accuracy
2  cannot reasonably be questioned.").

3
4                              III. Analysis
5      A. Fair Housing Act
6          The first cause of action alleged in Plaintiffs' first amended
7  complaint pertains only to Plaintiffs Josepha Lopez, Jose Casas,
8  Maria Casas and Tyrone Evenson.  The complaint alleges that all
9  Defendants targeted these Plaintiffs because of their race, national
10 origin, gender and disability status and offered them, a "less-than-
11 favorable loan than would have been offered to a white borrower or a
12 male borrower, all other things being equal."  (Am. Compl. ¶ 122
13 (#35).)

14         The Fair Housing Act ("FHA") prohibits discrimination "against
15 any person in the terms, conditions, or privileges of sale or rental
16 of a dwelling, or in the provision of services or facilities in
17 connection therewith, because of race, color, religion, sex,
18 familial status, or national origin." 42 U.S.C. § 3604(b),  The FHA
19 has a two year statute of limitations.  Id. § 3613(a)(1)(A).

20         Plaintiffs' FHA claim is untimely.  The conduct giving rise to
21 this claim is the issuance of "less-than-favorable loan[s]."  (Am.
22 Compl. ¶ 122 (#22).)  The loans in question were issued to
23 Plaintiffs on the following dates: Josepha Lopez's loan was issued
24 on October 26, 2005; Jose and Maria Casas' loan was issued on May
25 25, 2006; Tyrone Evanson's loan was issued on October 26, 2006.
26 (Id. ¶¶ 60, 75, 90 (#35).)  The statute of limitations thus began
27 running on those dates and expired on October 26, 2007, May 25, 2008
28
                                    6

1   and October 26, 2008, respectively. Plaintiffs did not file this

2   lawsuit until April 8, 2009.  Even if we assume that Defendants'

3   actions violated the FHA, because Plaintiffs filed this action under

4   the FHA more than two years after the alleged discriminatory acts,

5   the claim is time-barred.

6      Plaintiffs' allegation that Defendants "continue to target"

7   Plaintiffs "and others similarly situated" (Id. ¶ 119, 120, 121

8   (#35)) does not cure the untimeliness of Plaintiffs' claim.  Under

9   the continuing violation theory, when "a plaintiff, pursuant to the

10   Fair Housing Act, challenges not just one incident of conduct

11   violative of the Act, but an unlawful practice that continues into

12   the limitations period, the complaint is timely when it is filed

13   within [the statutory period] of the last asserted occurrence of

14   that practice." Havens Realty Corp. v. Coleman, 455 U.S. 363,

15   380-81 (1982).  The continuing violation theory is not applicable

16   here because Plaintiffs each claim to have suffered only a single

17   incident of conduct violative of the Act, namely the "less-than-

18   favorable loan." Moreover, Plaintiffs' allegation regarding the

19   continuation of Defendants conduct is unsupported by any factual

20   allegations and, as such, is not a plausible claim for a continuing

21   violation.  See In re Stac Elecs., 89 F.3d at 1403 (citation

22   omitted).  Plaintiffs' first cause of action thus fails to state a

23   claim and will be dismissed.

24      B. Fair Debt Collection Practices Act

25      Plaintiffs allege that seven defendants violated the Fair Debt

26   Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o.  Under

27   the FDCPA, "[a] debt collector may not use unfair or unconscionable

28

7

1  means to collect or attempt to collect any debt."  15 U.S.C. §

2  1692f.  "Unfair or unconscionable" is defined to include "[t]he

3  collection of any amount (including any interest, fee, charge or

4  expense incidental to the principal obligation) unless such amount

5  is expressly authorized by the agreement creating the debt or

6  permitted by law."  15 U.S.C. § 1692f(1).

7      Plaintiffs' FDCPA claim is too vague to survive a motion to

8  dismiss.  Plaintiffs name seven Defendants under this claim, but

9  fail to identify which Defendant engaged in what conduct with

10  respect to which Plaintiff.  Allegations that fail to identify which

11  defendant is responsible for what alleged injury do not adequately

12  place defendants on notice of the claim or claims being asserted

13  against them.  See Fortaleza v. PNC Fin. Servs. Group, Inc., 642 F.

14  Supp. 2d 1012, 1022 (N.D. Cal. 2009).

15      In addition, to the extent that this claim is premised on

16  Defendants' activities in pursuit of foreclosure, this cause of

17  action fails.  (See e.g. Am. Compl. ¶ 137 (alleging that "Defendants

18  published written notice in the newspaper of general circulation in

19  Washoe County that the property belonging to the Plaintiffs is in

20  foreclosure, and knowingly falsely stated that those Defendants were

21  the proper parties to initiate foreclosure")(#35).)  Foreclosure

22  pursuant to a deed of trust does not constitute debt collection

23  under the RFDCPA.  Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d

24  1188, 1204 (D. Or. 2002); Izenberg v. ETS Servs., LLC, 589 F. Supp.

25  2d 1193 (C.D. Cal. 2008),  See also Heinemann v. Jim Walter Homes,

26  Inc., 47 F. Supp. 2d 716, 722 (N.D.W. Va. 1998)(noting that

27  "publication of the notice of sale and the final trustees sale" of a

28

8

1  mortgaged property was not collection of a debt, and thus not within
2  the scope of the FDCPA).

3       Thus, Plaintiffs' claim under the FDCPA will be dismissed.
4  Should Plaintiffs wish to file an amended complaint under the FDCPA
5  unrelated to Defendants' activities in pursuit of foreclosure, they
6  shall identify which Defendants engaged in what conduct with respect
7  to which Plaintiffs.

8       C. Unfair Lending Practices

9       Plaintiffs allege that all Defendants violated Nev. Rev. Stat.
10 § 598D.100 by continuing "to enforce mortgages secured by
11 Plaintiffs' homes that included no evaluation of any commercially
12 reasonable means or mechanisms that would demonstrate the
13 Plaintiffs' capacity to repay . . . ." (Am. Compl. ¶ 143 (#35).)
14 Defendants have moved to dismiss this claim on various grounds.
15 Some argue that they are not lenders and thus they do not fall
16 within the purview of the statute.  Others argue that the claim is
17 too vague and conclusory to survive a motion to dismiss.  Still
18 others argue that the version of the statute that Plaintiffs allege
19 they violated was not in force until October 1, 2007, and there is
20 no provision for its retroactive application.  Thus, these
21 provisions cannot apply to those Plaintiffs' loans, which were
22 obtained before that date.

23      We do not reach Defendants' arguments with respect to
24 Defendants' status as lenders or the version of the statute in force
25 at the times of the loans in question because Plaintiffs' third
26 cause of action is too vague to survive a motion to dismiss.
27 Plaintiffs assert the unfair lending practices claim against all
28

1  Defendants, alleging that they collectively "enforced" mortgages
2  that "included no evaluation of any commercially reasonable means or
3  mechanism that would demonstrate the Plaintiffs' capacity to repay,
4  especially since Plaintiffs had no income at the time of
5  application, or no verified income or no stated income . . . ."
6  (Am. Compl. ¶ 143 (#35).)   Section 598D.100 proscribes certain
7  lending practices; it does not regulate the enforcement of loans.
8  Indeed, the statute applies only to lenders.  NEV. REV. STAT. §
9  598D.100.  "Lender" is defined as "a mortgagee, beneficiary of a
10 deed of trust or other creditor who holds a mortgage, deed of trust
11 or other instrument that encumbers home property as security for the
12 repayment of a home loan." Id. § 598D.050.  Claims that fail to
13 identify which defendant is responsible for what alleged injury do
14 not adequately place defendants on notice of the claim or claims
15 being asserted against them.  See Fortaleza, 642 F. Supp. 2d at
16 1022.

17      The assertion of this claim against all Defendants has caused a
18 great deal of confusion.  Many non-lender Defendants have expended
19 resources filing motions to dismiss on that ground.  Plaintiffs,
20 unable to defend this claim as to many of these Defendants, have
21 already withdrawn the claim with respect to some of them.  While it
22 is helpful that Plaintiffs have withdrawn the claim as to some
23 Defendants, it is nonetheless inappropriate to allege a claim
24 broadly against all Defendants without a legal basis for doing so.

25

26

27

28

<u>D. Conspiracy to Commit Fraud and Conversion</u>

Plaintiffs' fourth claim for relief alleges that all Defendants engaged in a conspiracy to "deprive Plaintiffs of their property through fraud and misrepresentation that would result in Plaintiffs entering into loan agreements for which they were ultimately not qualified and which would eventually result in Plaintiffs' inability to make payments and stay in their homes." (Am. Compl. ¶ 153 (#35).)  Under Nevada law, an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff.  <u>Jordan v. State ex rel. Dept. of Motor Vehicles and Pub. Safety</u>, 110 P.3d 30, 51 (Nev. 2005).  "Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud."  <u>Id.</u>  A showing of fraud, in turn, requires (1) a false representation, (2) knowledge or belief that the representation was false, (3) intent to induce reliance on the representation, (4) that the reliance must be justifiable, and (5) damages.  <u>Lubbe v. Barba</u>, 540 P.2d 115, 117 (Nev. 1975).

A claim for conspiracy to commit fraud must be pled with the same particularly as the fraud itself.  <u>See Wanetick v. Mel's of Modesto, Inc.</u>, 811 F. Supp. 1402, 1406 n.3 (N.D. Cal. 1992)(so stating).  Thus, under Rule 9(b), a party must state with particularity the circumstances constituting the conspiracy.  <u>See</u> Fed. R. Civ. P. 9(b).  Allegations of conspiracy must be accompanied by "the who, what, when, where, and how of the misconduct charged."

 1  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.
 2  2003)(so stating, with respect to fraud)(internal quotation marks
 3  omitted).  Thus, to state a claim for conspiracy "a plaintiff must
 4  allege with sufficient factual particularity that defendants reached
 5  some explicit or tacit understanding or agreement.  It is not enough
 6  to show that defendants might have had a common goal unless there is
 7  a factually specific allegation that they directed themselves
 8  towards this wrongful goal by virtue of a mutual understanding or
 9  agreement."  S. Union Co. v. Sw. Gas Corp., 165 F. Supp. 2d 1010,
10  1020-21 (D. Ariz. 2001)(internal citations and quotation marks
11  omitted).

12      Plaintiffs have failed to plead the alleged conspiracy to
13  commit fraud with particularity.  Plaintiffs have not stated how or
14  even when the alleged conspiracy was formed.  Plaintiffs have not
15  included any factual allegations pertaining to how Defendants
16  targeted Plaintiffs.  In addition, the Complaint lumps multiple
17  Defendants together without differentiating between them or the
18  allegations against them.  See Swartz v. KPMG LLP, 476 F.3d 756, 764
19  (9th Cir. 2007) (noting that "Rule 9(b) does not allow a complaint
20  to merely lump multiple defendants together").  Such general
21  allegations are insufficient because "[a] bare allegation of a
22  conspiracy is almost impossible to defend against, particularly
23  where the defendants are large institutions with hundreds of
24  employees entering into contracts and agreements daily."  Kendall v.
25  Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008).
26
27
28                              12

1    With regard to the underlying fraud, the complaint fails to

2  specify what false representations underlie the claim.  Plaintiffs'

3  allegation that "Defendants . . . acted in a concerted manner to

4  target Plaintiffs as borrowers, to misrepresent the loan terms

5  and/or to misrepresent Plaintiffs' qualification for the loans,"

6  (Am. Compl.  ¶ 161 (#35)) is insufficient under Rule 9(b).

7    Finally, it should be noted that the title of Plaintiffs'

8  fourth claim for relief is "Conspiracy to Commit Fraud and

9  Conversion." (Am. Compl. at 30 (#35).)  The substance of this

10  claim's allegations focuses on the fraud underlying the alleged

11  conspiracy, not conversion.  Nonetheless, to the extent the claim is

12  also premised on the underlying tort of conversion, Plaintiffs

13  likewise fail to state a claim.  Conversion, under Nevada law, "is a

14  distinct act of dominion wrongfully exerted over personal property."

15  Edwards v. Emperor's Garden Restaurant, 130 P.3d 1280, 1287 (Nev.

16  2006).  In this case, Plaintiffs are alleging that Defendants

17  conspired to "unlawfully deprive plaintiffs of their homes."  (Am.

18  Compl. ¶ 160 (#35).)  Thus, the subject of the alleged conversion is

19  real property, not personal property.  Therefore, to the extent the

20  conspiracy claim is premised on the underlying tort of conversion,

21  Plaintiffs fail to state a claim.  Plaintiffs' fourth claim for

22  relief will be dismissed.

23    E. Conspiracy to Commit Fraud Related to the MERS system

24    Plaintiffs' fifth claim for relief alleges a conspiracy to

25  commit fraud related to the MERS system.  Pursuant to a transfer

26  order issued by the United States Judicial Panel on Multidistrict

27

28                                    13

1 | Litigation, the claims in this case that are related to the

2 | formation and/or operation of the MERS system are under the

3 | jurisdiction of the District of Arizona and assigned to the

4 | Honorable James A. Teilborg for coordinated or consolidated pretrial

5 | proceedings.  (In Re: Mortgage Electronic Registration Systems

6 | (MERS) Litigation, MDL No. 2119, Transfer Order (#415).)  Thus, we

7 | will not rule on the pending motions to dismiss with regard to

8 | Plaintiffs' fifth claim for relief alleging conspiracy to commit

9 | fraud related to the MERS system.

10 |     F. Unjust Enrichment

11 |     Plaintiffs' sixth claim for relief alleges unjust enrichment

12 | against all Defendants.  Under Nevada law, unjust enrichment occurs

13 | when "a person has and retains a benefit which in equity and good

14 | conscience belongs to another."  Leasepartners Corp. v. Robert L.

15 | Brooks Trust Dated November 12, 1975, 942 P.2d 182, 187 (Nev. 1997).

16 | An action "based on a theory of unjust enrichment is not available

17 | when there is an express, written contract, because no agreement can

18 | be implied when there is an express agreement."  Id.  The doctrine

19 | of unjust enrichment thus only "applies to situations where there is

20 | no legal contract but where the person sought to be charged is in

21 | possession of money or property which in good conscience and justice

22 | he should not retain but should deliver to another [or should pay

23 | for]."  Id. (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

24 |     The basic premise of Plaintiffs' claim for unjust enrichment is

25 | that they were "targeted for and lured" into their mortgages.  (Am.

26 |

27 |

28 |                  14

1  Compl. ¶ 177 (#35).)   These mortgages are express and written

2  contracts; Plaintiffs' sixth claim thus fails and will be dismissed.

3      G.  Intentional Infliction of Emotional Distress

4      Plaintiffs' seventh cause of action alleges intentional

5  infliction of emotional distress.   The elements of a cause of action

6  for intentional infliction of emotional distress are "(1) extreme

7  and outrageous conduct with either the intention of, or reckless

8  disregard for, causing emotional distress, (2) the plaintiff's

9  having suffered severe or extreme emotional distress and (3) actual

10  or proximate causation."   Dillard Dept. Stores, Inc. v. Beckwith,

11  989 P.2d 882, 886 (Nev. 1999).   Extreme and outrageous conduct is

12  that which is "outside all possible bounds of decency and is

13  regarded as utterly intolerable in a civilized community."   Maduike

14  v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998)(internal quotation

15  marks and citation omitted).   "Severe or extreme emotional distress"

16  is distress "so severe and of such intensity that no reasonable

17  person could be expected to endure it."   Alam v. Reno Hilton Corp.,

18  819 F. Supp. 905, 911 (D. Nev. 1993).   A claim for intentional

19  infliction of emotional distress operates on a continuum: the less

20  extreme the outrage, the greater the need for evidence of physical

21  injury or illness from the emotional distress.   Chowdhry v. NLVH,

22  Inc., 851 P.2d 459, 462 (Nev. 1993)

23      Neither the actions allegedly carried out by Defendants nor the

24  distress allegedly suffered by Plaintiffs is sufficient to state a

25  claim for intentional infliction of emotional distress.   The alleged

26  actions underlying this claim are, inter alia, misrepresentation of

27

28                          15

1  the loans at issue, negotiation of those loans and the closing of

2  the loans.   Plaintiffs argue that Defendants actions are extreme and

3  outrageous because Plaintiffs were particularly vulnerable to

4  predatory lending practices and the loans at issue concerned

5  Plaintiffs' residences.   Neither of these circumstances, even if

6  true, transforms the alleged conduct into conduct that is "utterly

7  intolerable in a civilized community."  _Maduike_, 953 P.2d at 26.

8  Moreover, the only physical symptoms of distress allegedly suffered

9  by Plaintiffs are sleeplessness and headaches.  (Am. Compl. ¶ 185

10  (#35).)   This distress is not so severe that "no reasonable person

11  could be expected to endure it."  _Alam_, 819 F. Supp. at 911.

12  Plaintiffs' claim for intentional infliction of emotional distress

13  thus fails to state a claim.

14      H.  Fraud in the Inducement

15      Plaintiffs' eighth claim for relief is for fraud in the

16  inducement.   Like Plaintiffs' claim for conspiracy to commit fraud

17  and conversion, this claim fails to satisfy the particularity

18  requirements of Rule 9(b).   Federal Rule of Civil Procedure 9(b)

19  requires that a complaint "must state with particularity the

20  circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).

21  Rule 9(b) "requires . . . an account of the time, place, and

22  specific content of the false representations as well as the

23  identities of the parties to the misrepresentations."  _Swartz_, 476

24  F.3d at 764 (internal quotation marks and citation omitted).   In a

25  case with multiple defendants, "Rule 9(b) does not allow a complaint

26  to merely lump multiple defendants together but requires plaintiffs

27

28                                    16

1  to differentiate their allegations when suing more than one

2  defendant and inform each defendant separately of the allegations

3  surrounding his alleged participation in the fraud."  Id. at 764-65

4  (internal quotation marks and citation omitted).  Plaintiffs' claim

5  for fraud in the inducement fails to allege who made what

6  misrepresentations or when any of the alleged misrepresentation took

7  place.  The claim is replete with vague and conclusory allegations

8  such as "Defendants misrepresented the ability of Plaintiffs, and

9  other similarly situated, to qualify for the loans."  (Am. Compl. ¶

10  190 (#35).)

11      To the extent that Plaintiffs' fraud in the inducement claim is

12  based on omissions by Defendants, the Complaint also fails to state

13  a claim.  Under Nevada law, one of the five essential elements of a

14  claim for fraudulent concealment is that the "defendant must have

15  been under a duty to disclose the fact to the plaintiff."  Nev.

16  Power Co. v. Monsanto Co., 891 F. Supp. 1406, 1415 (D. Nev. 1995).

17  Plaintiffs do not allege what duties, if any, the various Defendants

18  named in the Complaint owed Plaintiffs.  Plaintiffs' claim for fraud

19  in the inducement thus fails.

20

21          IV.  Leave to Amend

22      Under Rule 15(a) leave to amend is to be "freely given when

23  justice so requires."  FED. R. CIV. P. 15(a).  In general, amendment

24  should be allowed with "extreme liberality."  Owens v. Kaiser Found.

25  Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting

26  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th

27

28                                      17

1   Cir. 1990)).  If factors such as undue delay, bad faith, dilatory

2   motive, undue prejudice or futility of amendment are present, leave

3   to amend may properly be denied in the district court's discretion.

4   Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th

5   Cir. 2003)(discussing Foman v. Davis, 371 U.S. 178, 182 (1962).

6        In light of the liberal spirit of Rule 15(a), Plaintiffs should

7   have an opportunity to amend their complaint.  There is no reason

8   why Plaintiffs could not cure the deficiencies we have noted here,

9   or at least some of them, such as the conclusory and vague

10  allegations against undifferentiated defendants.  If the amended

11  complaint is similarly deficient, however, we may be forced to

12  conclude that leave to further amend would be futile.

13

14                    **V. Other Pending Motions**

15       In light of this Order dismissing all of Plaintiffs' claims on

16  which we have authority to rule under the MDL Order, Plaintiffs'

17  motion (#77) for class certification, motion (#15) for temporary

18  restraining order and third motion (#75) for preliminary injunction

19  are moot, and will be denied on that basis.  Likewise, Defendants'

20  motion (#308) for leave to file opposition to Plaintiffs' motion for

21  preliminary injunction and motion for class certification and motion

22  (#330) for argument in connection with Plaintiffs' motion for

23  preliminary injunction are moot and will be denied.  Defendants'

24  motions for hearings (## 154, 164, 175 and 180) in connection with

25  their pending motions to dismiss are also moot, as is Defendants'

26

27

28                          18

1  motion (#385) to accelerate consideration of the pending motions to

2  dismiss.

3       Defendants' request (#401) for review of magistrate judge

4  decision and motion (#314) to strike certain affidavits in support

5  of Plaintiffs' motion for preliminary injunction and class

6  certification are also moot, and will be denied on that basis.

7       The Federal Housing Finance Agency's ("FHFA"") motion (#310) to

8  intervene as conservator for Fannie Mae and Freddie Mac will be

9  granted.  Under 12 U.S.C. § 4617(b)(2)(A)(1) the FHFA  succeeded to

10  all rights, titles, powers, and privileges of Fannie Mae and Freddy

11  Mac, giving FHFA a right to intervene in this matter.

12       Our dismissal of Plaintiffs' motion for class certification

13  (#77) does not conflict with the Ninth Circuit's recent decision in

14  United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &

15  Serv. Workers  United Steel, Paper & Forestry, Rubber, Mfg. Energy,

16  Allied Indus. & Serv. Workers Intern. Union, AFL-CIO, CLC v.

17  ConocoPhillips Co., Nos. 09-56578, 09-56579, 2010 WL 22701 (9th Cir.

18  Jan. 6, 2010).  In that case, the Ninth Circuit held that a district

19  court abused its discretion when it assumed, for the purpose of

20  Federal Rule of Civil Procedure 23 certification analysis and

21  without any separate inquiry into the merits, that plaintiffs' legal

22  theory would fail.  Id. at *1.  Unlike the posture in United Steel,

23  here, in addition to a motion for class certification, a number of

24  motions to dismiss are before the Court.  Our inquiry into the

25  merits of Plaintiffs' claims was conducted solely with respect to

26  the pending motions to dismiss.  Our ultimate conclusion with

27

28                                    19

1   respect to those motions renders Plaintiffs' motion for class

2   certification moot.  In light of the circumstances of this action,

3   it is therefore appropriate for this Court to enter an Order

4   dismissing the non-MDL claims without first ruling on the motion for

5   class certification.

6

7                          **VI. Conclusion**

8        Plaintiffs have failed to state a claim upon which relief can

9   be granted.  The Complaint, to the extent it does not involve claims

10  assigned to the District of Arizona pursuant to the MDL order, will

11  be dismissed.  Plaintiffs will be given leave to amend.  Should they

12  choose to do so, however, they shall specify which allegations apply

13  to which Defendants and which Plaintiffs.  Motions ## 15, 75, 77,

14  154, 164, 175, 180, 308, 314, 330, 385 and 401 are moot and will be

15  denied on that basis.  FHFA's motion (#310) to intervene as

16  conservator for Fannie Mae and Freddie Mac will be granted.  Under

17  12 U.S.C. § 4617(b)(2)(A)(1) the FHFA has a right to intervene in

18  this matter.

19

20  **IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' Motions to Dismiss

21  (## 148, 153, 156, 163, 165, 167, 168, 170, 172, 174, 179 and 312),

22  which are joined by documents ## 169, 177 and 178, are **GRANTED** on

23  the following basis: We lack jurisdiction over Plaintiffs' claims

24  that were transferred to the MDL; we thus do not rule on the motions

25  to the extent they address Plaintiffs' claims related to the

26  formation and/or operation of the MERS system.  The motions are

27

28                               20

1  granted with respect to Plaintiffs' remaining claims for relief.

2  Plaintiff shall have 21 days within which to file an amended

3  complaint addressing the deficiencies discussed here.  It is not

4  within our authority to grant Plaintiffs' leave to amend with

5  respect to claims before the MDL.

6

7  IT IS FURTHER ORDERED THAT Plaintiffs' Motion for Temporary

8  Restraining Order (#15) is DENIED as moot.

9

10 IT IS FURTHER ORDERED THAT Plaintiffs' Third Motion for Preliminary

11 Injunction (#75) is DENIED as moot.

12

13 IT IS FURTHER ORDERED THAT Plaintiffs' Motion to Certify Class (#77)

14 is DENIED as moot.

15

16 IT IS FURTHER ORDERED THAT Defendants' Motion (#154) for Hearing is

17 DENIED as moot.

18

19 IT IS FURTHER ORDERED THAT Defendants' Motion (#164) for Hearing is

20 DENIED as moot.

21

22 IT IS FURTHER ORDERED THAT Defendants' Motion (#175) for Hearing is

23 DENIED as moot.

24

25 IT IS FURTHER ORDERED THAT Defendants' Motion (#180) for Hearing is

26 DENIED as moot.

27

28                                    21

1 IT IS FURTHER ORDERED THAT Defendants' Motion (#308) for Leave to

2 File Opposition to Plaintiffs' Motion for Preliminary Injunction and

3 Motion for Class Certification is DENIED as moot.

4

5 IT IS FURTHER ORDERED THAT Defendants' Motion (#310) to intervene is

6 GRANTED.

7

8 IT IS FURTHER ORDERED THAT Defendants' Motion (#314) to Strike

9 Garfield Affidavits in support of Plaintiffs' Motions for

10 Preliminary Injunction and Class Certification, which is joined by

11 documents ## 315, 316, 332 and 336, is DENIED as moot.

12

13 IT IS FURTHER ORDERED THAT Defendants' Motion (#330) re [304]

14 Response to Motion, Request for Oral Argument is DENIED as moot.

15

16 IT IS FURTHER ORDERED THAT Defendants' Motion (#385) for Accelerated

17 Consideration of Pending Motions to Dismiss and Supplemental

18 Authority, which is joined by document #387, is DENIED as moot.

19

20 IT IS FURTHER ORDERED THAT Defendants' Request (#401) for Review of

21 Magistrate Judge Decision re [391] Discovery Hearing is DENIED as

22 moot.

23

24

25 DATED: January 13, 2010.

26 _____
   UNITED STATES DISTRICT JUDGE

27

28                          22

EXHIBIT "L"

# EXHIBIT "L"

1
2
3
4                   UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
5                          RENO, NEVADA
6
7   JOSEPH GREEN, et al.,              )      3:09-CV-374-ECR-GWF
                                       )
8                                      )
                                       )      Order
9                                      )
                                       )
10         Plaintiffs,                 )
                                       )
11  vs.                                )
                                       )
12                                     )
    COUNTRYWIDE HOME LOANS INC., et.   )
13  al.,                               )
                                       )
14         Defendants.                 )
                                       )
15  _____)
16
17      This is a putative class action brought by numerous homeowners
18  who are in danger of losing or have already lost their homes to
19  foreclosure.  Before the Court are eighteen motions to dismiss (##
20  87, 116, 117, 118, 119, 120, 121, 122, 124, 125, 126, 127, 129, 130,
21  131, 132, 158, 223).  Also before the Court are Defendants' motion
22  (#148) for a hearing and Plaintiffs' motion (#163) for leave to
23  amend complaint.  The motions are ripe, and we now rule on them.
24
25            I. Factual and Procedural History
26      Plaintiffs in this case are homeowners who are in danger of
27  losing or have already lost their homes to foreclosure.  Plaintiffs
28  filed a class action complaint (#1) on July 10, 2009.  Between

1  August 4, 2009, and November 25, 2009, Defendants filed numerous
2  motions to dismiss (## 87, 116, 117, 118, 119, 120, 121, 122, 124,
3  125, 126, 127, 129, 130, 131, 132, 158, 223).  On September 4, 2009,
4  Plaintiffs opposed (#157) one of the motions (#87) to dismiss, but
5  withdrew several claims with respect to that Defendant.  Then, on
6  September 24, 2009, Plaintiffs filed (#163) a collective response to
7  Defendants' motions to dismiss and motion for leave to amend.  In
8  this document, Plaintiffs essentially concede that their initial
9  complaint was deficient and seek leave to address these
10 deficiencies.  Defendants have opposed (## 169, 171, 186, 189, 193
11 and 231) Plaintiffs' motion for leave to amend.

12      On August 27, 2009, Defendants National City Bank, National
13 City Mortgage, National City Corporation and PNC Financial Services
14 Group, Inc. filed a motion (#148) for a hearing in connection with
15 their motion to dismiss (#117).

16

17                      II. Motions to Dismiss

18      Plaintiffs have essentially conceded that their initial
19 complaint is deficient.  (See P.'s Response to Collective Motions to
20 Dismiss and Request for Leave to Amend at 3 (#163)("The facts have
21 not changed, but have been expanded to meet all the necessary
22 elements of a sufficient pleading under both Twombley and Iqbal.").)
23 Nonetheless, we do not have authority to rule on all of the issues
24 raised by the pending motions to dismiss.  Under MDL Order No. 2119,
25 we have authority to rule only on claims or issues unrelated to the
26 formation and/or operation of the MERS system.  Pursuant to a
27 transfer order issued by the United States Judicial Panel on
28                                2

1    Plaintiffs assert only two claims for relief that are possibly

2  unrelated to the formation and operation of the MERS system —

3  wrongful foreclosure and unjust enrichment.  Because Plaintiff has

4  failed to state a claim for either cause of action, it would be

5  futile to allow Plaintiffs leave to amend.

6    A. Wrongful Foreclosure

7    The first claim for relief in Plaintiffs' proposed complaint is

8  wrongful foreclosure.  Under Nevada law, an action for the tort of

9  wrongful foreclosure will lie only "if the trustor or mortgagor can

10  establish that at the time the power of sale was exercised or the

11  foreclosure occurred, no breach of condition or failure of

12  performance existed on the mortgagor's or trustor's part which would

13  have authorized the foreclosure or exercise of the power of sale."

14  Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 623 (Nev.

15  1983).

16    Plaintiffs do not allege that they were not in default on their

17  loans when foreclosures began.  Indeed, in the general allegations

18  of the proposed amended complaint, Plaintiffs state: "When the

19  borrower/Plaintiffs did not pay the payments agreed in the 'Note'

20  the unknown party caused a trustee to notice the obligor of the

21  default and intent to sell under Nevada law."  (Proposed Am. Compl.

22  ¶ 92 (#163-1).)  Plaintiffs thus concede the existence of a "breach

23  of condition" that "would have authorized the foreclosure or

24  exercise of the power of sale."  Collins, 662 P.2d at 623.  Though

25  Plaintiffs allege that their obligations were somehow discharged

26  when "the investors in the mortgage backed securities claims were

27  paid as a result of over-collateralization of the obligations and/or

28

4

1  credit default swaps and/or federal bailout funds, and other monies
2  paid to investors who owner the notes and obligations and/or to the
3  Defendants or bank holding companies who disbursed the monies,"
4  (Proposed Am. Compl. ¶ 113 (#163-1)), this allegation, even if it
5  were true, is not tantamount to an assertion that Plaintiffs' were
6  not in default on their mortgages.  Therefore, Plaintiffs fail to
7  state a claim for wrongful foreclosure.

8      As discussed above, we do not have authority to rule on claims
9  or issues related to the formation and/or operation of the MERS
10  system.  It is not entirely clear whether Plaintiffs' claim for
11  wrongful foreclosure falls within this definition, in part because
12  this cause of action appears to rely on several alternative
13  underlying legal theories.  For example, Plaintiffs allege that "no
14  true and no beneficiary under the deed of trust ever directed a sale
15  of any of the properties owned by Plaintiffs in which MERS is named
16  as beneficiary or nominee of the beneficiary/lender at issue in the
17  motion."  (Proposed Am. Compl. ¶ 116 (#163-1).)  We reiterate that
18  this Order is not intended to refer to or rule upon any issues which
19  are included in the MDL transfer order.  Nonetheless, in light of
20  the fact that Plaintiffs admit that they did not make the payments
21  agreed upon under the terms of their loans, this cause of action
22  fails regardless of which legal theory the claim is premised upon.

23      B. Unjust Enrichment

24      The second claim for relief in Plaintiffs' proposed complaint
25  is unjust enrichment.  Under Nevada law, unjust enrichment occurs
26  when "a person has and retains a benefit which in equity and good
27  conscience belongs to another."  Leasepartners Corp. v. Robert L.

28                                  5

1  Brooks Trust Dated November 12, 1975, 942 P.2d 182, 187 (Nev. 1997).

2  An action "based on a theory of unjust enrichment is not available

3  when there is an express, written contract, because no agreement can

4  be implied when there is an express agreement." Id.  The doctrine

5  of unjust enrichment thus only "applies to situations where there is

6  no legal contract but where the person sought to be charged is in

7  possession of money or property which in good conscience and justice

8  he should not retain but should deliver to another [or should pay

9  for]." Id. (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

10  The basic premise of Plaintiffs' claim for unjust enrichment is

11  that they were "targeted for and lured" into their mortgages.

12  (Proposed Am. Compl. ¶ 125 (#163-1).)  These mortgages are express

13  and written contracts; the doctrine of unjust enrichment therefore

14  does not apply.  Plaintiffs' proposed second claim for relief fails

15  to state a claim, and will be dismissed.

16

17                      **III. Motion for a Hearing**

18  In light of this Order dismissing all of Plaintiffs' claims on

19  which we have authority to rule under the MDL Order and denying

20  Plaintiffs leave to amend, Defendants National City Bank, National

21  City Mortgage, National City Corporation and PNC Financial Services

22  Group, Inc.'s motion (#148) for a hearing in connection with their

23  motion to dismiss (#117) is moot, and will be denied on that basis.

24

25                          **IV. Conclusion**

26  Defendants' motions to dismiss will be granted; Plaintiffs

27  essentially concede that the Complaint is deficient.  Therefore, the

28                                   6

1  Complaint, to the extent it does not involve claims assigned to the
2  District of Arizona pursuant to the MDL order, will be dismissed.
3  Plaintiffs' motion for leave to file an amended complaint will be
4  denied on the grounds of futility; the proposed amended complaint
5  fails to state a claim upon which relief could be granted.
6  Defendants' motion for a hearing will be denied as moot.
7
8  **IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' Motions to Dismiss
9  (## 87, 116, 117, 118, 119, 120, 121, 122, 124, 125, 126, 127, 129,
10 130, 131, 132, 158, 223) are **GRANTED** on the following basis: We lack
11 jurisdiction over Plaintiffs' claims that were transferred to the
12 MDL; we thus do not rule on the motions to the extent they address
13 Plaintiffs' claims related to the formation and/or operation of the
14 MERS system.   The motions are granted with respect to Plaintiffs'
15 remaining claims for relief.
16
17 **IT IS FURTHER ORDERED THAT** Plaintiffs' motion (#163) for leave to
18 amend complaint is **DENIED**.
19
20 **IT IS FURTHER ORDERED THAT** Defendants National City Bank, National
21 City Mortgage, National City Corporation and PNC Financial Services
22 Group, Inc.'s motion (#148) for a hearing in connection with their
23 motion to dismiss is **DENIED** as moot.
24
25 DATED: January 11, 2010.
26
27                                    _____
                                     UNITED STATES DISTRICT JUDGE
28
                                     7