EXHIBIT "M"

# EXHIBIT "M"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIAM PATTERSON,<br><br>           Plaintiff,<br><br>v.<br><br>STEVEN GRIMM, et al.,<br><br>           Defendants. | 2:10-CV-1292 JCM (RJJ) |

**ORDER**

Presently before the court is plaintiff William Patterson's motion to remand to state court (doc. #11). Defendants Countrywide Home Loans Inc. and Bank of America jointly responded (doc. #15), and plaintiff replied (doc. #17). Also before the court is defendants Countrywide Home Loans, Inc.'s and Bank of America's joint motion to dismiss (doc. #5). Plaintiff responded (doc. #13), and defendants replied (doc. #14).

Plaintiff's claims stem from the purchase of an investment property at 90700 Tierra Santa Avenue in Las Vegas, Nevada. On about April 16, 2007, in accordance with an investment venture, plaintiff permitted defendant Grimm and/or defendant Mazzarella to purchase this property, with an understanding that Grimm and/or Mazzarella would rent the property to a third-person, collect rent, and pay the mortgage. (Doc. #1, compl., ¶30). Plaintiff would then retain any surplus profit. (*Id.*). Plaintiff now brings suit claiming that the documents submitted to the lender in originating the loan contained material statements that defendants should have known were false and/or obtained in a commercially unreasonable manner. (Doc. #1, compl., ¶38).

James C. Mahan
U.S. District Judge

I.      **MOTION TO REMAND (doc. #11)**

Under 28 U.S.C. §1441(b), this court has original jurisdiction over claims that turn on a substantial question of federal law. *Ultramar America, Ltd. v. Dwell,* 900 F.2d 1412, 1414 (9th Cir. 1990). Where a plaintiff claims to rely on a state remedy, but the rights he possesses are actually based on federal law, federal question jurisdiction exists. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1211–12 (9th Cir. 1980).

Plaintiff's claims arise under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2602, and the Truth in Lending Act (TILA) 15 U.S.C. § 1601. The majority of the claims asserted require the court to determine what information the defendants had a duty to disclose under federal law.

As the court has original jurisdiction over claims involving interpretation of RESPA and TILA, the court may adjudicate the entire case, including state law claims, pursuant to the doctrine of supplemental jurisdiction. 28 U.S.C. § 1441(c); 28 U.S.C. §1367(a); *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). Here, all of plaintiff's claims revolve around the same allegations of erroneous and misleading disclosures and are a part of the same case or controversy within the meaning of 28 U.S.C. §1367. Therefore, removal was proper.

II.     **MOTION TO DISMISS (doc. #5)**

Plaintiff alleges: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violations of NRS 598D.010 *et seq.*, prohibiting unfair lending practices; (4) statutory violations; (5) consumer fraud, NRS 41.600, and deceptive trade practices, NRS 598; (6) fraud; (7) constructive fraud; (8) negligence per se; (9) negligence; (10) civil racketeering; (11) civil conspiracy; (12) intentional infliction of emotional distress; and (13) punitive damages. (Doc. #1, compl.).

Each claim, except the fourth, implicates defendant Countrywide, which plaintiff refers to in the complaint as "lender." (Doc. #1, compl., ¶21). Each claim, except claims one, two and four, implicates defendant Bank of America, which plaintiff refers to in the complaint as "mortgage purchaser." (Doc. #1, compl., ¶23). Countrywide and Bank of America have jointly filed the instant

James C. Mahan
U.S. District Judge

- 2 -

Case 2:10-cv-01292-JCM-RJJ   Document 28   Filed 11/01/10   Page 3 of 10

1    motion to dismiss. (Doc. #5).

2            "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

3    as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

4    1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a

5    complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the

6    line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at

7    557). However, where there are well pled factual allegations, the court should assume their veracity

8    and determine if they give rise to relief. *Id.* at 1950.

9        A.      Breach of Contract (Claim 1)

10          To state a claim for breach of contract against defendant Countrywide, the plaintiff must

11   allege: (1) the existence of a valid agreement between the plaintiff and the defendants; (2) a breach

12   by the defendants; and (3) damages as a result of the breach. *Calloway v. City of Reno*, 993 P.2d

13   1259 (Nev. 2000). Once a plaintiff proves these prima facie elements, the burden shifts to the

14   defendant to show that his nonperformance was excused or otherwise defensible. *Hewitt v. Allen*,

15   43 P.3d 345, 349 (Nev. 2002).

16          Plaintiff first alleges that "Countrywide had an obligation and duty, under the loan agreement,

17   to ensure that Mr. Patterson had the ability to repay the loan." (Doc. #13, p.9). Plaintiff also states

18   that Countrywide breached its contractual duty to inform Mr. Patterson of the fraudulent practices

19   of other named defendants and to notify Mr. Patterson that his loan application contained "numerous

20   false statements and alleged forgeries." *Id.* These allegations seem to assert that Countrywide

21   breached unspecified statutory and/or common law duties, rather than a specific contract provision.

22          Plaintiff's second allegation that defendant Countrywide breached the loan agreement by

23   failing to notify plaintiff of default before foreclosing (doc. #1, compl. ¶63) is also without merit.

24   Defendants cite the publicly recorded deed of trust, which states that "if any notice required by this

25   Security Instrument is also required under Applicable Law, the Applicable Law requirement will

26   satisfy the corresponding requirement under this Security Agreement." (Doc. #6-1, ex. D, ¶15). In

27   accordance with this provision, defendants satisfied their contractual obligation by publicly recording

28

James C. Mahan
U.S. District Judge                                    - 3 -

Case 2:10-cv-01292-JCM-RJJ   Document 28   Filed 11/01/10   Page 4 of 10

1  notice of default. NRS 107.080; (doc. #6-1, ex. G).

2        The court may consider these publicly recorded documents on a motion to dismiss so long

3  as their authenticity has not been questioned. *Mack v. S. Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282

4  (9th Cir. 1986) (holding that a court may take judicial notice of publicly recorded documents); *see*

5  *also Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (holding that consideration of judicially

6  noticed extrinsic documents does not convert a motion to dismiss in to a motion for summary

7  judgment). Accordingly, the breach of contract claim is dismissed as to defendant Countrywide.

8        B.      Breach of the Covenant of Good Faith and Fair Dealing (Claim 2)

9        To state a claim of breach of the covenant of good faith and fair dealing against defendant

10  Countrywide, plaintiff must allege: (1) plaintiff and defendant were parties to an agreement; (2) the

11  defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by

12  preforming in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's

13  justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). In Nevada, an

14  implied covenant of good faith and fair dealing exists in every contract, *Consol Generator-Nevada*

15  *v. Cummins Engine*, 917 P.2d 1251, 1256 (Nev. 1998), and a plaintiff may assert a claim for its

16  breach if the defendant deliberately contravenes the intention and spirit of the agreement, *Morris v.*

17  *Bank Am. Nev.*, 886 P.2d 454 (Nev. 1994).

18        Plaintiff alleges, as he did in the breach of contract claim, that "Countrywide's failure to

19  investigate or look into the deficiencies on the loan documents, as well as its failure to advise Mr.

20  Patterson of those deficiencies so that he could investigate, amounts to a breach of the contractual

21  covenant of good faith and fair dealing." (Doc. #13, p. 11–12). These allegations relate to events that

22  took place during the origination of the loan, and therefore the claim fails on the first prong of the

23  four-part test because plaintiff and defendant were not yet "parties to an agreement." Accordingly,

24  defendant Countrywide's motion to dismiss is granted as to claim two.

25        C.      Unfair Lending Practices (Claim 3)

26        Plaintiffs third claim for relief alleges that defendants Bank of America and Countrywide

27  engaged in unfair lending practices, as defined in NRS 598D.100.

28

James C. Mahan
U.S. District Judge

- 4 -

1    An action upon statute for penalty or forfeiture has a two-year statute of limitations, unless

2    the statute provides otherwise. NRS 11.190(4)(b). The statute at issue, NRS 598D, qualifies as a

3    statute for penalty and does not provide a contrary limitations period. Plaintiff's loan issued in April

4    of 2007, and plaintiff filed the instant complaint on March 16, 2010. (Doc. #1). Accordingly, the

5    claim is time-barred and is dismissed against defendants Countrywide and Bank of America. *See,*

6    *e.g., Freeto v. Litton Loan Serv. LP*, 2010 WL 2730596 (D. Nev. 2010) (finding that where a loan

7    was issued in 2005, but the complaint was filed in 2009, the claim was time-barred). Defendants'

8    motion to dismiss is granted as to claim three.

9    D.    Consumer Fraud, NRS 41.600, and Deceptive Trade Practices, NRS 598 (Claim 5),

10          Fraud (Claim 6) and Constructive Fraud (Claim 7)

11    Any claim of fraud must be pled with particularity under Federal Rule of Civil Procedure

12   9(b). *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999). To meet this standard, plaintiff

13   must present details regarding the "time, place, and manner of each act of fraud, plus the role of each

14   defendant in each scheme." *Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405

15   (9th Cir. 1991).

16    Plaintiff has alleged three claims of fraud against defendants Countrywide and Bank of

17   America – claim five, claim six, and claim seven. Although plaintiff cites *Rocker v. KPMG LLP*, 148

18   P.3d 703 (Nev. 2006), for the proposition that he should be accorded a relaxed pleading standard,

19   that doctrine is inapplicable in this case. As defendants note, *Rocker* applies only where the

20   information necessary to meet the requirements of Rule 9(b) is solely in the defendants' possession

21   "and cannot be secured without formal, legal discovery." *Id.* at 710.

22    Here, plaintiff complains of forgeries of his signature, misrepresentations of his finances, and

23   inconsistencies within documents in his possession. None of these matters are solely within

24   defendants' possession or control. Accordingly, plaintiff is held to the heightened pleading standard

25   of Rule 9(b).

26          I.    *Consumer Fraud (Claim 5)*

27    The fifth claim alleges consumer fraud and violations of NRS 41.600 and NRS 598. Plaintiff

28

James C. Mahan
U.S. District Judge

1    states that "Defendant Mortgage Broker Company, Insurance Company, Mortgage Purchase

2    Company, Mortgage Agent, Title Company and Lender, as previously alleged, performed acts and

3    omitted performing acts, which constitute a deceptive trade practice under one or more of the

4    provisions of NRS 598.0903, *et seq.,*including but not limited to: NRS 598.0915(2), (5), (7), (9),

5    (13), (14), (15), (16); and NRS 598.0917(2), (6), (7)." (Doc. #1, compl., ¶ 93).

6         These allegations are insufficient to meet the heightened pleading requirement for claims of

7    fraud under Rule 9(b). Plaintiff has not identified acts, committed by specific defendants, which

8    would constitute deceptive trade practices or consumer fraud. Moreover, only one of the eleven

9    statutes cited by plaintiff, NRS 598.0915(15), could conceivably apply to home loans or mortgages.

10   *See* NRS 598.0915(2), (5), (7), (9), (13), (14), (16); NRS 598.0917(2), (6), (7) (all applying

11   specifically to the sale or lease of goods or to retail installment transactions). Even NRS

12   598.0915(15), which makes making a false representation in a transaction a deceptive trade practice,

13   does not apply to defendants Countrywide and Bank of America, because plaintiff has not alleged

14   that either defendant made false statements. Rather, plaintiff alleges that other defendants made false

15   statements to Countrywide and Bank of America. Accordingly, claim five is dismissed as to both

16   defendants.

17              ii.     *Fraud (Claim 6)*

18        In the sixth claim for relief, plaintiff alleges that "Defendants intentionally presented

19   information they knew was false concerning the Plaintiff . . . [and] intentionally failed to provide

20   information to Plaintiff that Defendants knew was material to the transactions at issue." (Doc. #1,

21   compl., ¶ 98). Specifically, plaintiff alleges that the false representations included: (1) statements that

22   the loans were suitable to the plaintiff, (2) that the loans were appropriate for plaintiff's financial

23   position, and (3) that the loans were otherwise a beneficial transition [sic] for Plaintiff." (*Id.*).

24        First, this claim alleges no acts committed by defendant Bank of America, which purchased

25   the loan from Countrywide. All of the allegations relate to the origination of the loan.

26        Second, claim five fails to plead fraud against defendant Countrywide with particularity as

27   required by Rule 9(b). Specifically, the claim is full of conclusory allegations, such as defendants

28

**James C. Mahan**
**U.S. District Judge**

1  "intentionally failed to disclose to the fraudulent activities of other Defendants to Plaintiff." (Doc.

2  #1, compl., ¶102). Accordingly, the sixth claim for relief is dismissed as to defendants Countrywide

3  and Bank of America.

4             iii.     *Constructive Fraud (Claim 7)*

5         Finally, the seventh claim for relief alleges that the defendants Countrywide and Bank of

6  America committed constructive fraud. "Constructive fraud is the breach of some legal or equitable

7  duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive

8  others or to violate confidence . . . [and] may arise where there has been a breach of duty arising out

9  of a fiduciary or confidential matter." *Exec. Mgmt. Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465 (Nev.

10  1998).

11         As to defendant Bank of America, the complaint alleges only that "Defendants, and each of

12  them, were in a relationship of special confidence with Plaintiff. . . ." (Doc. #1, compl., ¶113).

13  Plaintiff provides no facts to overcome the general rule that a lender and borrower do not have such

14  a special relationship. *See Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359 F. Supp. 2d

15  1075, 1090 (D. Nev. 2004) (holding that a plaintiff must set forth sufficient facts to overcome the

16  general rule).

17         As to defendant Countrywide, in his opposition to the motion to dismiss, plaintiff alleges that

18  Countrywide's employee, Pamela Miller, met with plaintiff to fill out the loan application and broker

19  the loans, creating the requisite special relationship between the parties. (Doc. #13, p.21). None of

20  this is in plaintiff's complaint, and plaintiff does not explain how the alleged interaction created the

21  requisite relationship.

22         Accordingly, as plaintiff has failed to allege a legal or equitable duty, and claim seven is

23  dismissed as to defendants Countrywide and Bank of America.

24         E.     <u>Negligence Per Se</u> (Claim 8)

25         To state a claim for negligence per se, a plaintiff must allege that: (1) he or she belongs to

26  a class of persons that a statute was intended to protect; (2) the defendant violated the relevant

27  statute; (3) the plaintiff's injuries are the type against which the statute was intended to protect; (4)

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    the violation was the legal cause of plaintiff's injury; and (5) plaintiff suffered damages. *See*

2    *Anderson v. Baltrusaitis*, 944 P.2d 797, 799 (1997). Whether a particular statute establishes a

3    standard of care in a negligence action is a question of law. *Vega v. E. Courtyard Assocs.*, 24 P.3d

4    219, 221 (Nev. 2001). Under NRS 11.190, the relevant statute of limitations for negligence per se

5    is three years. *Torreabla v. Kesmetis*, 178 P.3d 716 (Nev. 2008).

6           First,, this claim fails to mention defendant Bank of America. Second, as to defendant

7    Countrywide, plaintiff alleges that "[a]t the time the subject loan transaction occurred, Defendants

8    Mortgage Broker Company, Mortgage Agent, and Lender were subject to the provisions of Unfair

9    Lending Practices Act, NRS 598D.100, *et seq.* (enacted 2003) and other applicable State Statutes

10   and Administrative Codes." (Doc. #1, compl., ¶127). Plaintiff alleges that lender-Countrywide

11   violated these provisions, citing *Rocker v. KPMG LLP*,149 P.3d 703 (Nev. 2006), to excuse the lack

12   of specificity in the complaint.

13          Again, plaintiff complains of forgeries of his signature, misrepresentations of his finances,

14   and inconsistencies within documents in his possession. None of these matters are solely within

15   defendants' possession or control, and plaintiff is unable to rely on *Rocker* for failing to comply with

16   the heightened pleading requirement of Rule 9(b). Accordingly, claim eight is dismissed as to

17   defendants Countrywide and Bank of America.

18          F.      Negligence (Claim 9) and Intentional Infliction of Emotional Distress (Claim 12)

19          An action to recover damages for injuries to a person caused by the wrongful act or neglect

20   of another must be brought within two years. NRS 11.190(4)(e). Nevada uses a discovery rule for

21   determining when the statute of limitations begins to run. *Torrealba v. Kesmetis*, 178 P.3d 716, 723

22   (Nev. 2008).

23          Plaintiff's ninth claim for relief, negligence, falls under the two-year statute of limitations.

24   Plaintiff's loan issued in April of 2007, and plaintiff filed the instant complaint on March 16, 2010.

25   (Doc. #1). Plaintiff himself alleges that the deficiencies complained of were apparent on the face of

26   the loan documents (doc. #1, compl., ¶53), meaning plaintiff could have first discovered the

27   deficiencies when he entered into the loan agreement.

28

James C. Mahan
U.S. District Judge                                      - 8 -

1    Similarly, plaintiff's claim of intentional infliction of emotional distress constitutes an injury

2  to the person and falls under Nevada's two-year statute of limitations. Plaintiff claims that "[t]he acts

3  of Defendants, each of them, were extreme and outrageous and were designed and calculated, in hole

4  [sic] or in part, to cause emotional distress in Plaintiff." (Doc. #1, compl., ¶160). This referenced

5  conduct occurred during the origination of the loan in April of 2007, nearly three-years before the

6  plaintiff filed the instant complaint.

7    Accordingly, as the statute of limitations has run, both claims nine and twelve are dismissed

8  as to defendants Countrywide and Bank of America.

9    G.    Civil Racketeering (Claim 10)

10    To state a claim under Nevada's RICO statute, the plaintiff must allege: (1) his injury flows

11  from the defendant's violation of a predicate Nevada RICO act, found at NRS 207.360; (2) the injury

12  was proximately caused by the defendant's violation of the predicate act; and (3) the plaintiff did not

13  participate in the commission of the predicate act. *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 299

14  (Nev. 1993). Racketeering is defined as "engaging in at least two crimes related to racketeering that

15  have the same or similar pattern, intents, results, accomplices, victims or methods of commission,

16  or are otherwise interrelated by distinguishing characteristics and are not isolated instances. . . ."

17  NRS 207.390.

18    Here, plaintiff has failed to allege a predicate RICO act. Although plaintiff does claim that

19  his signature was forged on unidentified loan documents, the defendant-lender and defendant-

20  mortgage purchaser would have been equally victimized by this act. Furthermore, plaintiff has failed

21  to allege a pattern that would qualify as racketeering activity. Due to these deficiencies, the tenth

22  claim for relief is dismissed as to defendants Countrywide and Bank of America.

23    H.    Civil Conspiracy (Claim 11)

24    To allege a conspiracy to defraud, a complaint must meet the particularly requirements of

25  Federal Rule of Civil Procedure 9(b) and inform each defendant of its actions that constituted joining

26  the conspiracy. *Graziose v. Am. Home Products Corp.*, 202 F.R.D. 638, 642 (D. Nev. 2001).

27  Allegations of conspiracy should be accompanied by the who, what, when, where, and how of the

28

James C. Mahan
U.S. District Judge

1  misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

2         Plaintiff alleges that "[a]ll Defendants agreed overtly and/or by acquiescence or omission to:

3  Work together to have Plaintiff close the subject loans through: fraud, misrepresentation, and to

4  breach their duties and obligations . . . to plaintiff." (Doc. #1, compl., ¶152). Plaintiff has failed to

5  identify which acts or omissions by which defendants constituted joining the conspiracy and has

6  failed to plead its conspiracy claim with particularity as required under Rule 9(b). Accordingly, the

7  eleventh claim for relief is dismissed as to defendants Countrywide and Bank of America.

8         I.      Punitive Damages (Claim 13)

9         Punitive damages are a remedy and not a cause of action. *Lund v. J.C. Penny Outlet*, 911 F.

10  Supp. 442, 445 (D. Nev. 1996). Whereas defendants Countrywide and Bank of America's motion

11  to dismiss is granted in its entirety, plaintiff is not entitled to punitive damages at this juncture. The

12  thirteenth claim is dismissed as to defendants Countrywide and Bank of America.

13         Accordingly,

14         IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion to

15  remand (doc. #11) is DENIED.

16         IT IS FURTHER ORDERED that defendants Countrywide's and Bank of America's motion

17  to dismiss (doc. #5) is GRANTED.

18         IT IS FURTHER ORDERED that the case be dismissed without prejudice as to defendants

19  Countrywide and Bank of America.

20         DATED November 1, 2010.

21

22

_____

UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

James C. Mahan
U.S. District Judge

- 10 -

EXHIBIT "N"

# EXHIBIT "N"

1

2

3

4

5                            **UNITED STATES DISTRICT COURT**

6                                  **DISTRICT OF NEVADA**

7    | YVETTE WEINSTEIN,                          2:10-CV-1098 JCM (LRL)

8    |                Plaintiff,

9    | v.

10   | PREFERRED HOME MORTGAGE
11   | COMPANY, et al.,

12   |                Defendants.

13

14                                      **ORDER**

15          Presently before the court is defendant Preferred Home Mortgage Company's (hereinafter

16   "Preferred") motion to dismiss amended complaint for failure to state a claim upon which relief can

17   be granted. (Doc. #7). Plaintiff Yvette Weinstein filed an opposition. (Doc. #10). Defendant filed

18   a reply to the motion. (Doc. #12).

19          Also before the court is plaintiff's motion to remand. (Doc. #11). Defendant Preferred filed

20   an opposition. (Doc. #14). Plaintiff filed a reply. (Doc. #15).

21          Plaintiff, as Chapter 7 trustee of the George S. Aquino bankruptcy estate, filed her complaint

22   in the Eighth Judicial District Court of Clark County, Nevada, on February 25, 2010, against

23   Preferred, Joe Scallion, American Home Mortgage Servicing, Inc. (hereinafter "Am Home"), and

24   Regions Bank. On June 11, 2010, she filed an amended complaint, which stemmed from the alleged

25   fraudulent activities that led to a mortgage being taken out in Mr. George Aquino's (hereinafter

26   "Aquino") name without his knowledge. Plaintiff asserts causes of action for; (1) breach of contract,

27   (2) breach of contractual covenant of good faith and fair dealings, (3) violation of NRS 598D,

28

James C. Mahan
U.S. District Judge

1  prohibiting unfair lending practices, (4) victim of consumer fraud under NRS 41.6000 and violation

2  of NRS 598, prohibiting deceptive trade practices, (5) fraud, (6) constructive fraud, (7) negligent

3  misrepresentation, (8) negligence, (9) tortious interference with contract, and (10) conspiracy.

4       On July 6, 2010, defendant Preferred filed a petition for removal (doc. #1), and subsequently

5  on July 8, 2010, defendant AmHome filed a petition for removal (Case No. 2:10-cv-01125-JCM-

6  LRL). Both of the petitions for removal were based upon federal question jurisdiction. On July 30,

7  2010, plaintiff filed her motion to remand this case. (Doc. #11). On October 4, 2010, this court

8  consolidated the cases under the above captioned case number *2:10-cv-01098-JCM-LRL.*

9  **Plaintiff's Motion to Remand**

10       Under 28 U.S.C. § 1441(b), this court has original jurisdiction over claims that turn on a

11  substantial question of federal law. *Ultramor America, Ltd. V. Dwell,* 900 F.2d 1412, 1414 (9th Cir.

12  1990). Federal jurisdiction exists where a plaintiff's claims, on their face, appear to rely on state law,

13  but the rights he possesses are actually based on federal law. *Fristoe v. Reynolds Metals Co.,* 615

14  F.2d 1209, 1211-12 (9th Cir. 1980).

15       In plaintiff's motion, she alleges that no federal claims are specifically pleaded in her

16  amended complaint, and that the removal of the case was improper. Specifically, she asserts that the

17  Truth in Lending Act (hereinafter "TILA") and the Real Estate Settlement Procedures Act

18  (hereinafter "RESPA") were not the basis for any of her claims, and that all of the claims were based

19  upon the laws and statutes of the state of Nevada.

20       However, all of the allegations that plaintiff makes in her amended complaint regarding the

21  disclosures, notifications, and the loan procedures, are governed by federal law. These federal laws

22  are put into place to protect home buyers from undisclosed loan terms and fees. In her complaint,

23  plaintiff alleges fraud and unfair lending practices due to the alleged non-disclosure, which is a

24  requirement imposed by TILA and RESPA. Therefore, regardless of her opting to bring state law

25  claims, in order for this court to resolve the issues at hand and determine if the defendants are liable,

26  it must assess *substantial questions of federal law.*

27       Moreover, in the consolidated case (Case No. 2:10-cv-01125-JCM-LRL) which stemmed

28

James C. Mahan
U.S. District Judge

- 2 -

1    from the same complaint, this court found that removal was proper and denied plaintiff's motion to

2    remand. The court based its denial upon the finding that at least one of plaintiff's claims for relief

3    requires the court to resolve a substantial question of federal law (doc. # 19).

4         This court is not inclined to remand a case that was properly removed to this court.

5    **Defendant's Motion to Dismiss**

6         In the plaintiff's opposition to the motion to dismiss (doc. 10), she stipulated to the dismissal

7    of claims (1), (2), and (9), which all dealt with an alleged contract. Being that Mr. Aquino never

8    entered into a contract, plaintiff dismissed these claims. Therefore, the court will only address the

9    plaintiff's remaining claims.

10        Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper when a complaint fails

11   to state a claim upon which relief can be granted. In order for a plaintiff to survive a 12(b)(6), he

12   must "provide the grounds for his entitlement to relief [which] requires more than labels and

13   conclusions. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007). Further, "formulaic

14   recitation of the elements of a claim will not do." *Id.*

15        Defendant Preferred asserts that pursuant to rule 12(b)(6) each one of the plaintiff's

16   remaining claims fail, and that the complaint must be dismissed.

17   **A. Plaintiff's third claim for unfair lending practices in violation of NRS § 598D.010.**

18        In plaintiff's third claim, she states that NRS 598D100(1)(B) "prohibits a lending institution

19   from knowingly or intentionally making a home loan without determining, using *commercially*

20   *reasonable means,* that the borrower has the ability to repay the loan." However, the language cited

21   in the complaint was not incorporated into the statute until October 2007. The loan agreement at

22   issue was entered into in August of 2005, well before the cited language was added to the statute.

23   This court will not retroactively apply this language to the loan agreement. Therefore, this claim

24   must fail.

25   **B. Plaintiff's fourth, fifth, and sixth claims for fraud.**

26        A claim for fraud must be pled with particularity under Federal Rule of Civil Procedure 9(b).

27   *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999). To meet this standard, plaintiff must

28

James C. Mahan
U.S. District Judge

- 3 -

1   present details regarding the "time, place, and manner of each act of fraud, plus the role of each

2   defendant in each scheme." *Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405

3   (9th Cir. 1991). Further, the plaintiff's complaint must put the defendant on notice of the particular

4   misconduct the defendant is alleged to have committed so that the defendant can properly defend

5   against all allegations. *Vess v. Ciba-Geigy Corp. USA,* 317 f.3d 1097, 1104-05 (9th Cir. 2003).

6          In the fourth cause of action, for violations of NRS 41.600 and NRS 598, plaintiff states that

7   the defendants "performed acts and omitted performing acts, which constitute a deceptive trade

8   practice." This neither defines the role Preferred played nor specifies the time, place, or manner of

9   the alleged fraud as required in fraud cases.

10          As for the fifth cause of action for fraud, the plaintiff alleges that "[d]efendants ignored loan

11   documents that were defective on their face, and issued or purchased the loan without all conditions

12   of the loan being met and without the necessary documents being provided." Once again, this claim

13   is not supported by the appropriate detail. It fails to reference *which* documents were defective or

14   missing, *how* such documents were so, and *which* conditions were not satisfied.

15          Plaintiff's sixth cause of action for constructive fraud fails just as the previous two. The

16   complaint states that a "special relationship" exists between the debtor and the defendants, that

17   "defendants, and each of them, intentionally failed to disclose, *inter alia,* to [d]ebtor the fraudulent

18   activities of other [d]efendants," and that the "debtor reasonably relied upon the [d]efendants." The

19   complaint not only fails to specify what instances or "activities" it refers to, but the debtor, Mr.

20   Aquino, having admitted to being ignorant to the existence of the loan until years later, cannot claim

21   he "relied upon the [d]efendants." Further, there can be no "special relationship" that would require

22   disclosure between a debtor who claims that he was not a part of the loan process and that he had

23   no idea of the loan, and the defendants who allegedly issued the loan.

24          As articulated above, the plaintiff fails to adequately put the defendant on notice of how it

25   committed fraud. Without the ability to answer or defend, plaintiff's claims for fraud are dismissed.

26

27

28

James C. Mahan
U.S. District Judge                                      - 4 -

1

**C. Plaintiff's seventh and eighth claims for negligence.**

2       In the seventh cause of action for negligent misrepresentation, the plaintiff alleges that the

3 defendants "made statements to [d]ebtor which these defendants reasonably should have known were

4 false, or [d]efendants omitted telling [d]ebtor material facts which these [d]efendants reasonably

5 should have known were needed by [d]ebtor to be reasonably informed prior to making a

6 decision...and that [d]efendants should have known that [d]ebtor would rely upon their statements

7 or silence." Further, it states that "[d]ebtor reasonably relied on the statements, and non-statements,

8 of these [d]efendants by, among other things, entering into the loan."

9       As shown above, and admitted to in the plaintiff's pleadings, the debtor, Mr. Aquino, was

10 unaware of the existence of the loan and was not involved in the process of obtaining it. Thus, it

11 cannot be alleged that any statements were made to him with regards to the loan, or that he relied

12 upon any statements or omissions. The court is not inclined to recognize any making of, or reliance

13 on, statements to the debtor, while plaintiff asserts his lack of knowledge or involvement in the loan.

14       The plaintiff's eighth cause of action for negligence must also fail due to the lack of dealings

15 the debtor had with Preferred. "To recover under a negligence theory, the complainant must prove

16 four elements: (1) that the defendant owed him a duty of care; (2) that defendant breached this duty

17 of care; (3) that the breach was the legal cause of plaintiff's injury; and (4) that the complainant

18 suffered damages. *Hammerstein v. Jean Dev. West*, 907 P.2d 975, 977 (Nev. 1995).

19       The defendant cannot be seen to have "breached [its] duty of care," as alleged in the

20 complaint, when a duty did not exist. Absent any contractual relationship which would give rise to

21 a duty, and in light of Mr. Aquino's lack of involvement, once again this claim fails.

22       Further, plaintiff claims "[d]efendants and each of them negligently inflicted emotional

23 distress upon [d]ebtor," without reciting any elements of the claim or facts to support it. This does

24 not provide any grounds for defendant to defend or answer the claim.

25

**D. Plaintiff's tenth claim for conspiracy.**

26       In the final claim, plaintiff asserts that defendants "agreed overtly and/or by acquiescence or

27 omission to" in some way defraud the debtor. However, there is nothing pleaded that supports this

28

James C. Mahan
U.S. District Judge

- 5 -

1    allegation. To allege a conspiracy to defraud, a complaint must meet the particularity requirements

2    of Federal Rule of Civil Procedure 9(b) and inform each defendant of its actions that constituted

3    joining the conspiracy. *Graziose v. Am. Home Products Corp.*, 202 F.R.D. 638, 642 (D. Nev. 2001).

4    Allegations of conspiracy should be accompanied by the who, what, when, where, and how of the

5    misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

6        Again, plaintiff fails to meet these requirements. The complaint does not specify what actions

7    constituted the conspiracy or how an agreement to commit misconduct was made. Due to the lack

8    oF supporting facts, this claim must fail.

9    **Request for Attorney Fees/Costs**

10       In the plaintiff's motion to remand (doc. # 11), she requests that the court grant attorney fees

11   if it determines removal was improper. Under 28 U.S.C. § 1447(c), [a]n order remanding the case

12   may require payment of just costs and any actual expenses, including attorney fees, incurred [as a]

13   result of the removal."  Here, the court found that the removal was proper. Thus, an award of

14   attorney fees is not applicable.

15       Defendant Preferred asserts in its motion to dismiss (doc. #7) that it is entitled to an award

16   of costs under NRS §10.020(3), which states that "[c]osts must be allowed [ ] to the prevailing party

17   against any adverse party against whom judgment is rendered, in...an action for recovery of money

18   or damages, where plaintiff seeks to recover more than $2,500."

19       Pursuant to Local Rule 54-1(a), "[u]nless otherwise ordered by the court, the prevailing party

20   shall be entitled to reasonable costs," and "shall serve and file bill of costs and disbursements on the

21   form provided by the clerk no later then ten (10) days after the date of entry of the judgment on

22   decree." Further, rule 54-1(b) provides that the bill of costs "shall be verified and distinctly set forth

23   each item so that its nature can be readily understood," and "state that the items are correct and that

24   the services and disbursements have been actually and necessarily provided and made." In addition,

25   the local rules require that the party attach an itemization and documentation of requested costs in

26   all categories.

27       In light of the fact that defendant has failed to submit any of the necessary documentation as

28

James C. Mahan
U.S. District Judge

1   required under the local rules, this court is not inclined to grant an award of costs at this time.

2       IT IS HEREBY ORDERED ADJUDGED AND DECREED that defendant Preferred Home

3   Mortgage Company's motion to dismiss (doc. #7) be, and the same hereby is, GRANTED.

4       IT IS FURTHER ORDERED that plaintiff Yvette Weinstein's motion to remand (doc. #11)

5   be, and the same hereby is, DENIED.

6       IT IS FURTHER ORDERED that defendant Preferred Home Mortgage Company's and

7   plaintiff Yvette Weinstein's requests for attorney fees and costs be, and the same hereby are,

8   DENIED.

9       DATED October 8, 2010.

10

11                                    _____

12                                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "O"

# EXHIBIT "O"

```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF NEVADA
 2          BEFORE THE HONORABLE ROBERT C. JONES, DISTRICT JUDGE
                              ---oOo---
 3

 4     LACY J. DALTON, et al.,          :

 5                    Plaintiffs,       :  No. 3:09-CV-534-RCJ(VPC)

 6          -vs-                        :  October 9, 2009

 7     CITIMORTGAGE, INC., et al.,      :  Reno, Nevada

 8                    Defendants.       :

 9                                      :

10

11          TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION

12     APPEARANCES:

13     FOR THE PLAINTIFFS:       ROBERT R. HAGER and TREVA J. HEARNE
                                 Attorneys at Law
14

15     FOR THE DEFENDANTS:       BRUCE BEESLEY, ROBERT M. BROCHIN,
                                 HOWARD CAYNE, J. MATTHEW GOODIN,
16                               DAVID R. HALL, MICHAEL LARGE,
                                 JILL L. MURCH, THOMAS V. PANOFF,
17                               MATTHEW PREVIN, ARIEL E. STERN,
                                 CHAD FEARS, ALEX FLANGAS, THOMAS
18                               HEFFERON, JEREMY GLADSTONE, RYAN
                                 HERRICK, KARL TILLEMAN, and
19                               PAUL MATTEONI
                                 Attorneys at Law
20

21     Reported by:              Margaret E. Griener, CCR #3, RDR
                                 Official Reporter
22                               400 South Virginia Street
                                 Reno, Nevada 89501
23                               (775)329-9980

24

25              COMPUTER-ASSISTED TRANSCRIPTION
```

128

```
 1    from an appointment, disposition or assignment.
 2              THE COURT:  Counsel, we're just redundant now.
 3    I've got the whole thing.
 4              MR. HAGER:  Your Honor, under Nevada law, a
 5    promissory note is enforceable by the holder of the note, a
 6    note holder in possession of the note who has the rights of a
 7    holder.  We don't have any of those parties here today.  We
 8    don't have anybody here today that we're seeking to enjoin
 9    that shows that they have any authority to act on a holder of
10    the note or anybody who was authorized to enforce that note.
11              THE COURT:  Thank you.
12              MR. HAGER:  Thank you, your Honor.
13              THE COURT:  This matter is submitted, and I'll
14    issue a written order that will explain totally my analysis.
15    However, I'm going to announce the result now so that you can
16    protect yourselves.
17              I am going to deny the preliminary injunction.  By
18    protecting yourselves, I mean pursue the appropriate method of
19    bankruptcy, automatic stay, state filing, whatever else you
20    need to do to protect yourselves.
21              You have the right to an immediate appeal with
22    denial or granting of a preliminary injunction so I'm simply
23    advising you of the result so that you can proceed to protect
24    yourself forthwith.
25              There's simply no basis for asking for a preliminary
```

129

1  injunction, and the primary ground is that there is an

2  insufficient statement of evidence to support the complaint,

3  and as far as this Court can determine, there is no likelihood

4  of success on the merits.

5         But I speak now to the underlying basis for denying

6  the motion to counsel and to any clients that you represent

7  that may be here.  The problem with this lawsuit is that you

8  are -- I'm sorry, with the motion for preliminary injunction,

9  is that you are simply not presenting an equitable request for

10  an equitable remedy.

11        There is a damage remedy available at the end of any

12  lawsuit.  A jury will decide it and/or the Court will decide

13  it on the law, and you have rights to appeal.

14        What you're asking for here is a preliminary

15  injunction to stop whoever these entities are from

16  foreclosing, an equitable remedy, and your equitable remedy is

17  unaccompanied by an equitable offering which you're mandated

18  to do when the Court sits in equity.

19        It is simply not fair to, number one, ask these

20  parties to be preliminarily or forever barred from foreclosing

21  on these properties without an equitable response; Judge,

22  we'll make the payments going forward; Judge, in three months

23  we'll start making the payments going forward.

24        It's not a matter of -- you've recognize the

25  obligation to provide some equitable recourse in your offer

MARGARET E. GRIENER, RDR, CCR NO. 3, OFFICIAL REPORTER
(775) 329-9980

EXHIBIT "P"

# EXHIBIT "P"

1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                               **DISTRICT OF NEVADA**

8   J.E. SCOTT SPRACKLIN and DENISE          )
    SPRACKLIN,                                )
9                                             )
               Plaintiffs,                    )          3:10-cv-267-RCJ-VPC
10                                            )
               v.                             )
11                                            )          **ORDER**
    RECONTRUST COMPANY, BANK OF               )
12  AMERICA dba BAC HOME LOANS                )
    SERVICING, LP, CTC REAL ESTATE            )
13  SERVICES, and MORTGAGE                    )
    ELECTRONIC REGISTRATION SYSTEMS,          )
14  INC.,                                     )
                                              )
15             Defendants.                    )
                                              )
16  _____ )

17          Currently before the Court is a Motion for Temporary Restraining Order and Preliminary

18  Injunction (#7) filed by Plaintiffs J.E. Scott Spracklin and Denise Spracklin (collectively

19  referred to herein as "Plaintiffs").  Because Plaintiffs have failed to establish that they are

20  likely to succeed on the merits of their claims, Plaintiffs are not entitled to injunctive relief.  The

21  Court now issues the following order.

22                               **BACKGROUND**

23          On December 19, 2003, Plaintiff J.E. Scott Spracklin ("Mr. Spracklin") executed a

24  promissory note in the principal amount of $364,000.00 in favor of Countrywide Home Loans,

25  Inc. ("Countrywide") in exchange for a loan to purchase property located at 5436 Vista Terrace

26  Lane, Sparks, Nevada.  A Deed of Trust was recorded on the property on December 30, 2003.

27  The Deed of Trust lists Countrywide Home Loans, Inc. ("Countrywide") as the lender and CTC

28  Real Estate Services ("CTC Real Estate") as the trustee.  The Deed of Trust also states that

    Mortgage Electronic Registration Systems, Inc. ("MERS") is "acting solely as a nominee for

1   Lender and Lender's successors and assigns," and that MERS "is the beneficiary under this
2   Security Instrument."

3        Although the Deed of Trust is in Mr. Spracklin's name only, Mr. Spracklin was married
4   to Plaintiff Denise Spracklin ("Mrs. Spracklin") at the time the property was purchased.  Mr.
5   and Mrs. Spracklin have since divorced, and, at the time of the divorce, the property was
6   awarded to Mrs. Spracklin.  Although the allegations in the complaint are not entirely clear,
7   it appears that Mrs. Spracklin became delinquent in her mortgage payments and defaulted on
8   the loan.  As a result, Defendants began foreclosure proceedings against the property.

9        On April 6, 2010, Plaintiffs filed a complaint in the Second Judicial District Court,
10  Washoe County, Nevada ("Second Judicial") alleging claims of wrongful foreclosure, fraud in
11  the inducement, conspiracy to commit wrongful foreclosure, unjust enrichment, and slander
12  of title.  Defendants removed the case to this Court based on diversity jurisdiction.

13       On May 7, 2010, Plaintiffs filed a Motion for Temporary Restraining Order (#7).
14  According to the motion, Plaintiffs are "in imminent danger of losing their home by foreclosure
15  and have received notice of a Trustee sale."  (Motion for Temporary Restraining Order (#7)
16  at 2).  Plaintiffs allege that Defendants are not entitled to foreclose on their property because
17  they have no contractual relationship with the current trustee and because MERS has not
18  produced the documentation of its interest in the deed of trust and note on the Plaintiffs' home.
19  Id. at 8.

20                                        **DISCUSSION**

21       The purpose of a preliminary injunction is to preserve the status quo pending a final
22  determination on the merits.  Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir.
23  2009).  "A plaintiff seeking a preliminary injunction must establish that he is likely to
24  succeed on the merits, that he is likely to suffer irreparable harm in the absence of
25  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in
26  the public interest."  Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S.Ct. 365,
27  374 (2008)(abrogating prior Ninth Circuit case law allowing for two standards); see Am.
28  Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009)(holding

                                             2

1   that prior Ninth Circuit decisions that applied a lesser preliminary injunction standard than

2   Winter are no longer controlling).

3       In this matter, Plaintiffs, in addition to general allegations against MERS, state that

4   the foreclosure proceedings occurring on their property is wrongful because the deed of

5   trust listed MERS as nominee and/or beneficiary and because the Defendants have not

6   produced the documentation of their interest in the deed of trust and note on Plaintiffs'

7   home.  Despite Plaintiffs allegations, the Court finds that Plaintiffs have failed to show that

8   they are likely to succeed on the merits of their claims.

9       Nevada law provides that a deed of trust is an instrument that may be used to

10  "secure the performance of an obligation or the payment of any debt."  NRS § 107.020.

11  When a debtor defaults, the creditor beneficiary may resort to its security in a trustee's

12  sale as a means of satisfying the debtor's obligation.  NRS § 107.080; See Rose v. First

13  Fed. Sav. and Loan, 105 Nev. 454, 777 P.2d 1318 (Nev. 1989)("When a grantor of a deed

14  of trust breaches the obligation, the trustee may sell the property to satisfy the

15  obligation.").

16      The procedure for conducting a trustee's foreclosure sale in Nevada is set forth in

17  NRS § 107.080 et seq.  The foreclosure process is commenced by the recording of a

18  notice of breach and election to sell by the beneficiary, the successor in interest of the

19  beneficiary or the trustee.  NRS § 107.080(2)(c).  The notice of default and election to sell

20  must describe the deficiency in performance or payment and may contain a notice of intent

21  to declare the entire unpaid balance due if acceleration is permitted by the obligation

22  secured by the deed of trust.  NRS § 107.080(3)(a).  After the notice of default is recorded,

23  the trustee must wait three months.  NRS § 107.080(2)(d).  The trustee must then give

24  notice of the time and place of the sale.  NRS § 107.080(4).  A sale made pursuant to this

25  section "may be declared void by any court of competent jurisdiction in the county where

26  the sale took place" if the trustee "or other person authorized to make the sale does not

27  substantially comply with the provisions of this section."  NRS § 107.080(5)(a).

28      Nevada's foreclosure statute is comprehensive and does not require production of

3

the original note.  See NRS § 107.080.  NRS § 107.080(1) specifically provides that a

"power of sale" is conferred upon the "trustee" after a breach of the obligation for which the

transfer is security.

In this case, Plaintiffs do not allege that Defendants did not follow the requirements

of NRS 107.080.  Rather, Plaintiffs appear to argue that the current trustee cannot

foreclose on the property because it is an entity with which Plaintiffs have no contractual

relationship.  (Motion for Temporary Restraining Order (#7) at 8).  However, under Nevada

law, it is not unlawful for the lender beneficiary to transfer its interest in the note and deed

and it is not unlawful for the lender-beneficiary or its successor to appoint a new trustee.

In addition, although Plaintiffs' complaint and motion make several general allegations

against MERS - the same allegations, almost word for word, that appear in many of

counsel's pleadings and motions - Plaintiffs have not alleged that MERS was involved in

anyway in the transfer of interests in the deed or in the foreclosure proceedings.

Furthermore, a trustee need not possess the note or the deed of trust to foreclose.  See

Ernestberg v. Mortg. Investors Group, No. 2:08-cv-01304, 2009 WL 160241, at *5 (D. Nev.

Jan. 22, 2009).  As such, Plaintiffs assertion that Defendants are required to produce the

note that involves Plaintiffs' home is without merit.  In addition, nowhere in Plaintiffs'

complaint or motion do Plaintiffs state that they are current on their mortgage payments or

that they are not in default.  Under Nevada law, a plaintiff cannot sustain a cause of action

for wrongful foreclosure is the plaintiff is in default.  Collins v. Union Fed. Sav. & Loan

Ass'n, 662 P.2d 610, 623 (Nev. 1983)("An action for the tort of wrongful foreclosure will lie

if the trustor or mortgagor can establish that at the time the power of sale was exercised or

the foreclosure occurred, no breach of condition or failure of performance existed on the

mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the

power of sale.").

On a final note, Plaintiffs' motion states that Defendants' conduct has caused Mrs.

Spracklin severe and continuous stress in her attempt to save her home from foreclosure.

(Motion for Temporary Restraining Order (#7) at 2).  However, it does not appear from any

4

of the pleadings filed by the Plaintiffs that they have utilized or attempted to utilize the Nevada mediation foreclosure program enacted by the Nevada State Legislature in 2009. As noted in the foregoing, in Nevada, a trustee under a deed of trust has the power to sell the property to which the deed of trust applies, subject to certain restrictions.  NRS 107.080, 107.085.  Assembly Bill 149 establishes additional restrictions on the trustee's power of sale with respect to owner-occupied housing by providing a homeowner with the right to request mediation under which the homeowner may receive a loan modification. The Court strongly advises the parties to consider using the mediation program enacted by the state legislature as a means of settling their dispute in this matter.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiffs' Motion for Temporary Restraining Order (#7) is DENIED.


DATED: This _24_ day of May, 2010.


_____
United States District Judge


5

EXHIBIT "Q"

# EXHIBIT "Q"

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE Mortgage Electronic Registration ) <br> Systems (MERS) Litigation ) <br> ———————————————— ) <br> ) <br> This Order Applies to: ) <br> ) <br> CV 10-630-PHX-JAT ) <br> ———————————————— ) | MDL DOCKET NO. 09-2119-JAT <br><br> **ORDER** |

9
10
11
12
13
14

      Pending before the Court is Plaintiff Rosa Sivas' ("Plaintiff") Motion for Preliminary Injunction (Doc. #649). The matter is fully briefed (Doc. ##650, 666) and the Court has heard argument and received evidence. For the reasons that follow, the Court denies the motion.

**I.     Background**

      In March 2006, Plaintiff refinanced real property in Nogales, Arizona by obtaining a loan in the amount of $357,300 from America's Wholesale Lender, a division of Countrywide Home Loans, Inc. ("Countrywide"). To secure the loan, Plaintiff entered into a deed of trust, which named Countrywide as the lender, Fidelity National Title Insurance Co. as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. Plaintiff eventually defaulted on the note. On July 21, 2008, Recontrust Company ("Recontrust") was designated successor trustee to the deed of trust and initiated foreclosure by issuing a Notice of Trustee's Sale. This initial trustee's sale was subsequently cancelled.

1    On April 21, 2009, this putative class action was filed by two plaintiffs, asserting
2   multiple statutory and common law claims related to their mortgage loan.  An amended
3   complaint was filed on June 19, 2009, adding Silvas and another plaintiff.

4    On December 7, 2009, the Judicial Panel on Multidistrict Litigation transferred the
5   claims in this putative class action which relate to the formation and operation of MERS to
6   this MDL, and simultaneously remanded all other claims to the original court.  On March 23,
7   2010, this Court entered a Remand Order identifying which claims had been transferred to
8   the MDL and which had been remanded.  (Doc. #211.)

9    On December 18, 2009, Recontrust issued a second Notice of Trustee's Sale,
10   scheduling the sale for March 8, 2010.  Plaintiff and Countrywide stipulated to the second
11   sale's cancellation, but Recontrust immediately re-noticed the sale, scheduling it for June 16,
12   2010.

13    Plaintiff then filed this motion[1] (Doc. # 649), Countrywide responded (Doc. #650) and
14   Plaintiff replied (Doc. #666).

15   **II.    Motion for Preliminary Injunction**

16    To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood
17   of success on the merits; (2) a likelihood of irreparable harm to the moving party in the
18   absence of preliminary relief; (3) a balance of equities tips in the favor of the moving party;
19   and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*,
20   129 S.Ct. 365, 376 (2008). Traditionally, injunctive relief was also appropriate under an
21   alternative "sliding scale" test. *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th
22   Cir.2008).  However, the Ninth Circuit overruled this standard in keeping with the Supreme
23   Court's decision in *Winter. Am. Trucking Ass'ns Inc. v. City of Los Angeles*, 559 F.3d 1046,
24   1052 (9th Cir. 2009) (holding that "[t]o the extent that our cases have suggested a lesser
25   standard, they are no longer controlling, or even viable").

26   _____

27    [1] Although the motion was originally filed before the transferor court (CV 09-227-
     TUC-JMR), Judge Roll found that it addressed issues related to the formation and operation
28   of MERS and ordered that the motion be re-filed before this Court.  (Doc. #648.)

- 2 -

A.   *Likelihood of Success on the Merits*

Plaintiff's Motion for Preliminary Injunction argues that Plaintiff is likely to succeed in proving that neither Countrywide nor Recontrust have any authority to foreclose on the property and, thus, any such foreclosure should be enjoined.[2]  Plaintiff's First Amended Complaint contains a claim for injunctive relief based on this type of MERS theory.  (CV 10-630-PHX-JAT, Doc. #3 at 62-64.)

Plaintiff asserts that Defendants Countrywide and Recontrust are precluded from ordering a trustee's sale of the property because the alleged transfer of ownership of the note through MERS somehow extinguished the deed of trust.  Plaintiff argues that the deed of trust "may no longer be enforced" because it was severed from the promissory note.  (Doc. #649 at 9.)  Hence, "Defendants are complete strangers to any obligation owed by Plaintiff." (*Id.*)  This precise argument has been addressed multiple times in this district.  The Court finds the reasoning in *Diessner v. Mortgage Electric Registration Services* particularly persuasive:

> Diessner specifically requests the court to declare that MERS and Aurora "are not entitled to enforce the underlying promissory Note described in the security instrument" and "have no legal claim to title on the subject property." Count one is based on Diessner's argument that "[u]nder the law of negotiable instruments as codified in the Uniform Commercial Code (codified in Arizona at A.R.S. § 47-3101, *et al.*), a purported Note holder who is not in possession of the original negotiable instrument is not entitled to enforce it."
>
> Diessner does not cite, nor is the court aware of, any controlling authority providing that the cited UCC section applies in non-judicial foreclosure proceedings in Arizona.  To the contrary, district courts "have routinely held that Plaintiff's 'show me the note' argument lacks merit."  Furthermore, Arizona's non-judicial foreclosure statute does not require presentation of the original note before commencing foreclosure proceedings.  Because this action involves the non-judicial foreclosure of a real estate mortgage under an Arizona statute which does not require presentation of the original note before

---

[2]  Plaintiff's reply memorandum (Doc. #666) also argued that the Preliminary Injunction should be granted based on the likelihood of success of two other claims in the First Amended Complaint.  However, as these arguments were raised for the first time in the reply memorandum and the claims to which the refer have been remanded to Judge Roll, the Court will not consider them in this Order.  This lack of consideration does not preclude Plaintiff from filing a new motion for preliminary injunction based on these arguments before Judge Roll.

1    commencing foreclosure proceedings, count one of plaintiff's complaint fails
     to state a claim upon which relief may be granted.
2

3    618 F.Supp.2d 1184, 1187 (D. Ariz. 2009) (footnotes omitted).  *See also Mansour v. Cal-*

4    *Western Reconveyance Corp.*, 618 F.Supp.2d 1178, 1181 (D. Ariz. 2009) (rejecting similar

5    "show me the note" argument and collecting cases with similar holdings); *Ciardi v The*

6    *Lending Co.*, CV 10-275-PHX-JAT (D. Ariz. May 24, 2010) (same).   To the extent

7    Plaintiff's motion relies upon a "show me the note" theory, Plaintiff cannot show a likelihood

8    of success on the merits.

9          Plaintiff also offers a slightly new version of the MERS-related allegation by claiming

10   that "an entity *designated* by MERS to foreclose" is not authorized to name a substitute

11   trustee after "the note was... transferred to a non-MERS member." (*Id.* at 13 (emphasis in

12   original).)  For this proposition, Plaintiff cites *Weingartner v. Chase Home Finance*, No.

13   2:09-cv-02255-RCJ-RJJ, 2010 WL 1006708 (D. Nev. Mar. 15, 2010), but that case is  not

14   on point. There, MERS "purported to transfer the beneficial interest in the loan" to "the new

15   trustee itself." Id. at *3.  There is no analogous transfer of the beneficial interest to the new

16   trustee in this case.  Under the language of the deed of trust, MERS is to serve as a "nominee

17   for Lender and Lender's successors and assigns." (Ex. 1 at 2.)  Thus, from the very language

18   of the deed of trust, to which Plaintiff agreed to in entering into the home loan transaction,

19   MERS is still acting as the nominee for the current holder of the promissory note.  Plaintiff

20   has failed to allege any facts suggesting that MERS is not the nominee of the current owner

21   of the promissory note; nor does Plaintiff allege any facts supporting her assertion that the

22   promissory note and the deed of trust have been bifurcated.  For these reasons, Plaintiff's

23   argument that Defendants should be enjoined from initiating foreclosure is not likely to

24   succeed on the merits.

25         The Court has considered Plaintiff's Motion for Preliminary Injunctive Relief, her

26   memorandum and other arguments made in support, including her reply, and Plaintiff's

27   submitted evidence in support.  For the reasons detailed above, the Court finds that Plaintiff

28   has failed to demonstrate a likelihood of success on the merits. Thus, Plaintiff cannot satisfy

- 4 -

the *Winter* standard and the Court finds no need to proceed to analyze the other prongs—likelihood of irreparable harm, balance of the equities, and public interest—of *Winter*.

### B.   *Inequitable Conduct*

When a party requests equitable relief—like the preliminary injunction sought here—they must not have unclean hands.  In the words of the old axiom: "he who seeks equity must do equity."  *See also Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*, 324 U.S. 806, 815 (1945) ("Any willful act [which] transgress[es] equitable standards of conduct is sufficient cause" to deny and injunction).  Here, Plaintiff does not deny that she defaulted on her loan, missed thousands of dollars of loan payments, and yet continues to live in the property.

The Court finds that Plaintiff seeks relief in an inequitable manner.  Plaintiff executed a note agreeing to repay substantial sums that aided her financially, yet has now ceased making payments.  Thus, Plaintiff asks the Court to preserve a status quo in which she receives all of the benefits of the loan agreement but is excused from performing the duties attendant to the note.[3]  This would be a fundamentally unfair outcome.  Thus, for this independent reason of lack of equitable conduct, the Court will deny the motion for preliminary injunction.

Accordingly, because Plaintiff has failed to demonstrate a likelihood of success on the merits and failed to act in an equitable manner,

---

[3] Even now, if Plaintiff were to bring the payments current, the trustee's sale would be averted.  Thus, Plaintiff has the theoretical ability to maintain the status quo under the not and the deed of trust.  In making such payments, Plaintiff would be paying funds that she maintains are not owed to Defendants, but this injury would be a purely economic loss that could be remedied by money damages.

Only the unrelated fact that Plaintiff lacks the ability to make payments on the loan transforms an a monetary injury into one involving the ownership of real property.  While the Court does not make a holding regarding the presence of irreparable harm in this case, this analysis would inform the Court's consideration of that question.

1       **IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. #649) is

2  **DENIED**.

3       DATED this 11th day of June, 2010.

 

                                       James A. Teilborg
                               United States District Judge

- 6 -

EXHIBIT "R"

# EXHIBIT "R"

1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                             **DISTRICT OF NEVADA**

9                                      \* \* \*

10   CONNIE KWOK,                          )        Case No.: 2:09-cv-2298-RLH-LRL

11                  Plaintiff,             )               **O R D E R**
                                           )
12          vs.                            )
                                           )
13   RECONTRUST COMPANY, N.A.; BANK OF     )
     AMERICA; BAC HOME LOANS               )
14   SERVICING, LP; MORTGAGE               )
     ELECTRONIC REGISTRATION SYSTEMS,      )
15   INC.,                                 )
                                           )
16                  Defendants.            )
                                           )
17   _____)

18

19          JEFFREY D. CONWAY, having failed to appear or otherwise respond in writing

20   by October 14, 2010, or in person on November 16, 2010, at 10:00 AM as ORDERED to SHOW

21   CAUSE why this Court should not impose sanctions, is hereby SANCTIONED as follows:

22                                  **BACKGROUND**

23          This dispute arises from Kwok's allegations that her mortgage lenders committed

24   illegal acts and were attempting to wrongfully foreclose upon her property located at 8466 Willow

25   Mist Drive in Las Vegas, Nevada.  (Dkt. #1, Pet. for Removal Ex. A., Compl.)  Kwok originally

26   purchased the property in 1997.  Sometime thereafter, Kwok refinanced her mortgage loan with

AO 72
(Rev. 8/82)                                    1

1  Countrywide Home Loans, which is now Bank of America.  After Kwok defaulted on her

2  mortgage loan in February 2009, Defendants instituted foreclosure proceedings on the property.

3  Recontrust filed a Notice of Default in June 2009 and a Notice of Trustee Sale in Oct. 2009.

4  Recontrust filed a second Notice of Trustee Sale several months later, however, Defendants did

5  not immediately conduct a sale of Kwok's property.

6         On October 21, 2009, Kwok filed suit in the Eighth Judicial District Court of the

7  State of Nevada alleging eleven causes of action.  In December 2009, Defendants removed the

8  lawsuit to this Court and filed a Motion to Dismiss (#7).  However, the United States Judicial

9  Panel on Multi-District Litigation consolidated this and numerous other cases wherein the

10  plaintiffs allege that Defendant Mortgage Electronic Registration Systems ("MERS") engaged in

11  improper business practices when processing home loans.  *In re: MERS Litigation*, MDL No. 09-

12  2119-JAT ("MERS MDL").  The Panel further indicated that the MERS MDL would separate and

13  remand any unrelated claims back to the original district court.  (Dkt. #24, Conditional Transfer

14  Order, Feb. 16, 2010.)  In the interim, this Court stayed all proceedings.  (Dkt. #26, Order, Mar. 1,

15  2010.)

16         In June 2010, the MERS MDL expressly remanded Kwok's claim for tortious

17  breach of the implied duty of good faith and fair dealing ("claim 4").  (Dkt. #30, MDL Order

18  (stating that claims 1–3 and 5–9 remain in the MERS MDL while remanding claim 4 and claims

19  10–11 for declaratory relief and injunctive relief to the extent they applied to claim 4.)  The Court

20  then evaluated Defendants' motion to dismiss with regard to the remanded claim four and granted

21  the motion.  (Dkt. #33, Order, June 23, 2010.)  At this point in the litigation, Kwok's only

22  operative claims remain in the MERS MDL.

23         On September 28, 2010, Kwok's counsel, Jeffrey D. Conway, filed an emergency

24  *ex parte* Motion for Temporary Restraining Order ("TRO Motion") (#37) in an attempt to prevent

25  a trustee sale scheduled for that same day.  Conway's TRO Motion did not meet the standards set

26  forth in Rule 7-5 of the Local Rules of Practice or Rule 65 of the Federal Rules of Civil Procedure

AO 72
(Rev. 8/82)

1   for *ex parte* relief, much less the Ninth Circuit's four-part test for injunctive relief.  *See Stormans,*

2   *Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council,*

3   *Inc.*, 129 S. Ct. 365, 374 (2008)).  Furthermore, Conway relied on a baseless argument to support

4   the TRO Motion—an argument which the Court previously informed Conway was contrary to

5   Nevada law.  *Ritter v. Countrywide Home Loans, Inc.*, No. 2:10-cv-00634-RLH-RJJ (Dkt. #20,

6   Order, Sept. 24, 2010).

7          The Court denied Conway's TRO Motion, directed the Clerk of the Court to unseal

8   the improper *ex parte* filing, and ordered Conway to show cause as to why the Court should not

9   impose sanctions.  (Dkt. #38, "Order to Show Cause", Sept. 30, 2010.)  The Order to Show Cause

10   gave Conway until 4:00 PM on October 14, 2010, to show cause in writing as to why sanctions

11   should not be imposed for the conduct described within the Court's Order, but he failed to do so.

12   The Court then gave Conway notice to appear in person on November 16, 2010 at 10:00 AM to

13   show cause.  (Dkt. #39, Notice of Hr'g, Nov. 5, 2010.)  However, Conway failed to appear in

14   person for the hearing.  (Dkt. #40, Hr'g Mins., Nov. 16, 2010.)  For the reasons discussed below

15   and in the Order to Show Cause, the Court imposes sanctions upon Conway.

16                                           **DISCUSSION**

17   **I.      Sanctions**

18          The Court draws its authority to impose sanctions from several sources.  Even if no

19   motion for sanctions is made, Rule 11(c)(3) of the Federal Rules of Civil Procedure empowers the

20   court to impose sanctions *sua sponte*.  However, the court may only do so after: (1) entering an

21   order describing the specific conduct that allegedly violates Rule 11; and (2) directing the

22   offending party to show cause why it has not violated the rule.  Fed. R. Civ. P. 11(c).  Under Rule

23   IA 4-1 of the Local Rules of Practice, the court may, after notice and opportunity to be heard,

24   "impose any and all appropriate sanctions on an attorney" who fails to comply with these rules or

25   fails to comply with any order of the court without just cause.  In addition, the Court has inherent

26   power apart from any rule or statute to impose certain sanctions for "bad faith conduct" in

AO 72
(Rev. 8/82)

1   litigation or "wilful disobedience" of a court order.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752,

2   764–66 (1980); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) (finding that district

3   courts have power to discipline members of the bar who willfully disobey a court order).

4          Failure to comply with the Local Rules of Practice, Federal Rules of Civil

5   Procedure, or a court order may result in sanctions, up to and including case-dispositive sanctions.

6   *See* Fed. R. Civ. P. 41(b).  District judges have an arsenal of sanctions they can impose, including

7   both monetary and nonmonetary sanctions such as: striking the offending paper; issuing an

8   admonition, reprimand, or censure to counsel; requiring participation in CLE courses, seminars, or

9   other educational programs; referring the matter to disciplinary authorities, and disqualifying

10  counsel.  *See Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).  A district court's

11  choice of deterrent is appropriate when it is "the *minimum* that will serve to *adequately* deter the

12  undesirable behavior."  *Doering v. Union Cnty. Bd. of Close Freeholders*, 857 F.2d 191, 194 (3rd

13  Cir. 1988) (emphasis in original); *see also Molski v. Evergreen Dynasty Corp*, 500 F.3d 1047,

14  1063 (9th Cir. 2007).  Where the attorney's personal responsibility is apparent to the court, it may

15  specifically order the attorney to pay the sanction personally and *not* seek reimbursement from the

16  client.  *Derechin v. State Univ. of New York*, 963 F.2d 513, 518 (2nd Cir. 1992).

17      **A.    Conway's Failure to Comply with Requirements for *Ex Parte* Motions**

18          The Order to Show Cause informed Conway that his TRO Motion did not meet

19  Local Rule 7-5's and Rule 65's requirements for *ex parte* injunctive relief.  The TRO Motion

20  stated, "Plaintiff has given notice of this Motion to Recontrust Company N.A., purported trustee,

21  and acted diligently in this matter."  (Dkt. #37, Mot. ¶ 17.)  The Court found that this conclusory

22  statement did not satisfy Local Rule 7-5(a)'s requirement for a statement "*showing good cause*

23  *why* the matter was submitted to the court without notice to *all parties*" because it fails to state the

24  reason for the *ex parte* filing or list each Defendant.  (emphasis added.)  The Court could not infer

25  good cause or notice to all parties from this statement.  Conway also failed to show any efforts to

26  obtain a stipulation pursuant to Local Rule 7-5(b) by stating Plaintiff had acted diligently.  The

AO 72
(Rev. 8/82)

1    TRO Motion did not meet the rules' requirements in order for Kwok to receive *ex parte* injunctive

2    relief or submit the motion under seal.

3              Furthermore, the Order to Show cause stated that Conway filed spurious and

4    unfounded motions in several other cases before this Court.  Each case is a mortgage foreclosure

5    case where Conway has filed nearly identical *ex parte* TRO motions.  (Dkt. #38, Order to Show

6    Cause 6 n.2 (collecting cases).)  Not one of these motions complied with Rule 65(b) or Local Rule

7    7-5 for *ex parte* filings.  Furthermore, in three of these cases, Conway filed a second motion with

8    the same defects.  *Elgrichi*, 2:10-cv-00673-LDG-PAL (Dkt. #5, June 8, 2010; Dkt. #7, Aug. 31,

9    2010); *Ritter*, 2:10-cv-00634-RLH-RJJ (Dkt. #5, June 3, 2010; Dkt. #19, Sept. 21, 2010); *Shelly*,

10   2:10-cv-00518-RLH-PAL (Dkt. #6, July 27, 2010; Dkt. #14, Aug. 25, 2010).  In fact, the Court

11   doubts that Conway ever read its order denying his second TRO motion in *Ritter* (2:10-cv-00634-

12   RLH-RJJ, Dkt. #20, Sept. 24, 2010) because the TRO Motion repeated the same erroneous

13   arguments verbatim.

14

        **B.     Conway's Repeated Use of Unfounded Arguments and Failure to
15             Acknowledge Prior Adverse Rulings**

16             The constant repetition of rejected arguments hinders a court's management of

17   pending cases because it keeps the case in a stagnant posture and prevents the case from

18   progressing in a logical fashion.  *U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset*

19   *Mgmt. Ltd*., 540 F.Supp.2d 994, 1015 (N.D. Ill. 2008) (citing *In re Mann*, 311 F.3d 788, 789 (7th

20   Cir. 2002) ("Half of all litigants (the losing half) may believe that the decision is incorrect, but it is

21   essential to the operation of any legal system that unsuccessful litigants abide by the judgment

22   unless they can persuade a higher court to set it aside.")).  An attorney displays sanctionable bad

23   faith when he knowingly or recklessly raises a frivolous argument.  *Mendez v. County of San*

24   *Bernardino*, 540 F.3d 1109, 1131–32 (9th Cir. 2008).  Thus, attorneys who intentionally or

25   /

26

AO 72
(Rev. 8/82)

1   recklessly disregard basic procedural rules—such as repeating rejected arguments and failing to

2   acknowledge prior adverse rulings—do so at their own peril.  *See Id.*

3            In the Order to Show Cause, the Court informed Conway that his TRO Motion

4   repeated an argument which the Court had previously deemed unfounded and contrary to Nevada

5   case law.  Conway has argued in several cases before this Court that, in cases where a plaintiff

6   challenges a non-judicial foreclosure action or mortgage obligation, Nevada law requires a

7   defendant to show that it is "the current holder of the note or the nominee of the current holder of

8   the note."  (*See, e.g.*, Dkt. #37, TRO Mot. ¶ 8.)  He bases this erroneous argument on an invalid

9   interpretation of the holding in *Mortgage Electronic Registration Systems, Inc. v. Chong*, No.

10  2:09-cv-00661-KJD-LRL, 2009 WL 6524286 (D. Nev. Dec. 4, 2009), wherein the court

11  distinguished between standing to lift an automatic stay in a bankruptcy proceeding and statutory

12  authority to commence nonjudicial foreclosure proceedings.  The Court explained to Conway in

13  the Order to Show Cause that his reading of *Chong* was incorrect.  To the contrary, the case law

14  within this district holds that the Nevada law governing nonjudicial foreclosure, NRS § 107.080,

15  does not require a lender to produce the original note or prove its status as a real party in interest,

16  holder in due course, current holder of the note, nominee of the current holder of the note, or any

17  other synonymous status as a prerequisite to nonjudicial foreclosure proceedings.  *See, e.g.*,

18  *Weingartner v. Chase Home Finance, LLC*, 702 F.Supp.2d 1276, 1280 (D. Nev. 2010).

19           The Court ordered Conway to show cause as to why he should not be sanctioned for

20  his repeated use of this unfounded argument and failure to acknowledge prior adverse rulings,

21  however, Conway chose not to do so.  In fact, Conway chose to employ this argument *again* after

22  the Court issued the Order to Show Cause in this case and an order denying his second TRO

23  motion in *Ritter*, No. 2:10-cv-00634-RLH-RJJ (Dkt. #20, Order denying TRO Mot. (#19), Sept.

24  24, 2010; Dkt. #22, Mot. Prelim. Inj., Oct. 21, 2010).  Both orders were sufficient to place Conway

25  on notice that he had misinterpreted *Chong* and could no longer proffer the incorrect argument in

26  good faith.  Even if Conway repeated the previously rejected arguments to preserve the record for

AO 72
(Rev. 8/82)

1   appeal, he has not come forth to explain his pattern of behavior or clarify his intent.  The Court is

2   not a mind-reader and must therefore conclude that counsel intends to be disrespectful and defiant.

3       **D.**    **Failure to Show Cause in Writing and in Person**

4           A party willfully disobeys a court order if it fails to take all reasonable steps within

5   its power to insure compliance with the order.  *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146–47

6   (9th Cir. 1983).  If a party disobeys a specific and definite court order, a court may adjudge the

7   party in contempt regardless of the party's intent in disobeying the order.  *In re Crystal Palace*

8   *Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987).

9           To date, Mr. Conway has failed to respond in any fashion to the Court's Order to

10   Show Cause.  However, he did respond to Magistrate Judge Leen's order to show cause in another

11   action wherein he failed to submit a certificate of interested parties in a timely fashion.  *Saniel v.*

12   *MERS, Inc.*, No. 2:10-cv-01497-RHL-PAL (Dkt. #9, Response, Oct. 20, 2010.)  His failure to take

13   any steps to insure compliance—either in person or in writing—show a complete disregard for the

14   Court's specific and definite orders.  The Court therefore finds that Mr. Conway has wilfully

15   disobeyed its Order to Show Cause.

16           Conway's willful submission of spurious motions and failure to comply with the

17   Federal Rules of Civil Procedure, Local Rules, and the Court's orders constitute abusive litigation

18   practices that have interfered with the Court's ability to hear this case, disrupted the Court's timely

19   management of its docket, delayed litigation, wasted judicial resources, and threatened the

20   integrity of the Court's orders and the orderly administration of justice.  The Court therefore finds

21   that Conway has taken actions in bad faith and with willful disobedience of the Court's order and

22   sanctions are warranted.

23   /

24   /

25   /

26   /

AO 72
(Rev. 8/82)

7

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Mr. Conway shall:

•     Remit a monetary sanction in the amount of $3,000.00 to the Clerk of the Court no later than December 15, 2010;

•     Refrain from seeking reimbursement or any other type of compensation from his client, Plaintiff Connie Kwok, with regard to these sanctions or the Order to Show Cause (#38);

•     Refrain from filing any pleading or motion to the Court wherein he argues that Nevada law requires a defendant to produce the original note or prove its status as a real party in interest, holder in due course, current holder of the note, nominee of the current holder of the note, or any other synonymous status as a prerequisite to nonjudicial foreclosure proceedings;

•     Comply with Rule 7-5 of the Local Rules of Practice and Rule 65 the Federal Rules of Civil Procedure for *ex parte* TRO motions;

•     Submit a copy of this Court's Order imposing sanctions to all his clients who have or will challenge foreclosures, no later than December 15, 2010, and then certify to the Court that he has complied no later than December 20, 2010.

Failure to comply with this Order may prompt the Court to impose additional sanctions—including referral to the State Bar of Nevada for disciplinary proceedings. Furthermore, because all remaining claims are now pending adjudication by the MERS MDL, the Clerk of the Court is directed to close this case.

Dated: November 19, 2010.

ROGER L. HUNT
Chief United States District Judge

8