EXHIBIT "S"

# EXHIBIT "S"

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RENATO  R. RITTER; PATRICIA M. RITTER, | Case No.: 2:10-cv-00634-RLH-RJJ |
| Plaintiffs, | **O R D E R** |
| vs. | (Second Motion for Temporary Restraining Order–#19) |
| COUNTRYWIDE HOME LOANS, INC.; RECONTRUST COMPANY, N.A.; NATIONAL DEFAULT SERVICING CORPORATION; LITTON LOAN SERVICING; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK; DOES I-X; ROES I-X; Inclusive, | |
| Defendants. | |

Before the Court is Plaintiffs Renato and Patricia Ritter's *ex parte* **Second Motion**

**for Temporary Restraining Order** ("TRO") (#19), filed September 21, 2010.

## BACKGROUND

This dispute arises from Plaintiffs' allegations that their mortgage lenders

committed illegal acts and are now attempting to wrongfully foreclose upon their property located

at 8190 Cassian Court, Las Vegas, Nevada.  Plaintiffs admit they are parties to a mortgage

1    obligation and have lived in the house for a number of years, but now allege, "upon information

2    and belief, the true lender was the New York (or other location) investor, and investors, who

3    purchased the securitized instruments promoted by Wall Street investment bankers." (Dkt. #1,

4    Compl. ¶¶ D, 1, 16.)  Plaintiffs claim they "have no idea whom, [*sic*] if anyone, is the true holder

5    in due course (if there is one) of the note related to the property[;]" and that none of the

6    Defendants have standing in connection with the loan transaction because they cannot "show the

7    entire chain of title of the notes and the entire chain of title of the deeds of trust." (*Id.* ¶¶ 23, 25.)

8           On May 3, 2010, Plaintiffs commenced this action.  On June 3, one day before a

9    scheduled foreclosure sale, Plaintiffs filed their first *ex parte* TRO motion requesting an order

10    staying any foreclosure actions, unlawful detainer, or eviction actions.  The Court denied the

11    motion because Plaintiffs' factual allegations failed to demonstrate a likelihood of success.  (Dkt.

12    #6, Order, June 4, 2010.)  Since then, Plaintiffs have yet to file proof of service of Defendants,

13    despite having received additional time to do so until September 10.  (Dkt. #18, Order granting

14    Dkt. #17, Pl.'s 2nd Emerg. Mot. to Extend Time.)

15           Plaintiffs' counsel, Jeffrey D. Conway, has now filed a second *ex parte* TRO

16    motion in an attempt to prevent the sale of their house in a non-judicial foreclosure sale scheduled

17    for "May 3, 2010." (Dkt. 19, Pl.'s Mot. ¶ 2.)  Mr. Conway claims this second motion is based

18    upon new case law in Plaintiffs' favor and additional facts.  For the reasons stated in the June 4

19    Order and the additional reasons given below, the Court denies Plaintiffs' second TRO motion.

20                    **DISCUSSION**

21           As a preliminary matter, the Court notes that Mr. Conway requests injunctive relief

22    on a foreclosure sale that would have occurred over four months ago on May 3, 2010.  The Court

23    could therefore deny the motion as moot.  Nevertheless, the Court will address the merits of the

24    motion as if the foreclosure sale is scheduled to occur on a future date rather than delaying the

25    discussion until Mr. Conway files an inevitable third emergency TRO motion.

26    /

I.       **TRO Motion**

Under Rule 65(b) of the Federal Rules of Civil Procedure, plaintiffs seeking a temporary restraining order must establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008).  Applying *Winter*, the Ninth Circuit has since held that, to the extent previous cases suggested a lesser standard, "they are no longer controlling, or even viable." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).  Thus, a party must satisfy each of these four requirements.

A.       **Ex Parte Relief**

Local Rule 7-5 states, "[a]ll *ex parte* motions applications or requests shall contain a statement showing good cause why the matter was submitted to the court without notice to all parties, [and] [a]ll *ex parte* matters shall state the efforts made to obtain a stipulation and why a stipulation was not obtained."  Furthermore, the standard for obtaining *ex parte* relief under Rule 65 is very stringent.  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006).  The Court will only issue an *ex parte* TRO where it appears there would be an irreparable injury before the responding party can be heard. Fed. R. Civ. P. 65(b)(1)(A).  In reality, a TRO is a temporary preliminary injunction issued for a limited period of time until the time when the opposing party has an opportunity to be heard.  Rule 65's stringent restrictions on *ex parte* relief "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438–39 (1974).

In this case, Plaintiffs have had ample time—over four months—to notify Defendants of their claims and give them an opportunity to be heard before the Court.  Mr. Conway states, "Plaintiffs have given notice of this Motion to Defendant National Default Servicing Corporation, purported trustee, and acted diligently in this matter." (Dkt. #19, Mot. ¶

3

17.)  This conclusory statement does not satisfy Local Rule 7-5(a)'s requirement for a statement "*showing good cause why* the matter was submitted to the court without notice to *all parties*" (emphasis added) because it fails to state the reason for the *ex parte* filing or list each Defendant. The Court cannot infer good cause or notice to all parties from this statement.  In addition, Mr. Conway fails to show any efforts to obtain a stipulation pursuant to Local Rule 7-5(b) by stating Plaintiffs have "acted diligently."  The Court notes that diligent litigants and their counsel do not fail to comply with court orders, the Federal Rules of Civil Procedure, or the Local Rules. Accordingly, the Court finds that Plaintiff has not met his burden in submitting the filing under *ex parte* seal.  The Court therefore orders the Clerk of the Court to unseal the documents.

**B.    New Case Law**

Mr. Conway argues that "an ever-expanding body of case law establish[es] that a party cannot foreclose without being able to establish, by copies of note transfers, that it is in fact the holder in due course of the underlying note." (Dkt. #19, Mot. ¶ 3.)  Specifically, Mr. Conway states that cases from California, Maine, and Arkansas (among others) support his position that Defendants must show Plaintiffs they are the current holders of Plaintiffs' note as a prerequisite to foreclosure.  (*Id.* ¶ 8.)  This argument presents two serious problems.  First, as all capable attorneys know, the Court is not bound by state court or bankruptcy cases from California, Maine, Arkansas, or any other state.  Perhaps if these cases interpreted Nevada foreclosure law, which governs Plaintiffs' property, the Court could assess their persuasive value.  However, the cases Mr. Conway cites do not interpret Nevada law.  Second, and more importantly, the ever-expanding body of case law within this district holds that the Nevada law governing nonjudicial foreclosure, NRS § 107.080, does not require a lender to produce the original note as a prerequisite to

/

/

/

/

1  nonjudicial foreclosure proceedings.  *See Weingartner v. Chase Home Finance, LLC*, 702

2  F.Supp.2d 1276, 1280 (D. Nev. 2010).[1]

3          Mr. Conway incorrectly argues that *Mortgage Electronic Registration Systems, Inc.*

4  *v. Chong* supports his argument that "'MERS' had no standing as a creditor to pursue its claim

5  against the property, due to inability to show a valid chain of title on transfers of the Note" (Dkt.

6  #19, Mot. ¶ 8).  *Chong*, No. 2:09-cv-00661-KJD-LRL, 2009 WL 6524286 (D. Nev. Dec. 4, 2009).

7  Mr. Conway misinterprets the court's distinction between standing to lift an automatic stay in a

8  bankruptcy proceeding and statutory authority to commence nonjudicial foreclosure proceedings.

9  In *Chong*, the court noted that under the Federal Rules of Bankruptcy Procedure and Local Rules,

10  "MERS must at least provide evidence of its alleged agency relationship with the real party in

11  interest in order to have standing to seek relief from stay." *Id.* (quoting *In re Jacobson*, 402 B.R.

12  359, 366 n.7 (Bankr. W.D. Wash. 2009) (internal quote omitted)); *see also, In re Mitchell*, 423

13  B.R. 914, 916 (D. Nev. 2009).  On the other hand, in cases such as *Weingartner* where

14  homeowners bring suit against their lenders and related entities, the court has consistently held that

15  NRS § 107.080 does not require MERS or any other similar entity to show it is the real party in

16  interest to pursue nonjudicial foreclosure actions.  *See,* cases cited *supra* n.1.  The weight of

17  authority in this district clearly debunks this oftrepeated claim.  Plaintiffs have therefore failed to

18  carry their burden of showing they are likely to succeed in this action.  Accordingly, the Court

19  denies Plaintiffs' TRO Motion.

20  /

21  /

22  /

23

24          [1] *See also, Birkland v. Silver State Fin. Services, Inc.*, No. 2:10-cv-00035-KJD-LRL, 2010 WL 3419372 (D. Nev. Aug. 25, 2010); *Moon v. Countrywide Home Loans, Inc.*, No. 3:09-cv-00298-ECR-VPC, 2010 WL

25  522753 (D. Nev. Feb. 9, 2010); *Gomez v. Countrywide Bank, FSB.*, No. 2:09-cv-01489-RCJ-LRL, 2009 WL 3617650 (D. Nev. Oct.26, 2009); *Ernestberg v. Mortgage Investors Group*, No. 2:08-cv-01304-RCJ-RJJ, 2009

26  WL 160241 (D. Nev. Jan. 22, 2009); *Wayne v. HomEq Servicing, Inc.*, No. 2:08-cv-00781 RCJ-LRL, 2008 WL 4642595 (D. Nev. Oct. 16, 2008).

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiffs' Emergency Motion for Temporary Restraining Order (#19) is DENIED.

IT IS FURTHER ORDERED that the Clerk of the Court shall unseal this motion as Plaintiffs have failed to comply with the *ex parte* requirements of Local Rule 7-5.

IT IS FURTHER ORDERED that the Clerk of the Court shall issue a Notice Regarding Intention to Dismiss Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

Dated: September 23, 2010.

**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)

6

EXHIBIT "T"

# EXHIBIT "T"

1

2

3

4                        **UNITED STATES DISTRICT COURT**

5                              **DISTRICT OF NEVADA**

6   GOMER GOMEZ,                              )
                                             )
7              Plaintiff,                     )
                                             )
8       vs.                                   )
                                             )        2:09-cv-01489-RCJ-LRL
9   COUNTRYWIDE BANK, FSB.;                   )
    COUNTRYWIDE HOME LOANS;                   )
10  RECONTRUST COMPANY, et al.,               )        **ORDER**
                                             )
11                                            )
               Defendants.                    )
12  _____)

13        Plaintiff Gomer Gomez has sued Defendants Countrywide Bank, FSB ("Countrywide

14  Bank"), Countrywide Home Loans ("Countrywide"), Mortgage Electronic Registration Systems

15  ("MERS"), Recontrust Co. ("Recontrust") (collectively, "Defendants"), Doe Individuals I–X, and

16  Roe Corporations I–X on multiple causes of action related to the foreclosure of his mortgage.

17  Pending before the Court is Defendants' Motion to Dismiss (#9).  Plaintiff has filed a Response

18  (#10), and Defendants have filed a Reply (#14).  For the reasons given herein, the Court grants the

19  Motion to Dismiss (#9) without leave to amend.

20  **I.    FACTS AND PROCEDURAL HISTORY**

21        On or about August 28, 2007, Plaintiff Gomer Gomez purchased a property located at 4428

22  Cormorant Ave., Las Vegas, NV 89115 ("the Property").  Gomez executed a promissory note and

23  deed of trust with lender Countrywide Bank. (#1 at ¶ 8).[1]  Plaintiff claims the note and deed of trust

24  _____

25        [1]The Court takes judicial notice of the public records adduced by Defendants (#8). *See*
    *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

1   were sold. (*Id.* at ¶ 11).  Sometime thereafter, MERS allegedly substituted Recontrust as trustee on

2   the deed of trust, and Recontrust subsequently recorded a notice of default and election to sell. (*Id.*).

3   Plaintiff claims this was wrongful because "MERS was not and is not an Agent and has NO right

4   to act for or on behalf of or as a beneficiary, but is merely a nominee who holds title in his name for

5   another . . . ." (*Id.* at ¶ 10).

6          Further examination of the role of a nominee is in order, as the present glut of mortgage-

7   related lawsuits has brought into controversy the scope of the powers of varies kinds of parties listed

8   on deeds of trust.  Black's Law Dictionary lists three definitions for "nominee." Black's Law

9   Dictionary 1076 (8th ed. 2004). The first definition has to do with political candidates. The second

10  definition is relevant in the present context.  "2. A person designated to act in place of another,

11  [usually] in a very limited way." *Id.*  In short, a nominee is an agent with limited powers, akin to a

12  special power of attorney.  This applies to cases such as the present one, where an entity (often

13  MERS) is nominated on a deed of trust by the holder of a promissory note, with the limited role of

14  administering the deed of trust on the holder's behalf.  Part of the confusion seems to result from the

15  fact that the scope of this role is not often stated clearly on the deed of trust, but is simply taken for

16  granted by those in the industry.  Plaintiffs also sometimes allude, as in the present action, to the

17  third and last definition of "nominee," pointing out that the nominee only has legal title:  "A party

18  who holds bare legal title for the benefit of others or who receives and distributes funds for the

19  benefit of others." *Id.*  Plaintiffs then claim that this does not entitle such a nominee to substitute a

20  trustee on behalf of the holder.  This argument, however, conflates the concept of a "nominee" with

21  its definition. A concept is not the same as its definition. A definition attempts to *describe* a concept

22  according to the concept's essential attributes.  Concepts listed in dictionaries often have several

23  definitions, as in this case, which amount to different ways of describing the concept.  Here, the

24  second definition of nominee indicates that a nominee is a limited agent.  In the context of a nominee

25  on a deed of trust, this clearly implies that the nominee is granted authority as an agent to act on

1   behalf of the nominator (holder of the promissory note) as to administration of the deed of trust,

2   which clearly would include substitution of trustees—what other duty would the administrator of a

3   deed of trust have to perform?  The third definition of "nominee" does not negate the second.  It

4   simply claims that a nominee is a party holding legal title (as opposed to equitable title) to the

5   property. This third definition is given in the context of receiving and distributing funds.  Assuming

6   it can be applied to the mortgage context, the nominee would be a person who administers the deed

7   of trust for the benefit of others.  This creates no conflict with the second definition.  It still indicates

8   that a nominee is a kind of agent working for the benefit of another.  In the present case, that other

9   person is the nominator—the holder of the promissory note.

10          The trouble typically begins when a nominee substitutes a new trustee on the deed of trust,

11   which it has the right to do as the holder's nominee.  The substituted trustee then forecloses when

12   the mortgagor/trustor defaults on the promissory note.  The mortgagor/trustor then complains that

13   the foreclosing trustee is acting wrongly because it does not itself hold the promissory note, or

14   because it was not the original trustee on the deed of trust, or because the foreclosing trustee was

15   substituted by an entity (usually MERS) that was not an agent of the original or subsequent holder

16   of the note.  Oftentimes, the argument the mortgagor/trustor makes is not clear.  But one thing is

17   clear: so long as the note is in default and the foreclosing trustee is either the original trustee or has

18   been substituted by the holder of the note or the holder's nominee, there is simply no defect in

19   foreclosure, at least in states such as Nevada where a trustee may foreclose non-judicially.

20          Another source of confusion is the fact that entities such as MERS are often not only named

21   as a nominee, but as a "beneficiary" on deeds of trust.  This unorthodox usage of the word

22   "beneficiary" causes all manner of havoc.  Oftentimes, it is clear that defendants in these actions do

23   not understand the source of the confusion themselves, as they use the word "beneficiary" without

24   attempting to untangle the confusion.  Black's gives three definitions for this word.  The first

25   definition is the most common one: "A person for whose benefit property is held in trust; esp., one

1   designated to benefit from an appointment, disposition, or assignment (as in a will, insurance policy,

2   etc.), or to receive something as a result of a legal arrangement or instrument." *Id.* at 165. From this

3   most common definition of the word, plaintiffs typically conclude that because MERS does not stand

4   to benefit directly from the foreclosure and has no right to sue on the promissory note (which is

5   almost always true), that MERS cannot possibly be a "beneficiary." It is correct that MERS is not

6   a "true beneficiary." MERS is the nominee of the true beneficiary. Often, the true beneficiary (the

7   lender/nominator) will indicate this distinction on the deed of trust by referring to MERS as the

8   "beneficiary of record." This is a fiction. MERS is not a beneficiary in any ordinary sense of the

9   word. Calling MERS a beneficiary is what causes much of the confusion. To a large extent,

10   defendants in these actions have brought this mass of litigation upon themselves by this confusing,

11   unorthodox, and unnecessary use of the word "beneficiary" to describe MERS' role. A

12   lender/nominator need only refer to MERS as a "nominee." This is sufficient to establish that MERS

13   is the agent of the lender with respect to administration of the deed of trust.

14        Calling MERS a "beneficiary" is both incorrect and unnecessary. In Nevada, the beneficiary

15   is not the only entity that can record the notice of breach and election to sell—the trustee may do this.

16   Nev. Rev. Stat. § 107.080(2)(b). So there is simply no need for a lender to call MERS a

17   "beneficiary." The trustee or "other person authorized to make the sale under the terms of the trust

18   deed" may make the sale. § 107.080(4). There is no need for any "beneficiary" to make the sale.

19   Courts often hold that MERS does not have standing as a beneficiary because it is not one, regardless

20   of what a deed of trust says, but that it does have standing as an agent of the beneficiary where it is

21   the nominee of the lender (who is the "true" beneficiary). *See* Gerald Korngold, *Legal and Policy*

22   *Choices in the Aftermath of the Subprime and Mortgage Financing Crisis*, 60 S.C. L. Rev. 727,

23   741–43 (2009); Carol Mills & Brian Langford, *Recent Bankruptcy Decisions Expose Pitfalls and*

24   *Opportunities*, Advocate, Idaho State Bar (June/July 2009). A possible defect in foreclosure remains

25   when a note has been negotiated, and there is no evidence that the foreclosing trustee is the nominee

1    of the current holder, or that the foreclosing trustee was substituted by a nominee of the current

2    holder.

3       Here, Plaintiff claims this to be the case.  But even assuming there has been negotiation, it

4    is probably the case that as a matter of law a subsequent holder ratifies a prior holder's assignment

5    of nominees and trustees on a corresponding deed of trust by silence.  This result would make sense

6    because "the mortgage goes with the note." *Rodney v. Ariz. Bank*, 836 P.2d 434, 436 (Ariz. App.

7    1992) (quoting *Hill v. Favour*, 52 Ariz. 561, 568 (1938)).  This has been the law in California since

8    before the Civil War. *Ord v. McKee*, 5 Cal. 515, 515 (1855) ("A mortgage is a mere incident to the

9    debt which it secures, and follows the transfer of the note with the full effect of a regular

10    assignment.").  There does not seem to be any principle of law requiring a subsequent holder of a

11    promissory note to re-execute an attendant security interest.  There is no claim or indication in the

12    present case that the current holder of the note, if not Countrywide Bank, challenges the foreclosure.

13    Plaintiff has not claimed that any new holder of the note has executed and recorded a deed of trust

14    with a different nominee or trustee.  The Court could take judicial notice of such evidence if Plaintiff

15    were to produce it.  The fact that there is neither evidence nor claim of such documents—documents

16    that would be simple to procure and that would powerfully bolster Plaintiff's case if extant—is a

17    strong indication that the only deed of trust in existence is that adduced by Defendants.  This deed

18    of trust follows the note, and it is still in force.

19       Distilled, Plaintiff's argument is that transfer of a promissory note causes prior security

20    instruments to auto-nullify unless re-executed. This argument is rejected. It would be a monstrously

21    unreasonable restraint on alienation to require the approval of the maker of a promissory note (via

22    re-execution of a deed of trust) as a condition of negotiation, lest the endorsee lose the endorser's

23    security interest in the note.

24

25

1    The deed of trust in this case lists MERS as lender Countrywide Bank's "nominee" and

2    "beneficiary" (again, this latter designation is incorrect[2] but unnecessary) and lists Recontrust as

3    trustee. (#8 at 6).  Contrary to Plaintiff's assertion, Recontrust has apparently been the trustee from

4    the beginning and was not substituted by MERS. (*See id.*)  Plaintiff's attorneys apparently filed the

5    present form complaint without checking the facts of this particular case very closely.   Gomez

6    defaulted on the note in November 2008, and Recontrust filed notices of default and trustee sale

7    against the Property on March 18 and June 25, 2009, respectively. (#8, Ex. D, ll. 8–9).

8    Plaintiff sued Defendants in the Clark County District Court on July 10, 2009 over the

9    foreclosure of the Property. (#1 at 8).  The Complaint lists eleven causes of action: (1) Fraud; (2)

10   Breach of Duty of Good Faith and Fair Dealing; (3) Quiet Title; (4) Breach of Fiduciary Duty; (5);

11   Injunctive Relief for Wrongful Foreclosure; (6) "Suitability"; (7) Negligence; (8) "Liability per se";

12   (9) Negligent Misrepresentation; (10) Unfair Lending Practices Under Nev. Rev. Stat. § 589D; and

13   (11) Intentional Infliction of Emotional Distress.   It is a form complaint that has been seen many

14   times in this Court.  Defendants removed the case to this Court (#1) and filed the present Motion to

15   Dismiss. (#9).

16   **II.    RULE 12(b)(6) STANDARD**

17   Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

18   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what

19   the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The

20   rule cuts both ways.  Although a short, plain statement of the case showing a right to relief is

21   _____

22    [2]It cannot be stressed enough that calling MERS a beneficiary in a deed of trust does not
     make it so. *Cf. In re Kalian*, 178 B.R. 308, 313 (Bankr. D.R.I. 1995) ("Labeling a contract term
23   an interest provision does not make it so."); *In re Gen. Assignment for Benefit of Creditors of
     Merkel, Inc.*, 259 N.Y.S.2d 514, 516 (1965) ("[C]alling an agreement a lease does not make it so
24   . . . ."); *Tate v. Claussen-lawrence Const. Co.*, 167 S.E. 826, 829 (S.C. 1933) (""[M]ere
     declaration does not make the contract something other than agency if a proper construction of its
25   terms shows that the relation is one in fact of principal and agent.").

1   sufficient, it is also necessary. Although there is some allowance for extraneous material, a long,

2   rambling, confusing, and conclusory diatribe is too much, and a court may in its discretion dismiss

3   such a complaint under Rule 8(e). *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir.

4   1981).

5        Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that

6   fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests

7   the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th

8   Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim,

9   dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally

10  cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

11  555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take

12  all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL

13  Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to

14  accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

15  inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

16       "Generally, a district court may not consider any material beyond the pleadings in ruling on

17  a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint

18  may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896

19  F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are

20  alleged in a complaint and whose authenticity no party questions, but which are not physically

21  attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

22  converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d

23  449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial

24  notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.

25  1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to

1  dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp.*

2  *Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

3        If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave

4  to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,]

5  dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . .

6  . the amendment, [or] futility of the amendment . . . ." FED. R. CIV. P. 15(a); *Foman v. Davis*, 371

7  U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies

8  of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d

9  655, 658 (9th Cir. 1992).

10  **III.    ANALYSIS**

11       **A.    Fraud**

12       The elements of common law fraud in Nevada are:

13         1. A false representation made by the defendant;
       2. Defendant's knowledge or belief that the representation is false (or insufficient

14         basis for making the representation);
       3. Defendant's intention to induce the plaintiff to act or to refrain from acting in

15         reliance upon the misrepresentation;
       4. Plaintiff's justifiable reliance upon the misrepresentation; and

16         5. Damage to the plaintiff resulting from such reliance.

17  *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).  Furthermore, under Rule 9(b),

18  circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b).

19  A Plaintiff must plead facts such as "he bought a house from defendant, that the defendant assured

20  him that it was in perfect shape, and that in fact the house turned out to be built on a landfill . . . ."

21  *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec. Litig.*,

22  42 F.3d 1541, 1548 (9th Cir. 1995) (en banc)).

23       Defendants claim that Plaintiff has not pled with the requisite particularity and that he has

24  failed to state a claim in any case, because the loan he received was exactly what he alleges he was

25  supposed to receive.  Gomez has not sufficiently pled an action for fraud.  He claims that Defendants

1   made knowingly false representations intending to induce reliance, and that he has been damaged

2   because of his reliance on the representations. (#1 at ¶¶ 18–24). The claims are entirely conclusory,

3   however. Plaintiff does not claim that Defendants made any false representations concerning the

4   terms of the deal. He claims only that they made overly-rosy estimates of his ability to afford the

5   loan over time. A cause of action for fraud does not lie for bad financial advice. Defendants cannot

6   be expected to have predicted the economic downturn, which is the real reason of Plaintiff's

7   hardships. The Motion to Dismiss (#9) is granted as to the First Cause of Action.

8   **B.      Breach of Duty of Good Faith and Fair Dealing**

9        There is an implied covenant of good faith and fair dealing inherent in every contract

10  whereby no party will do anything that will destroy or injure the right of another party to receive the

11  fruits of the contract. 17A Am. Jur. 2d *Contracts* § 370 (2009).

12       Plaintiff has not made any claim of fact that if true would indicate that Defendants did

13  anything to wrongfully injure Plaintiff's rights to receive the benefit of the bargain entered into.

14  Rather, he complains that he made a bad bargain. Although Plaintiff puts forth Defendants' superior

15  bargaining position and alleged refusal to provide him with information as a violation of the implied

16  covenant of good faith and fair dealing, because Plaintiff claims this tort occurred as part of the

17  bargaining process itself, it is essentially a claim of procedural unconscionability, not for a violation

18  of the implied covenant of good faith and fair dealing. Procedural unconscionability exists where

19  a party lacks meaningful opportunity to bargain because of unequal bargaining power. *D.R. Horton,*

20  *Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004). This is the crux of Plaintiff's claim, and there is no

21  indication that Plaintiff was unable to bargain with Defendants. Plaintiff admits he received the

22  benefit of the loan negotiated. Furthermore, Plaintiff complains that Defendants misrepresented "the

23  cost of the credit," but this again concerns negotiations, not dealing under the completed contract.

24  The Court grants the Motion to Dismiss (#9) as to the Second Cause of Action.

25

1   **C.     Quiet Title**

2          Plaintiff asks the Court to quiet title.  There is no claim in the Complaint that Plaintiff is not

3   in default.  Plaintiff makes conclusory accusations that the foreclosure action constitutes a "slander

4   of the title." (#1 at ¶ 37).  This claim is legally unmeritorious.  Plaintiff has not claimed any facts

5   indicating that his title to the property is superior to Defendants', who have provided clear evidence

6   that the foreclosure was proper.  The Court grants the Motion to Dismiss (#9) as to the Third Cause

7   of Action.

8   **D.     Breach of Fiduciary Duty**

9          A fiduciary duty exists in Nevada between doctor and patient, *Hoopes v. Hammargren*, 725

10  P.2d 238, 242 (Nev. 1986) and between attorney and client, *Stalk v. Mushkin*, 199 P.3d 838, 843

11  (Nev. 2009), but not between lender and debtor.  Indeed, such parties are adversaries, not fiduciaries.

12  *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 882 (9th Cir. 2007) (noting that the

13  district court in that case had held that the Nevada Supreme Court would not recognize a fiduciary

14  relationship as a matter of law between a lender and borrower).

15         Plaintiff claims that Defendants breached a fiduciary duty to him.  Plaintiff has not pled

16  sufficiently to survive a motion to dismiss.  As a matter of law, lenders are not agents or fiduciaries

17  of a borrower.  Plaintiff has made no claims indicating a special relationship between him and

18  Defendants giving rise to a fiduciary duty aside from the routine, arms-length transactions Plaintiff

19  entered into with them.  The Court grants the Motion to Dismiss (#9) as to the Fourth Cause of

20  Action.

21  **E.     Injunctive Relief for Wrongful Foreclosure**

22         Federal Rule of Civil Procedure 65(a) allows a court to issue a preliminary injunction on

23  notice to an adverse party.  The Ninth Circuit employs two sets of criteria for evaluating a request

24  for preliminary injunctive relief.  Under the "traditional test," the movant must establish: "(1) a

25  strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if

1   preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4)

2   advancement of the public interest (in certain cases)." *Beardslee v. Woodford*, 395 F.3d 1064, 1067

3   (9th Cir. 2005) (citation omitted).  As to the second element, the Supreme Court recently clarified

4   that a plaintiff seeking an injunction must demonstrate that irreparable harm is likely, not just

5   possible. *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 375–76 (2008).  Under the "alternative test," the

6   plaintiff can meet its burden by showing "either a combination of probable success on the merits and

7   the possibility of irreparable injury or that serious questions are raised and the balance of hardships

8   tips sharply in his favor." *Beardslee*, 395 F.3d at 1067 (citation and internal quotation marks

9   omitted).  "These two alternatives represent 'extremes of a single continuum,' rather than two

10  separate tests." *Id.* (citations omitted).

11          "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can

12  establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of

13  condition or failure of performance existed . . . ." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d

14  610, 623 (Nev. 1983).  Furthermore, the only state apparently to have directly addressed the issue,

15  Missouri, holds a foreclosure void when a party attempts to foreclose without holding title to the

16  underlying promissory note. *Graham v. Oliver*, 659 S.W.2d 601, 603 (Mo. App. 1983) (citing *Cobe

17  v. Lovan*, 92 S.W. 93 (Mo. 1906) (holding that such a foreclosure sale is void)).  There is no Nevada

18  case law on point, but this is a commonsense rule.  A person without the right to enforce an

19  obligation cannot have recourse to repossess collateral even if he possesses a security instrument,

20  because he has not suffered a default.  Moreover, with mortgages, a contrary rule could result in the

21  odd situation that the holder of a promissory note and the respective holder of a deed of trust, when

22  not the same person, or when the latter was not the agent or "nominee" of the former, would

23  potentially be competing creditors as to the underlying property when the former had not given its

24  right to elect foreclosure to the latter.  The law avoids this situation by holding that, "the mortgage

25  goes with the note." *Rodney*, 836 P.2d at 436 (quoting *Hill*, 52 Ariz. at 568).

1    Plaintiff claims that Defendant has wrongfully foreclosed because "MERS wrongfully acting

2    as the Beneficiary, substituted RECONTRUST as the successive trustee and RECONTRUST

3    recorded the Notice of Default" (#1 at ¶ 47).  As discussed above, this is incorrect.  Recontrust

4    appears to have been the original trustee in this case.  In some cases Recontrust is indeed substituted

5    later, but not in this case.  Plaintiff's attorney has apparently filed a form complaint and failed to

6    check the facts before filing.  Anyway, MERS clearly has the right to make such substitutions as

7    nominee, as discussed in detail above.

8    Defendants are entitled to dismissal on this cause of action.  They have provided evidence

9    detailed above via judicial notice proving proper foreclosure, which Plaintiff has not countered.

10   Plaintiff has admitted default and has provided no evidence at all, apart from a claim that it is merely

11   possible, that the original lenders no longer hold the promissory notes at issue, which is the only

12   possible remaining fact pattern under which dismissal would plausibly not be appropriate.  Plaintiff

13   provides no evidence to this effect, but simply hopes against hope that perhaps the lenders or their

14   successors in interest negotiated the notes to parties that did not themselves assign or ratify

15   Recontrust as trustee, and that the Court rules that this is relevant.  There being no indication of this,

16   and the point being of no aid to Plaintiff if true, Plaintiff has no hope of succeeding on the merits of

17   this claim, and the Court grants the Motion to Dismiss (#9) as to the Fifth Cause of Action.

18   **F.    "Suitability"**

19   Gomez argues that Defendants are liable for having loaned him money under terms not

20   suitable to his financial position.  There is no such cause of action addressed anywhere in the Nevada

21   Reports.  *See Velasquez v. HBSC Mortgage Servs.*, No. 2:09-cv-00784-KJD-LRL, 2009 WL

22   2338852, at *4 (D. Nev. July 24, 2009) (rejecting such a cause of action).  Nor can "suitability" be

23   reasonably argued as a new cause of action, because the Nevada Legislature has considered and acted

24   on the issue via Chapter 598D of the Nevada Revised Statutes, entitled "Unfair Lending Practices."

25   The legislature has already squarely considered the issue and made a choice in the matter.  Indeed,

1  Plaintiff has brought a cause of action under these statutes.  The Sixth Cause of action is dismissed,

2  and Gomez's attorneys are admonished for filing this incognizable cause of action.

3  **G.    Negligence and "Liability per se"**

4        Presumably, Gomez means "negligence per se."  Liability exists where all elements of a

5  cause of action are proved.  The doctrine of negligence per se, as further explained below, is a

6  doctrine applicable to negligence claims whereby a Plaintiff can show the duty and breach elements

7  based on violation of a statute that replaces the general duty of care with a particular standard.

8  Causation and damages must still be proved to show liability.  There is no such thing as "liability

9  per se."

10        A prima facie claim for negligence in Nevada, as elsewhere, consists of four elements:  "(1)

11  an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay*

12  *Sports Entm't. LLC*, 180 P.3d 1172, 1175 (Nev. 2008).  Although sometimes pled as such,

13  negligence per se is not a separate cause of action but a doctrine whereby a court will consider the

14  negligence elements of duty and breach satisfied as a matter of law, leaving only causation and

15  damages to be determined by the fact-finder, where:  (1) a plaintiff can show that a defendant has

16  violated a duty imposed onto him by a criminal or regulatory statute; (2) the plaintiff is a member

17  of the class of persons intended to be protected by the statute or regulation; and (3) the alleged harm

18  resulting is of the kind intended to be prevented by statute. *Ashwood v. Clark County*, 930 P.2d 740,

19  743–44 (Nev. 1997) (citing *Sagebrush Ltd. v. Carson City*, 660 P.2d 1013, 1015 (Nev. 1983)); *see*

20  Restatement (Second) of Torts § 286.  Plaintiff claims that Defendants were negligent in their

21  professional duties to him. Plaintiff also claims they were negligent per se because they breached

22  duties created by statute.

23        A lender generally owes no duty of care to its borrower. *See Nymark v. Heart Fed. Savs. &*

24  *Loan*, 231 Cal. App. 3d 1089, 1096 (1991). But this is only true in a lender's "conventional role as

25  a mere lender of money." *Id.*  It does not indicate that in California (or Nevada) that lenders (or

1    others) have any duty of care in foreclosing proceedings.  The U.S. District Court for the Northern

2    District of California recently found that a foreclosure trustee has a duty of care to a trustor, but that

3    the scope of the duty is circumscribed by the statutes governing foreclosures. *Hendrickson v. Popular*

4    *Mortgage Servicing, Inc.*, No. 09-00472-CW, 2009 WL 1455491, at *7 (N.D. Cal. May 21, 2009)

5    ("[T]he scope and nature of the trustee's duties in a nonjudicial foreclosure 'are exclusively defined

6    by the deed of trust and the governing statutes.  No other common law duties exist.'" (quoting *Pro*

7    *Value Props., Inc. v. Quality Loan Serv. Corp.*, 88 Cal. Rptr. 3d 381[, 384] (2009))).  Therefore,

8    there is no general duty of care here, but there is a duty of care as defined by the Nevada foreclosure

9    statutes, assuming the Nevada Supreme Court would hold as the California Supreme Court did in

10   *Pro Value Props., Inc.*

11       Plaintiff includes a laundry list of statutes and regulations.  But as stated above, only

12   regulations governing foreclosures create duties giving rise to a negligence claim in the foreclosure

13   context.  Plaintiff cites to lending and disclosure regulations that do not create duties giving rise to

14   a negligence claim.  Plaintiff does not plead violation of foreclosure statutes under this cause of

15   action, and in any case, the Court can conclude from what has already been stated that there was no

16   defect in foreclosure, and hence no breach of any duty of care.  Therefore, the Motion to Dismiss

17   (#9) is granted as to the Seventh and Eighth Causes of Action.

18   **H.    Negligent Misrepresentation**

19       "[A] claim for negligent misrepresentation requires a plaintiff to plead: 1) a representation

20   that is false; 2) that the representation was made in the course of the defendant's business or in any

21   action in which he has a pecuniary interest; 3) the representation was for the guidance of others in

22   their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance

23   resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable

24   care or competence in obtaining or communicating the information." *G.K. Las Vegas Ltd. P'ship*

25   *v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006).  Furthermore, under Rule

1  9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P.

2  9(b).  A Plaintiff must plead facts such as "he bought a house from defendant, that the defendant

3  assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill

4  . . . ." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec.*

5  *Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1995) (en banc)).

6      Here, Plaintiff claims that Defendants negligently failed to provide "the information that

7  Plaintiff relied upon . . . in a manner that he would understand . . . ." (#1 at ¶ 77).  Plaintiff claims

8  this resulted in damages.  This is the extent of Plaintiff's pleading as to the facts surrounding the

9  alleged negligent misrepresentation.  This is insufficient.  Plaintiff makes no claims as to which

10  Defendants made which particular fraudulent or negligent statements at what times or what was

11  fraudulent or negligent about them.  Plaintiff's allegations are entirely conclusory.  The Motion to

12  Dismiss (#9) is granted as to the Ninth Cause of Action.

13  **I.    Unfair Lending Practices Under Nev. Rev. Stat. § 598D**

14      Plaintiff received the present mortgage on or about August 28, 2007.  Nev. Rev. Stat. §

15  598D.100 was amended in 2007, with an effective date of June 13, 2007. *See* 2007 Nev. Stat.

16  2844–46.  Therefore, the post-2007 version of the statute applies to the present case.  Defendants are

17  incorrect that the prior version applies.  They provide evidence that Gomez purchased the home in

18  March 2006. (#8, Ex C.).  But the current note and deed of trust date to August 20, 2007, indicating

19  a refinance of the mortgage.  It is for this very reason that Gomez's "wrongful trustee substitution"

20  argument fails.  Recontrust is the original trustee on the August 2007 deed of trust.  The prior statute

21  made it actionable if a lender made "a home loan to a borrower based solely upon the equity of the

22  borrower in the home property and without determining that the borrower has the ability to repay the

23  home loan from other assets . . . ." Nev. Rev. Stat. § 598D.100 (2006).  The current statute broadens

24  the protection given to consumers by making it actionable when a lender knowingly or intentionally

25  makes "a home loan . . . without determining, using any commercially reasonable means or

1   mechanism, that the borrower has the ability to repay the home loan." Nev. Rev. Stat. § 598D.100

2   (2009).  Plaintiff has claimed this, but the claim is an entirely conclusory recitation of the statutory

3   cause of action.  Nowhere in the Complaint is it alleged how Defendants calculated or assessed

4   Plaintiff's ability to repay or why their method was not commercially reasonable.  The Motion to

5   Dismiss (#9) is granted as to the Tenth Cause of Action.

6   **J.      Intentional Infliction of Emotional Distress**

7          The elements of intentional infliction of emotional distress in Nevada are:  "(1) that the

8   defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly

9   disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or

10  extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the

11  distress." *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983).  Plaintiff has not even

12  bothered to recite the elements of this cause of action in conclusory fashion, much less make out a

13  prima facie claim.

14         Instead, Plaintiff notes that Defendants had a duty "to each of the Plaintiff to not take their

15  home by fraudulent acts;"[3] that this duty (and others) were breached; that it was foreseeable that this

16  would cause emotional distress; and that humiliation, harm to reputation, and physical and emotional

17  distress resulted.  Plaintiff claims intentional infliction of emotional distress in the heading, but then

18  goes on to support the claim with allegations more suitable to claims for defamation (reputation),

19  negligence (foreseeability), and negligent infliction of emotional distress (physical and emotional

20  distress).   There is no claim of any extreme and outrageous conduct, no claim of intent or

21  recklessness, and no claim of "severe or extreme" emotional distress.  The Motion to Dismiss (#9)

22  ───────────────────

23         [3]Here there is more evidence that this is a form complaint with little thought involved.  It

24  is evident that someone has executed a search/replace in a word processing application to replace

25  "Plaintiffs" with "Plaintiff."

1    is granted as to the Eleventh Cause of Action.

2    **IV.    SANCTIONS UNDER RULE 11**

3             A district court may order a party or the party's counsel to show cause why sanctions should

4    not be imposed when "claims, defenses, and other legal contentions are [not] warranted by existing

5    law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for

6    establishing new law." Fed. R. Civ. P. 11(b)(2) and (c)(3).  Although a pro se litigant would not be

7    properly subject to sanctions in the present case, this litigant is represented by counsel, and Messrs.

8    Chambers and Selik have filed the present form complaint many times.  The present Complaint is

9    entirely without merit, and at least one of the causes of action is utterly frivolous:  the "suitability"

10   cause of action, which has been repeatedly rejected in this Court and others. *See, e.g., Velasquez v.*

11   *HBSC Mortgage Servs.*, 2:09-cv-00784-KJD-LRL, 2009 WL 2338852, at *4 (D. Nev. July 24, 2009)

12   (Dawson, J.); *Rangel v. DHI Mortgage Co., Ltd.*, CV F 09-1035 LJO GSA, 2009 WL 2190210, at

13   *3 (E.D. Cal. July 21, 2009); *Sheets v. DHI Mortgage Co., Ltd.*, CV F 09-1030 LJO DLB, 2009 WL

14   2171085, at *3 (E.D. Cal. July 20, 2009); *Spencer v. DHI Mortgage Co., Ltd.*, CV F 09-0925 LJO

15   DLB, 2009 WL 1930161, at *2 (E.D. Cal. June 30, 2009).  This is only a sample of the reported

16   cases, to say nothing of the number of times the "suitability" cause of action has been dismissed in

17   this very Court.  The present case was filed in the Clark County District Court, but under the *Erie*

18   doctrine, the estimation of the merits of claims does not change by removal.  Only fifty-two cases

19   in the Nevada Reports employ the word "suitability" in any context at all, and none of them use it

20   in the context of a party's suitability to enter into a contract or investment.  Most use the word to

21   refer to suitability of a parent to retain custody of a child, suitability to hold a gaming license, or

22   suitability of building materials.  No case uses it in connection with a loan or any cause of action at

23   all.

24

25

1    Nor can counsel claim the "suitability" cause of action is really a negligence theory.  They

2  have clearly pled "negligence" as a separate cause of action.  This leads to the next point.  Counsel

3  has pled a cause of action called "liability per se."  As discussed in more detail above, this is legally

4  frivolous for two reasons.  First, the proper doctrine is "negligence per se."  There is no such thing

5  as "liability per se."  Second, even "negligence per se" is not a separate cause of action apart from

6  negligence, but rather it is a doctrine whereby a plaintiff can satisfy the duty and breach elements of

7  a negligence cause of action as a matter of law without submitting the breach issue to the fact-finder

8  for a reasonableness finding.

9    A pro se plaintiff undergoing eviction could perhaps be excused for a legally unmeritorious

10  attempt to stall his foreclosure; however, an officer of the Court cannot be similarly excused when

11  he takes a client's money to facilitate such a futile attempt and thereby adds to the ever-growing pile

12  of novel, unmeritorious, cookie-cutter, and sometimes downright bizarre foreclosure-related

13  complaints currently clogging the Court's docket.  It would reflect poorly on the legal profession if

14  this were to become a profitable industry.  Plaintiff's counsel will not be subject to sanctions in the

15  present action, but should not plead "suitability" in this Court again and should study the doctrine

16  of "negligence per se" before pleading it improperly in their next case.

17                                     **CONCLUSION**

18    IT IS HEREBY ORDERED that the Motion to Dismiss (#9) is GRANTED without leave

19  to amend.

20    DATED: October 26, 2009.

21

22

23                                     _____
                                          Robert C. Jones
24  (eh)                                  United States District Judge

25

EXHIBIT "U"

# EXHIBIT "U"

 LexisNexis®

FOCUS - 3 of 129 DOCUMENTS


Analysis
As of: Feb 22, 2010

ALETA ROSE GOODWIN, ROBERT PAUL MCARTOR, and HEATHER GABEL, individually and on behalf of a class of similarly situated individuals; JOSEPH JONES, MEISA JONES, MICHAEL R. TIERNEY and FREDRICK TULIP, individually and on behalf of a class of similarly situated individuals; LINDA R. BARBA; CYNTHIA and CHARLES FLAGG; JANICE GANNON; WILLIAM DAN KLUTTZ; BRIAN E. JONES; JAMES H. MULLENNIX and JEANNE K. MULLENIX; HEATHER MONAHAN and GEORGE R. MORENO; TRAVIS RAWLINGS and SYLVIA RAWLINGS; JOHN SULLIVAN and DEBBIE SULLIVAN; JOSEPH E. THURSTON and ARLENE THURSTON; JESUS TOVAR; JOHN F. WILBURN; and ROSALIE W. WILBURN, Plaintiffs, v. EXECUTIVE TRUSTEE SERVICES, LLC.; COUNTRYWIDE HOME LOANS, INC., a New York corporation; MERSCORP, INC. a Virginia corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a subsidiary of MERSCORP, Inc. a Delaware Corporation; RECONTRUST COMPANY; SAXON MORTGAGE INC.; T.D. SERVICE COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY; OCWEN LOAN SERVICING, LLC; WESTERN PROGRESSIVE, LLC.; AHMSI DEFAULT SERVICES, INC.; QUALITY LOAN SERVICE CORPORATION; NATIONAL DEFAULT SERVICING CORPORATION; AZTEC FORECLOSURE CORPORATION; FEDERAL HOME LOAN MORTGAGE CORPORATION, a Virginia corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION, a District of Columbia corporation; GMAC MORTGAGE, L.L.C., a Delaware corporation; NATIONAL CITY MORTGAGE, a foreign company and a division of NATIONAL CITY BANK, a subsidiary of National City Corporation; NATIONAL CITY CORPORATION, a Delaware corporation and a subsidiary of PNC Financial Services, Inc.; PNC FINANCIAL SERVICES, INC., a Pennsylvania corporation; J.P. MORGAN CHASE BANK, N.A., a New York corporation; CITIMORTGAGE, INC., a New York corporation; HSBC MORTGAGE CORPORATION, U.S.A., a Delaware corporation; AIG UNITED GUARANTY CORPORATION, a foreign corporation; WELLS FARGO BANK, N.A., a California corporation, dba WELLS FARGO HOME EQUITY and dba WELLS FARGO HOME MORTGAGE division of WELLS FARGO BANK, N.A., a California corporation; BANK OF AMERICA, N.A., a Delaware corporation; and GE MONEY BANK, an Ohio corporation, Defendants.

3:09-CV-306-ECR-PAL

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

2010 U.S. Dist. LEXIS 2385

January 8, 2010, Decided

Page 2

2010 U.S. Dist. LEXIS 2385, *

**January 8, 2010, Filed**

**COUNSEL:** [*1] For Aleta Rose Goodwin, Plaintiff: Valerie R Edwards, LEAD ATTORNEY, PRO HAC VICE, Koeller, Nebeker, Carlson & Haluck, LLP, Phoenix, AZ; Megan K Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV; Robert R. Hager, Treva J. Hearne, Hager and Hearne, Reno, NV.

For Robert Paul Mcartor, Heather Gabel, Joseph Jones, Meisa Jones, Michael R. Tierney, Frederick Tulip, Linda R. Barba, Cynthia Flagg, Charles Flagg, Janice Gannon, Brian E. Jones, James H. Mullennix, Jeanne K. Mullennix, Heather Monahan, George R. Moreno, Travis Rawlings, Sylvia Rawlings, John Sullivan, Debbie Sullivan, Joseph E. Thurston, Arlene Thurston, Jesus Tovar, John F. Wilburn, Rosalie W. Wilburn, Plaintiffs: Megan K Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV; Robert R. Hager, Hager and Hearne, Reno, NV.

For William Dan Kluttz, Plaintiff: Megan K Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV; Robert R. Hager, Treva J. Hearne, Hager and Hearne, Reno, NV.

For Lisa Cheney, Darrin Cheney, Joaquin Arevalo, Daniel Coslow, Rosa M. Diaz, Sergio Diaz, Pamela Horton, Victor Parece, Cody Premo, Gregory W. Premo, Matthew Robert Robinson, Tonya Dawn Robinson, Joan Blake, Ronnie McKinney, Signe [*2] Stehman, Plaintiffs: Robert R. Hager, LEAD ATTORNEY, Hager and Hearne, Reno, NV; Megan K Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV.

For Executive Trustee Services, LLC, GMAC Mortgage, L.L.C., Defendants: Bruce T. Beesley, Paul A. Matteoni, LEAD ATTORNEYS, Lewis and Roca LLP, Reno, NV; Henry F Reichner, Ira S. Lefton, LEAD ATTORNEYS, Reed Smith LLP, Philadelphia, PA.

For Countrywide Home Loans, Inc., Recontrust Company, Bank of America, N.A., Defendants: Thomas M. Hefferon, LEAD ATTORNEY, Goodwin Procter LLP, Washington, DC; Ariel E. Stern, Jacob D Bundick, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV.

For Merscorp, Inc., Defendant: Patrick G. Byrne, LEAD ATTORNEY, Snell & Wilmer, Las Vegas, NV; Robert M. Brochin, LEAD ATTORNEY, Morgan, Lewis & Bockius LLP, Miami, FL; Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV.

For Mortgage Electronic Registration Systems, Inc., Defendant: Patrick G. Byrne, LEAD ATTORNEY, Snell &

Wilmer, Las Vegas, NV; Robert M. Brochin, LEAD ATTORNEY, Morgan, Lewis & Bockius LLP, Miami, FL.

For Saxon Mortgage, Inc., Defendant: J. Matthew Goodin, P. Russell Perdew, Thomas J. Cunningham, LEAD ATTORNEYS, Locke Lord Bissell & Liddell LLP, [*3] Chicago, IL; Matthew McClendon, LEAD ATTORNEY, Locke Lord Bissell & Liddell LLP, Los Angeles, CA; Colt B. Dodrill, Wolfe Wyman, LLC, Las Vegas, NV.

For T.D. Service Company, IB Property Holdings, L.L.C., Amended Complaint (#47) filed 6/24/09, Defendants: Gregory L Wilde, Wilde & Associates, Las Vegas, NV.

For Deutsche Bank National Trust Company, Defendant: Jami Wintz McKeon, Jeremy S. Gladstone, LEAD ATTORNEYS, Morgan Lewis & Bockius LLP, San Francisco, CA; Ryan W. Herrick, LEAD ATTORNEY, John Desmond, Jones Vargas, Reno, NV; Laury M Macauley, Lewis and Roca LLP, Reno, NV.

For Oewen Loan Servicing, LLC, Defendant: Ashley H. Chalmers, LEAD ATTORNEY, Randall W. Edwards, PRO HAC VICE, OMelveny & Myers LLP, San Francisco, CA; Brian P. Brooks, LEAD ATTORNEY, OMelveny & Myers LLP, Washington, DC; Elizabeth Lemond McKeen, LEAD ATTORNEY, OMelveny & Myers LLP, Newport Beach, CA; Joshua M Dickey, LEAD ATTORNEY, Dennis L. Kennedy, Bailey Kennedy, Las Vegas, NV.

For Western Progressive, LLC, Defendant: Brian P. Brooks, LEAD ATTORNEY, OMelveny & Myers LLP, Washington, DC; Dennis L. Kennedy, LEAD ATTORNEY, Joshua M Dickey, Bailey Kennedy, Las Vegas, NV; Randall W. Edwards, LEAD ATTORNEY, PRO HAC VICE, [*4] OMelveny & Myers LLP, San Francisco, CA.

For AHMSI Default Services, Inc., Defendant: Andrew R Louis, Matthew Previn, LEAD ATTORNEYS, BuckleySandler LLP, Washington, DC; Cynthia Alexander, LEAD ATTORNEY, Chad R. Fears, Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV.

For Quality Loan Service Corporation, Defendant: Kristin A Schuler-Hintz, LEAD ATTORNEY, McCarthy & Holthus, LLP, Las Vegas, NV.

2010 U.S. Dist. LEXIS 2385, *

For National Default Servicing Corporation, Defendant: Dana Jonathon Nitz, LEAD ATTORNEY, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV.

For Aztec Foreclosure Corporation, Defendant: Dana Jonathon Nitz, LEAD ATTORNEY, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV; Donna M. Osborn, Wright Finlay & Zak, LLP, Las Vegas, NV.

For Federal Home Loan Mortgage Corporation, Defendant: Howard S Lindenberg, LEAD ATTORNEY, Freddie Mac, McLean, VA; Mark S. Landman, LEAD ATTORNEY, PRO HAC VICE, Landman Corsi Ballaine & Ford, P.C., New York, NY; Chad R. Fears, Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV; Patrick G. Byrne, Snell & Wilmer, Las Vegas, NV.

For Federal National Mortgage Association, Defendant: Jill L Murch, Jonathan W Garlough, William J McKenna, Jonathan W Garlough, Foley & Lardner [*5] LLP, Chicago, IL; Chad R. Fears, Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV; Patrick G. Byrne, Snell & Wilmer, Las Vegas, NV.

For National City Mortgage, National City Bank, National City Corporation, PNC Financial Services, Inc., Defendants: Ariel E. Stern, LEAD ATTORNEY, Jacob D Bundick, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV; David H. Pittinsky, LEAD ATTORNEY, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA.

For J.P. Morgan Chase Bank, N.A., Defendant: Danielle J Szukala, LeAnn Pedersen Pope, LEAD ATTORNEYS, Burke, Warren, MacKay & Serritella, P.C., Chicago, IL; Michael R. Kealy, LEAD ATTORNEY, Parsons Behle & Latimer, Reno, NV; David Hall, Parsons Behle & Latimer, Salt Lake City, UT.

For Citimortgage, Inc., Defendant: Courtney Miller O'Mara, LEAD ATTORNEY, Leslie Bryan Hart, Richard H. Bryan, Lionel Sawyer & Collins, Reno, NV; Lucia Nale, LEAD ATTORNEY, Chicago, MI; Thomas V Panoff, LEAD ATTORNEY, PRO HAC VICE, Mayer Brown LLP, Chicago, IL.

For HSBC Mortgage Corporation, U.S.A., Defendant: Erica J Stutman, LEAD ATTORNEY, Chad R. Fears, Cynthia Alexander, Snell & Wilmer L.L.P., Las Vegas, NV; Gregory J Marshall, LEAD ATTORNEY, Snell & Wilmer L.L.P., [*6] Phoenix, AZ; Patrick G. Byrne, LEAD ATTORNEY, Snell & Wilmer, Las Vegas, NV.

For AIG United Guaranty Corporation, Defendant: Christopher H. Byrd, LEAD ATTORNEY, Fennemore

Craig, Las Vegas, NV; Todd S Kartchner, LEAD ATTORNEY, Fennemore Craig, P.C., Phoenix, AZ.

For Wells Fargo Bank, N.A., doing business as Wells Fargo Home Equity doing business as Wells Fargo Home Mortgage, Defendant: Ariel E. Stern, LEAD ATTORNEY, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV; Thomas M. Hefferon, LEAD ATTORNEY, Goodwin Procter LLP, Washington, DC; Chad R. Fears, Cynthia Alexander, Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV.

For GE Money Bank, Defendant: Andrew R Louis, Matthew Previn, LEAD ATTORNEYS, BuckleySandler LLP, Washington, DC; Cynthia Alexander, LEAD ATTORNEY, Chad R. Fears, Snell & Wilmer LLP, Las Vegas, NV; John J Frankovich, LEAD ATTORNEY, McDonald Carano Wilson LLP, Reno, NV; Miranda M Du, LEAD ATTORNEY, McDonald Carano & Wilson, Reno, NV.

For WMC Mortgage Corp., Amended Complaint (#47) filed 6/24/09, Defendant: Chad R. Fears, Snell & Wilmer, LLP, Las Vegas, NV; Mark D Wray, Law Offices of Mark Wray, Reno, NV.

For MTC Financial, Inc., doing business as Trustee Corps, Defendant: [*7] Michael E Sullivan, LEAD ATTORNEY, Robison Belaustegui Sharp & Low, Reno, NV.

For WMC Mortgage Corp., Duplicate Party, Defendant: Mark D Wray, Law Offices of Mark Wray, Reno, NV.

For James Sandborn, Defendant: Treva J. Hearne, Hager & Hearne, Reno, NV.

For Litton Loan Servicing LP, Defendant: Brian M. Forbes, Gregory N. Blase, Robert B Allensworth, LEAD ATTORNEYS, PRO HAC VICE, K&L Gates LLP, Boston, MA; Gary E. Schnitzer, Kravitz Schnitzer Sloane Johnson & Eberhardy, Chtd., Henderson, NV.

For Bank of New York, as successor to J.P. Morgan Chase Bank, N.a, as Trustee for BSALTA 2005-1, Defendant: Ariel E. Stern, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV.

For Old Republic Default Management Services, Defendant: P. Russell Perdew, LEAD ATTORNEY, J. Matthew Goodin, Thomas J. Cunningham, PRO HAC VICE, Locke Lord Bissell & Liddell LLP, Chicago, IL; Ann O. Hall, Bowen Hall Ohlson & Osborne, Reno, NV; John Ohlson, Bowen, Hall, Ohlson & Osborne Chartered, Reno, NV.

2010 U.S. Dist. LEXIS 2385, *

For Federal Housing Finance Agency as Conservator of Fannie Mae and Freddie Mac, Intervenor: David Bergman, Howard Cayne, Arnold & Porter LLP, Washington, DC; David Fauvre, Arnold & Porter, Washington, DC; Michael W. Large, [*8] Laxalt & Nomura, Ltd., Reno, NV; Stephen Hart, Washington, DC.

JUDGES: Edward C. Reed, Jr, UNITED STATES DISTRICT JUDGE.

OPINION BY: Edward C. Reed, Jr

OPINION

*Order*

This is a putative class action brought by numerous homeowners who are in danger of losing or have already lost their homes to foreclosure. Plaintiffs assert seven claims for relief: (1) violation of the Fair Housing Act; (2) violation of Nevada Uniform Lending Practices Act; (3) conspiracy to commit fraud and conversion; (4) conspiracy to commit fraud related to the MERS system; (5) unjust enrichment; (6) intentional infliction of emotional distress; and (7) fraud in the inducement. Before the Court are twenty two motions to dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 165 [1], [*9] 166, 167, 173, 198, 200, 202, 227 243, 342, 344 and 356). Plaintiffs oppose each motion separately. Defendants have replied. Also before the Court are Plaintiffs' motion for a preliminary injunction (#98), Plaintiffs' motion to certify class (#99), and Defendants' motion for protective order staying discovery and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction (#142). The motions are ripe, and we now rule on them.

> 1   On July 30, 2009, Defendant Taylor, Bean & Whitaker Mortgage Corp. (TB&W") filed a motion to dismiss (#165). On August 24, 2009, TB&W filed a voluntary bankruptcy petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Case No. 3:09-bk-07047-JAF. Pursuant to 11 U.S.C. § 362, the commencement of TB&W's bankruptcy case operates as an automatic stay of all actions or proceedings, including this action, against TB&W. (See Notice of Bankruptcy (#228).) In light of the automatic stay, this Order does not rule on TW&W's motion (#165) to dismiss.

*I. Factual and Procedural History*

Plaintiffs in this case are homeowners who are [*10] in danger of losing or have already lost their homes to foreclosure. Plaintiffs filed a class action complaint (#1) and motion for preliminary injunction (#2) on June 9, 2009. On June 10, 2009, we granted (#5) Plaintiffs' motion for preliminary injunction to the extent it sought a temporary restraining order. We restrained Defendants from pursuing any foreclosure actions against Plaintiffs or their properties. The temporary restraining order remained in effect until June 22, 2009. On June 11, 2009, we amended (#10) the temporary restraining order. On June 22, 2009, we denied Plaintiffs' motion for preliminary injunction (#2) as moot in light of a stipulation of the parties (#26) and an Order (#28) of the Court approving the stipulation.

On June 24, 2009, Plaintiffs filed an amended complaint (#47). On June 29, 2009, Plaintiffs filed a motion (#59) for temporary restraining order and preliminary injunction. We granted (#67) the motion (#59) to the extent it sought a temporary restraining order. The temporary restraining order remained in effect until July 16, 2009. On July 15, 2009, certain Defendants stipulated (#110) that they would not initiate or advance any foreclosures with respect [*11] to certain properties at issue in this case pending a trial on the merits. On the same date we entered an Order (#111) approving parts of the stipulation (# 110) and disapproving others. On July 16, 2009, another stipulation (#118) was entered into between certain Defendants and certain Plaintiffs. On July 16, 2009, we held a hearing clarifying our previous Order (#111). (Mins. (#123).)

On July 11, 2009, Plaintiffs filed a motion (#98) for preliminary injunction and a motion (#99) to certify class. Defendants opposed both motions and Plaintiffs replied. On July 29, 2009, Defendants Federal Home Loan Mortgage Corporation and Federal National Mortgage Association filed (#142) a motion for "Protective Order Staying Discovery and Staying Their Oppositions to Plaintiffs' Motions for Class Certification and Preliminary Injunction and Joinder to Certain Defendants' Joint Motion to Temporarily Stay Proceedings." The motion (#142) is unopposed. Between July 29, 2009, and December 3, 2009, Defendants filed numerous motions to dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 165, 166, 167, 173, 198, 200, 202, 227, 243, 342, 344 and 356). Plaintiffs opposed the motions, and Defendants [*12] replied.

*II. Motion to Dismiss Standard*

A motion to dismiss under Fed. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). On a motion to dismiss, "we

presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)) (alteration in original). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Stac Elecs.*, 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant [*13] to Fed. R. Civ. P. 12(b) (6) is normally limited to the complaint itself. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(d); *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment," *Ritchie*, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. [*14] Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss. *Id.* at 909; *see* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. Analysis

#### A. Fair Housing Act

The first cause of action alleged in Plaintiffs' first amended complaint pertains only to Plaintiff Aleta Rose Goodwin ("Goodwin"). The complaint alleges that Defendants targeted Goodwin, "an unmarried African American woman," because of her "race and/or national origin and gender," and offered Goodwin a "less-favorable loan than would have been offered to a white borrower or a male borrower, all other things being equal." (Am. Compl. PP 148, 151, 152 (#47).)

The Fair Housing Act ("FHA") prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection [*15] therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The FHA has a two year statute of limitations. *Id.* § 3613(a)(1)(A).

Goodwin's FHA claim is untimely. The conduct giving rise to her claim is the issuance of a "less-than-favorable loan." (Am. Compl. P 152 (#47).) The loan in question was issued on November 29, 2006, when Goodwin executed her deed of trust. (*Id.* P 103 (#47).) The statute of limitations thus began running on that date and expired on November 29, 2008. Plaintiff did not file her complaint until June 9, 2009. Even if we assume that Defendants' actions violated the FHA, because Goodwin filed this action under FHA more than two years after the alleged discriminatory acts, Goodwin's FHA claim is time-barred.

Goodwin's allegation that Defendants engaged in a "continuing violation whereby each Defendant has engaged in a pattern or extended practice of exploiting the market of Hispanics, the disabled and women" (*Id.* P 155 (#47)) does not cure the untimeliness of Goodwin's claim. Under the continuing violation theory, when "a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative [*16] of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period] of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982). The continuing violation theory is not applicable here because Goodwin claims to have suffered only a single incident of conduct violative of the Act, namely the "less-than-favorable loan." Moreover, Goodwin's allegation regarding the patterns and practices of all Defendants is a mere legal conclusion unsupported by any factual allegations and, as such, is not a plausible claim for a continuing violation. *See In re Stac Elecs.*, 89 F.3d at 1403 (citation omitted). Plaintiffs' first cause of action thus fails to state a claim and will be dismissed.

#### B. Unfair Lending Practices

2010 U.S. Dist. LEXIS 2385, *

Plaintiffs allege that all Defendants violated Nev. Rev. Stat. § 598D.100 by continuing "to enforce mortgages secured by Plaintiffs' homes that included no evaluation of any commercially reasonable means or mechanisms that would demonstrate the Plaintiffs' capacity to repay . . . ." (Am. Compl. P 162 (#47).) Defendants have moved to dismiss this claim on [*17] various grounds. Some argue that they are not lenders and thus they do not fall within the purview of the statute. Others argue that the claim is too vague and conclusory to survive a motion to dismiss. Still others argue that the version of the statute that Plaintiffs allege they violated was not in force until October 1, 2007, and there is no provision for its retroactive application. Thus, these provisions cannot apply to those Plaintiffs' loans, which were obtained before that date.

### 1. 2007 Amendments

The Nevada Legislature adopted Assembly Bill 440 during the 2007 session, which amended Nev. Rev. Stat. Chapter 598D, effective October 1, 2007. The bill, inter alia, redefined the scope of "home loan[s]" subject to the chapter's provisions. See A.B. 440, Section 2, 2007 Nev. Stat. 2846 (" AB 440 "). The definition of "home loan" in the pre-amendment version of Nev. Rev. Stat. P 598D.040 was as follows:

> "Home loan" means a consumer credit transaction that 1. Is secured by a mortgage loan which involves real property located within this State; and 2. Constitutes a mortgage under § 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1602(aa), and the regulations adopted [*18] by the Board of Governors of the Federal Reserve System pursuant thereto, including, without limitation, 12 C.F.R. § 226.32.

NEV. REV. STAT. P 598D.040 (2006).

The 2007 legislation redefined the operative term "home loan," inserting a second "without limitation" before the clause about the Home Ownership and Equity Protection Act ("HOEPA"):

> "Home loan" means a consumer credit transaction that is secured by a mortgage loan which involves real property located within this State and includes, without limitation, a consumer credit transaction that constitutes a mortgage under § 152 of the Home Ownership and Equity Protec-

tion Act of 1994, 15 U.S.C. § 1602(aa), and the regulations adopted by the Board of Governors of the Federal Reserve System pursuant thereto, including, without limitation, 12 C.F.R. § 226.32.

NEV. REV. STAT. § 598D.040 (2008)

In other words, the pre-amendment version of Nev. Rev. Stat. Chapter 598D regulated only those home loans subject to regulation under HOEPA. The Federal Reserve has described HOEPA regulated loans as

> closed-end, non-purchase money mortgages secured by a consumer's principal dwelling (other than a reverse mortgage) where either: (a) The APR at consummation [*19] will exceed the yield on Treasury securities of comparable maturity by more than 8 percentage points for first-lien loans, or 10 percentage points for subordinate-lien loans; or (b) the total points and fees payable by the consumer at or before closing exceed the greater of 8 percent of the total loan amount, or $547 for 2007 (adjusted annually).

Truth in Lending; Final Rule, 73 Fed. Reg. 44522, 44527, n.20 (Jul. 30, 2008). See also 15 U.S.C. § 1602(aa); 12 C.F.R. § 226.32. The post-amendment version is more expansive, effectively covering any home loan for property located in Nevada.

Section 598D as amended lacks any provision for its retroactive application, and civil statutes are normally presumed to operate only prospectively. United States v. Perry, 431 F.2d 1020, 1023 (9th Cir. 1970). The broader post-amendment language is therefore only applicable to loans issued after October 1, 2007.

The Complaint thus fails to state a claim under the Unfair Lending Act as to Plaintiffs who obtained their loans before October 1, 2007, [2] because the Complaint does not allege that any Plaintiff obtained a "home loan" within the pre-amendment definition of Nev. Rev. Stat. P 598D.040.

> 2  The only Plaintiffs [*20] who obtained home loans after October 1, 2007, are Joseph Arevalo, Victor Parece, Matthew Robert Robinson and Tonya Dawn Robinson. The remaining Plaintiffs obtained home loans before October 1, 2007.

2010 U.S. Dist. LEXIS 2385, *

Moreover, the Complaint does not allege conduct that would have constituted an unfair lending practice prior to October 1, 2007. Before October 1, 2007, Nev. Rev. Stat. § 598D.100(1)(b) stated that "[i]t is an unfair lending practice for a lender to . . . [k]nowingly or intentionally make a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including, without limitation, income." NEV. REV. STAT. § 598D.100(1)(b)(2006). [3] Plaintiffs' Complaint lacks any allegations that Defendants extended credit to any Plaintiff based solely upon the equity in the property. Thus, Plaintiffs fail to properly plead the elements of unfair lending practices based upon the pre-October 2007 version of the statute.

> [3]    In its current form, Nev. Rev. Stat. § 598D.100 states that it "is an unfair lending practice for a lender to . . . [k]nowingly or intentionally make a home loan, [*21] other than a reverse mortgage, to a borrower, including, without limitation, a low-document home loan, no-document home loan or stated-document home loan, without determining, using any commercially reasonable means or mechanism, that the borrower has the ability to repay the home loan." NEV. REV. STAT. § 598D.100(1)(b)(2008).

Because the Complaint fails to allege conduct that would have constituted an unfair lending practice prior to October 1, 2007, and fails to allege that any Plaintiff obtained a "home loan" within the pre-amendment definition of Nev. Rev. Stat. Chapter 598D, dismissal of the unfair lending claim as to Plaintiffs who obtained their home loans prior to October 1, 2007 is appropriate.

## 2. Vagueness

The Complaint's unfair lending practices claim also fails with respect to the Plaintiffs who obtained home loans subsequent to October 1, 2007. Plaintiffs' second cause of action is simply too vague to survive a motion to dismiss. Plaintiffs assert the unfair lending practices claim against all Defendants, alleging that they collectively "enforced" mortgages that "included no evaluation of any commercially reasonable means or mechanism that would demonstrate the Plaintiffs' [*22] capacity to repay . . . ." (Am. Compl. P 162 (#47).) Nev. Rev. Stat. § 598D.100 proscribes certain lending practices; it does not regulate the enforcement of loans. Indeed, the statute applies only to lenders. NEV. REV. STAT. § 598D.100. "Lender" is defined as "a mortgagee, beneficiary of a deed of trust or other creditor who holds a mortgage, deed of trust or other instrument that encumbers home property as security for the repayment of a home loan."

Id. § 598D.050. We cannot ascertain from the broad and sweeping allegations in the Complaint which of the many named Defendants qualify as lenders within the meaning of the statute. Claims that fail to identify which defendant is responsible for what alleged injury do not adequately place defendants on notice of the claim or claims being asserted against them. See Fortaleza v. PNC Fin. Servs. Group, Inc., 642 F. Supp. 2d 1012, 1022 (N.D. Cal. 2009).

The assertion of this claim against all Defendants has caused a great deal of confusion. Many non-lender Defendants have expended resources filing motions to dismiss on that ground. Plaintiffs, unable to defend this claim as to many of those Defendants, have already withdrawn the claim with [*23] respect to National Default Servicing Corp., Aztec Foreclosure Corporation, AHMSI Default Services, Inc., MTC Financial Inc. dba Trustee Corps., Citimortgage, Inc., GMAC Mortgage, LLC, and Executive Trustee Services, LLC. (P.'s Opp. at 5 (#210).); (P.'s Opp. at 8-9 (# 214)); (P.'s Opp. at 11 (# 222)). While it is helpful that Plaintiffs have withdrawn the claim as to some Defendants, it is nonetheless inappropriate to allege a claim broadly against all Defendants without a legal basis for doing so.

Finally, the Complaint alleges that certain Plaintiffs were "qualified by their various lenders only on the basis of credit score and collateral market value or stated income that was not verified." (Am. Compl. P 162 (#47).) This allegation falls short of establishing an identifiable claim not only because it fails to identify which lenders engaged in this conduct, but also because it does not identify how each lender at issue calculated or assessed each Plaintiff's ability to repay. Plaintiffs' second claim for relief thus fails to state a claim and will be dismissed.

## C. Conspiracy to Commit Fraud and Conversion

Plaintiffs' third claim for relief alleges that various Defendants engaged in [*24] a conspiracy to "deprive Plaintiffs of their property through fraud and misrepresentation that would result in Plaintiffs entering into loan agreements for which they were ultimately not qualified and which would eventually result in Plaintiffs' inability to make payments and stay in their homes." (Am. Compl. P 168 (#47).) Under Nevada law, an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff. Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety, 121 Nev. 44, 110 P.3d 30, 51 (Nev. 2005). "Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." Id. A showing of fraud, in turn, requires (1) a false representation, (2) knowledge or belief that the representation was false, (3) intent to induce reliance on the

representation, (4) that the reliance must be justifiable, and (5) damages. *Lubbe v. Barba,* 91 Nev. 596, 540 P.2d 115, 117 (Nev. 1975).

A claim for conspiracy to commit fraud must be pled with the same particularly as the fraud itself. *See Wanetick v. Mel's of Modesto, Inc.,* 811 F. Supp. 1402, 1406 n.3 (N.D. Cal. 1992) [*25] (so stating). Thus, under Rule 9(b), a party must state with particularity the circumstances constituting the conspiracy. *See* FED. R. CIV. P. 9(b), Allegations of conspiracy must be accompanied by "the who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (so stating, with respect to fraud) (internal quotation marks omitted). Thus, to state a claim for conspiracy "a plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co. v. Sw. Gas Corp.,* 165 F. Supp. 2d 1010, 1020-21 (D. Ariz. 2001) (internal citations and quotation marks omitted).

Plaintiffs have failed to plead the alleged conspiracy to commit fraud with particularity. Plaintiffs have not stated how or even when the alleged conspiracy was formed. Plaintiffs have not included any factual allegations pertaining to how Defendants targeted Plaintiffs. [*26] In addition, the Complaint lumps multiple Defendants together without differentiating between them or the allegations against them. *See Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (noting that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together"). Such general allegations are insufficient because "[a] bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1047 (9th Cir. 2008).

With regard to the underlying fraud, the complaint fails to specify what false representations underlie the claim. Plaintiffs' reference to "representations . . . related to Plaintiffs' ability to repay the loan or to refinance the loan in taking the loan and signing the documents," (Am. Compl. P 170 (#47)) is insufficient under Rule 9(b). [4]

4  We do not have authority to rule on claims or issues related to the formation and/or operation of the MERS system. Pursuant to a transfer order issued by the United States Judicial Panel on Multidistrict Litigation, the claims in this case that [*27] are related to the formation and/or opera-

tion of the MERS system are under the jurisdiction of the District of Arizona and assigned to the Honorable James A. Teilborg for coordinated or consolidated pretrial proceedings. (*In Re: Mortgage Electronic Registration Systems (MERS) Litigation,* MDL No. 2119, Transfer Order (#412).) It is not entirely clear whether the claims discussed here fall within this definition, in part because of the lack of specificity we have already described. This Order is not intended to refer to or rule upon any issues which are included in the MDL transfer order.

Finally, it should be noted that the title of Plaintiffs' third claim for relief is "Conspiracy to Commit Fraud and Conversion." (Am. Compl. at 49 (#47).) The substance of this claim's allegations focuses on the fraud underlying the alleged conspiracy, not conversion. Nonetheless, to the extent the claim is also premised on the underlying tort of conversion, Plaintiffs likewise fail to state a claim. Conversion, under Nevada law, "is a distinct act of dominion wrongfully exerted over personal property." *Edwards v. Emperor's Garden Restaurant,* 122 Nev. 317, 130 P.3d 1280, 1287 (Nev. 2006). In this case, Plaintiffs [*28] are alleging that Defendants conspired to "unlawfully deprive plaintiffs of their homes," (Am. Compl. P 175 (#47).) Thus, the subject of the alleged conversion is real property, not personal property. Therefore, to the extent the conspiracy claim is premised on the underlying tort of conversion, Plaintiffs fail to state a claim. Plaintiffs' third claim for relief will be dismissed.

*D. Conspiracy to Commit Fraud Related to the MERS system*

Plaintiffs' fourth claim for relief alleges a conspiracy to commit fraud related to the MERS system. Pursuant to a transfer order issued by the United States Judicial Panel on Multidistrict Litigation, the claims in this case that are related to the formation and/or operation of the MERS system are under the jurisdiction of the District of Arizona and assigned to the Honorable James A. Teilborg for coordinated or consolidated pretrial proceedings. (*In Re: Mortgage Electronic Registration Systems (MERS) Litigation,* MDL No. 2119, Transfer Order (#412).) Thus, we will not rule on the pending motions to dismiss with regard to Plaintiffs' fourth claim for relief alleging conspiracy to commit fraud related to the MERS system.

*E. Unjust Enrichment*

Plaintiffs' [*29] fifth claim for relief alleges unjust enrichment against all Defendants. Under Nevada law, unjust enrichment occurs when "a person has and retains a benefit which in equity and good conscience belongs to another." *Leasepartners Corp. v. Robert L. Brooks Trust*

2010 U.S. Dist. LEXIS 2385, *

*Dated November 12, 1975*, 113 Nev. 747, 942 P.2d 182, 187 (Nev. 1997). An action "based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.* The doctrine of unjust enrichment thus only "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Id.* (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

The basic premise of Plaintiffs' claim for unjust enrichment is that they were "targeted for and lured" into their mortgages. (Am. Compl. P 214 (#47).) These mortgages are express and written contracts; Plaintiffs' fifth claim thus fails and will be dismissed.

*F. Intentional Infliction of Emotional Distress*

Plaintiffs' sixth cause of action alleges intentional [*30] infliction of emotional distress. The elements of a cause of action for intentional infliction of emotional distress are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (Nev. 1999). Extreme and outrageous conduct is that which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks and citation omitted). "Severe or extreme emotional distress" is distress "so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). A claim for intentional infliction of emotional distress operates on a continuum: the less extreme the outrage, the greater the need for evidence of physical injury or illness from the emotional distress. *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 851 P.2d 459, 462 (Nev. 1993)

Neither the actions allegedly carried out by Defendants [*31] nor the distress allegedly suffered by Plaintiffs is sufficient to state a claim for intentional infliction of emotional distress. The alleged actions underlying this claim are, inter alia, misrepresentation of the loans at issue, negotiation of those loans and the closing of the loans. Plaintiffs argue that Defendants actions are extreme and outrageous because Plaintiffs were particularly vulnerable to predatory lending practices and the loans at issue concerned Plaintiffs' residences. Neither of these circumstances, even if true, transforms the alleged conduct into conduct that is "utterly intolerable in a civilized community." *Maduike*, 953 P.2d at 26. Moreover, the

only physical symptoms of distress allegedly suffered by Plaintiffs are sleeplessness and headaches. (Am. Compl. P 225 (#47).) This distress is not so severe that "no reasonable person could be expected to endure it." *Alam*, 819 F. Supp. at 911. Plaintiffs' claim for intentional infliction of emotional distress thus fails to state a claim.

*G. Fraud in the Inducement*

Plaintiffs' seventh claim for relief is for fraud in the inducement. Like Plaintiffs' claim for conspiracy to commit fraud and conversion, this claim fails to [*32] satisfy the particularity requirements of Rule 9(b). Federal Rule of Civil Procedure 9(b) requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764 (internal quotation marks and citation omitted). In a case with multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65 (internal quotation marks and citation omitted). Plaintiffs' claim for fraud in the inducement fails to allege who made what misrepresentations or when any of the alleged misrepresentation took place. The claim is replete with vague and conclusory allegations such as "Defendants misrepresented the ability of Plaintiffs, and other similarly situated, to qualify for the loans." (Am. Compl. P 230 [*33] (#47).)

To the extent that Plaintiffs' fraud in the inducement claim is based on omissions by Defendants the complaint also fails to state a claim. Under Nevada law, one of the five essential elements of a claim for fraudulent concealment is that the "defendant must have been under a duty to disclose the fact to the plaintiff." *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995). Plaintiffs do not allege what duties, if any, the various Defendants named in the Complaint owed Plaintiffs. Plaintiffs' claim for fraud in the inducement thus fails.

*IV. Leave to Amend*

Under Rule 15(a) leave to amend is to be "freely given when justice so requires." FED. R. CIV. P. 15(a). In general, amendment should be allowed with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). If factors such as undue delay, bad faith, dilatory motive, undue prejudice or futility of amend-

2010 U.S. Dist. LEXIS 2385, *

ment are present, leave to amend may properly be denied in the district court's discretion. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003)(discussing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

In   [*34] light of the liberal spirit of Rule 15(a), Plaintiffs should have an opportunity to amend their complaint. There is no reason why Plaintiffs could not cure the deficiencies we have noted here, or at least some of them, such as the conclusory and vague allegations against undifferentiated defendants. If the amended complaint is similarly deficient, however, we may be forced to conclude that leave to further amend would be futile.

*V. Motion for Preliminary Injunction, Motion to Certify Class and Motion for Protective Order*

In light of this Order dismissing all of Plaintiffs' claims on which we have authority to rule under the MDL Order, Plaintiffs' motions for class certification (#99) and a preliminary injunction (#98) are moot, as is Defendants' motion (#142) for a protective order staying discovery and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction. These motions will therefore be denied as moot.

Our dismissal of Plaintiffs' motion for class certification (#99) does not conflict with the Ninth Circuit's recent decision in *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.*, Nos. 09-56578, 09-56579, 2010 U.S. App. LEXIS 238, 2010 WL 22701 (9th Cir. Jan, 6, 2010). [*35]  In that case, the Ninth Circuit held that a district court abused its discretion when it assumed, for the purpose of Federal Rule of Civil Procedure 23 certification analysis and without any separate inquiry into the merits, that plaintiffs' legal theory would fall. 2010 U.S. App. LEXIS 238, [WL] at *1. Unlike the posture in *United Steel,* here, in addition to a motion for class certification, a number of motions to dismiss are before the Court. Our inquiry into the merits of Plaintiffs' claims was conducted solely with respect to the pending motions to dismiss. Our ultimate conclusion with respect to those motions renders Plaintiffs' motion for class certification moot. In light of the circumstances of this action, it is therefore appropriate for this Court to enter an Order

dismissing the non-MDL claims without first ruling on the motion for class certification.

*VI. Conclusion*

Plaintiffs have failed to state a claim upon which relief can be granted. The Complaint, to the extent it does not involve claims assigned to the District of Arizona pursuant   [*36] to the MDL order, will be dismissed. Plaintiffs will be given leave to amend. Should they choose to do so, however, they shall specify which allegations apply to which Defendants and which Plaintiffs. Plaintiffs' motions for class certification (#99) and a preliminary injunction (#98) and Defendants' motion (#142) for a protective order staying discovery and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction are moot and will be denied on that basis.

*IT IS, THEREFORE, HEREBY ORDERED THAT* Defendants' Motions to Dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 166, 167, 173, 198, 200, 202, 243, 342, 344 and 356) are *GRANTED* on the following basis: We lack jurisdiction over Plaintiffs' claims that were transferred to the MDL; we thus do not rule on the motions to the extent they address Plaintiffs' claims related to the formation and/or operation of the MERS system. The motions are granted with respect to Plaintiffs' remaining claims for relief. Plaintiff shall have 21 days within which to file an amended complaint addressing the deficiencies discussed here. It is not within our authority to grant Plaintiffs' leave to amend  [*37] with respect to claims before the MDL.

*IT IS FURTHER ORDERED THAT* Plaintiffs' Motion for Preliminary Injunction (#98) is *DENIED* as moot.

*IT IS FURTHER ORDERED THAT* Plaintiffs' Motion to Certify Class (#99) is *DENIED* as moot.

*IT IS FURTHER ORDERED THAT* Defendants' motion (#142) for "Protective Order Staying Discovery and Staying Their Oppositions to Plaintiffs Motions for Class Certification and Preliminary Injunction and Joinder to Certain Defendants' Joint Motion to Temporarily Stay Proceedings" is *DENIED* as moot.

DATED: January 8, 2010.

UNITED STATES DISTRICT JUDGE